# EXHIBIT L

## DECLARATION OF REBECCA JAMIL
## FORMER IMMIGRATION JUDGE AND ICE ATTORNEY

I, Rebecca Jamil, make this declaration based on my own personal knowledge and if called to testify I could and would do so competently as follows:

**Background and Experience**

1. My name is Rebecca Jamil. I received my Bachelor of Arts from Stanford University and my Juris Doctor from the University of Washington Law School.

2. I was sworn in to be an Immigration Judge in March of 2016, and served in that capacity for over two years, until July 2018. Before serving as an Immigration Judge, I worked as Assistant Chief Counsel for U.S. Immigration and Customs Enforcement ("ICE") for five years, from 2011 until 2016. In this capacity, I handled a number of asylum cases, including cases related to domestic violence and gang violence. Previously, I served as a staff attorney in the Ninth Circuit Court of Appeals from 2006 to 2011, where I handled primarily immigration cases. I have since worked in private practice based in San Francisco, California.

3. Because I was formerly an ICE Assistant Chief Counsel, when I began serving as an Immigration Judge, I was assigned to only new cases to avoid any conflict from matters handled by my former office. Thus, I was assigned to the "surge docket" which had only new cases. The cases on this docket were cases involving families or unaccompanied children. The overwhelming majority of these involved asylum claims based on domestic or intra-familial violence; a smaller number involved claims based on persecution from gangs.

4. I have experience reviewing Credible Fear Interviews ("CFIs") while covering for the detained docket in the San Francisco Immigration Court. I am familiar with the CFI process

1

from direct experience, as well as reviewing the record in merits asylum cases where an individual passed a CFI.

**The Importance of Access to Counsel in the Credible Fear Process**

5. Based on my knowledge and expertise, it is my opinion that consultation with legal counsel at the earliest possible time in the credible fear process is critical for asylum seekers.

6. Asylum law is complicated and has only become more so over time. The law is more complex than it was in 2006, when I first started working as an attorney in the immigration field, and more complex than it was in 2016, when I began serving as an immigration judge. It is therefore critical for asylum seekers to have access to counsel. They need to be able to talk with a lawyer, preferably in person, to understand, as soon as possible, the unfamiliar process that they are encountering.

7. Attorneys assist asylum seekers with navigating a complex legal framework and unfamiliar process. An attorney can explain to an asylum seeker the credible fear process and the types of questions that are going to be asked, and that the questions will be asked by a uniformed official, which often instills fear in applicants who are fleeing repressive regimes. They can also explain the legal standard for asylum and the importance of recounting certain events. For example, without attorney access to prepare for the credible fear interview, asylum seekers may discuss details of past events that are irrelevant while failing to discuss or even mention past events that are highly significant for purposes of asylum, withholding, and the Convention Against Torture because they do not realize they are relevant.

8. Access to counsel is also especially significant because asylum seekers taken into the custody of Customs and Border Protection are often hungry, exhausted, and attempting to care for young children. In those circumstances, an attorney provides support in helping the asylum

seeker focus on their claim under trying and often traumatic circumstances. This support is particularly important because asylum seekers must provide a coherent, linear recollection of traumatizing events that have happened to them.

9. It is my opinion that *in-person* access to counsel is critical for asylum seekers in the credible fear process. As an immigration judge, many of the cases I handled involved sexual violence. In those circumstances, and in asylum cases more broadly, asylum seekers need to be able to interact with their lawyers in person. Such meetings are essential for an attorney and an asylum seeker to meaningfully connect and build the trust required for the asylum seeker to recount traumatic experiences. In working with an attorney to prepare for the CFI, an asylum seeker often must describe past trauma in depth and often must respond to probing questions necessary for the attorney to understand the asylum seeker's case. The trust that enables them to do so comes from face-to-face interaction—it is very hard to build this critical relationship in a telephonic consultation, especially one of limited duration.

10. Based on my experience, access to counsel throughout the credible fear process, including prior to and during review by an immigration judge, is likewise essential for an asylum seeker to meaningfully assert their fear of return and access our credible fear system. At the CFI itself, the attorney may ask clarifying questions that elicit testimony that establishes nexus where it is not otherwise clear, based on the attorney's deep understanding of the case. Likewise, an attorney's statement at the end may frame the legal case for asylum for the asylum officer and make clear the nexus between the threats or violence that a person has experienced and a legal ground for asylum. Following the CFI and before the immigration judge's review, an attorney can identify flaws in the credible fear process that the asylum seeker was provided in the CFI. For example, I am familiar with CFIs in which the

interviewee was not interviewed in the proper language. This is especially common in cases from Central America involving indigenous languages. An attorney can also identify problems with the asylum officer's evidentiary analysis, such as noting an inaccurate summary or analysis of country conditions, which are critical to all fear-based claims. For similar reasons, attorney presence at the review process before the immigration judge is critical. An attorney can explain to the judge why the asylum seeker meets the low credible fear standard and can highlight country conditions or legally salient details that the asylum seeker may not realize are relevant.

11. Based on my professional experience, I believe that without meaningful access to an attorney in the credible fear process, including in-person access, the process leads to inaccurate results. Absent meaningful attorney access it is extremely difficult for an asylum seeker to succeed in demonstrating their credible fear of return.

I, Rebecca Jamil, swear under the penalties of perjury that the foregoing declaration is true and correct to the best of my knowledge and belief.

| _____ | Shoreline, WA | 12/19/19 |
| Rebecca Jamil | Location | Date |

4