IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAS AMERICAS IMMIGRANT
ADVOCACY CENTER, et al.,

               Plaintiffs,

      v.

CHAD WOLF, et al.,

               Defendants.

Civil Action No. 1:19-cv-03640-KBJ

**BRIEF OF *AMICUS CURIAE* SENATOR RON WYDEN IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

I.     INTEREST OF *AMICUS CURIAE* ................................................................1

II.    INTRODUCTION ........................................................................................1

III.   IMMIGRATION LAW REFLECTS STRONG BI-PARTISAN
       SUPPORT FOR MEANINGFUL ACCESS TO COUNSEL PRIOR
       TO AND DURING THE ASYLUM AND WITHHOLDING
       PROCEEDINGS. ........................................................................................4

       A.    For Nearly 70 Years, U.S. Immigration Law Has Provided
             Non-Citizens Seeking Refuge With a Clear Right to Counsel
             During Exclusion or Deportation Proceedings. ...................................4

       B.    In the Refugee Act of 1980, Congress Expanded Protections for
             Non-Citizens Consistent with the 1951 Refugee Convention. ............6

       C.    Current Law is Clear That Asylum Seekers Have a Meaningful
             Right to Counsel Prior to and During the Credible Fear
             Interview and any Review Thereof by an Immigration Judge.............8

IV.    THE APA FURTHER CONFIRMS THE RIGHT TO COUNSEL IN
       THE ADMINISTRATIVE PROCESSES THAT IMPLEMENT THE
       CREDIBLE FEAR INTERVIEW AND REVIEW HEARINGS. ...............14

V.     SEPARATION OF POWERS: DHS'S NEW PACR AND HARP
       POLICIES DO NOT FAITHFULLY EXECUTE THE LAW AND
       SHOULD BE VACATED. .........................................................................17

VI.    CONCLUSION..........................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Argersinger v. Hamlin*,
407 U.S. 25 (1972)............................................................................14

*Baires v. I.N.S.*,
856 F.2d 89 (9th Cir. 1998) ............................................................13

*Biwot v. Gonzales*,
403 F.3d 1094 (9th Cir. 2005) ........................................................13

*Conn. Nat. Bank v. Germain*,
503 U.S. 249 (1992)..........................................................................18

*Doe v. Wolf*,
No. 19-CV-2119-DMS (AGS), 2020 WL 209100
(S.D. Cal. Jan. 14, 2020)...............................................................17

*E. Bay Sanctuary Covenant v. Trump*,
349 F. Supp. 3d 838 (N.D. Cal. 2018)............................................18

*Grace v. Whitaker*,
344 F. Supp. 3d 96 (D.D.C. 2018)....................................................9

*Great Lakes Screw Corp. v. NLRB*,
409 F.2d 375 (7th Cir. 1969) ..........................................................16

*I.N.S. v. Cardoza-Fonseca*,
480 U.S. 421 (1987)............................................................................7

*In re Pangang Grp. Co. LTD.*,
901 F.3d 1046 (9th Cir. 2018) ..........................................................2

*Joint Anti-Fascist Refugee Comm. v. McGrath*,
341 U.S. 123 (1951)..........................................................................14

*Leslie v. Att'y Gen. of U.S.*,
611 F.3d 171 (3d Cir. 2010) ......................................................1, 12

*Marincas v. Lewis*,
  92 F.3d 195 (3d Cir. 1996) .................................................................................10

*Mohasco Corp. v. Silver*,
  447 U.S. 807 (1980)..........................................................................................18

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*,
  145 F.3d 1399 (D.C. Cir. 1998)...........................................................................4

*New York Times Co. v. United States*,
  403 U.S. 713 (1971)..........................................................................................20

*Salem v. Pompeo*,
  No. 19-CV-0363 (SJ), 2020 WL 108561 (E.D.N.Y. Jan. 8, 2020) ....................15

*SEC v. Higashi*,
  359 F.2d 550 (9th Cir. 1966) .............................................................................16

*SEC v. Whitman*,
  613 F. Supp. 48 (D.D.C. 1985)..........................................................................16

**U.S. CONSTITUTION**

U.S. CONST. art. I, § 1 .............................................................................................17

U.S. CONST. art. I, § 8 .............................................................................................18

U.S. CONST. art. II, § 3.......................................................................................13, 18

**STATUTES**

5 U.S.C. § 555.............................................................................................*passim*

8 U.S.C. § 1101 ........................................................................................................7

8 U.S.C. § 1158....................................................................................................3, 7

8 U.S.C. § 1225...........................................................................................*passim*

8 U.S.C. § 1231 ..................................................................................................3, 16

8 U.S.C. § 1229 ........................................................................................................9

8 U.S.C. § 1362.......................................................................................11, 12, 16, 19

Administrative Procedure Act............................................................................*passim*

Illegal Immigration Reform and Immigrant Responsibility Act of
    1996..................................................................................................8, 9, 11

Immigration and Nationality Act of 1952.........................................................2, 5, 8

Refugee Act of 1980 ........................................................................................ 7-8

**REGULATIONS & FED. REG. NOTICES**

8 C.F.R. § 208.30 ....................................................................................9, 12, 16, 17

8 C.F.R. § 208.31 .........................................................................................9, 16, 17

Aliens and Nationality: Asylum and Withholding of Deportation
    Procedures, 55 Fed. Reg. 30674 (July 27, 1990)...................................................8

**LEGISLATIVE REPORTS**

142 CONG. REC. H11066-67 (Sept. 25, 1996)  .......................................................10

142 CONG. REC. S10572 (Sept. 16, 1996) ..............................................................11

142 Cong. Rec. S11491 (Sept. 27, 1996)................................................................10

142 CONG. REC. S4459 (May 1, 1996) ....................................................................9

H.R. CONF. REP. NO. 104-828 (1996)..................................................................9, 11

H.R. REP. NO. 104-469 (1996)........................................................................2, 8, 10

S. DOC. NO. 248, 79th Cong., 2d Sess. (1946) ...................................................14, 15

S. REP. NO. 1380, 89th Cong., 2d Sess. 20 (1966) ..................................................15

**HEARINGS**

*Hearings Before the Subcomm. on Immigration and Policy of the S.
    Comm. on the Judiciary and Subcomm. on Immigration, Refugees
    and International Law of the S. Comm. on the Judiciary,
    97th Cong. (1981)* ...............................................................................6

## INTERNATIONAL AGREEMENTS & COMMENTARY

United Nations Convention Relating to the Status of Refugees,
 July 28, 1951, 189 U.N.T.S. 150 .............................................................................5

United Nations Protocol Relating to the Status of Refugees,
 Jan. 31, 1967, 19 U.N.T.S. 6223.............................................................................6

Dr. Paul Weis, UN High Commissioner for Refugees, *The Refugee
 Convention, 1951: The Travaux Préparatoires Analysed with a
 Commentary by Dr. Paul Weis* (1990) .................................................................4

## I.    INTEREST OF *AMICUS CURIAE*

*Amicus* Senator Ron Wyden is a member of the United States Senate and has represented the State of Oregon since 1996, and represented Oregon's Third Congressional District in the U.S. House of Representatives from 1981 to 1996.

As a Member of Congress, the *amicus* has a strong interest in ensuring that the Department of Justice and the Department of Homeland Security comply with their duties to manage the asylum and immigration system consistent with the letter and intent of the law.  As a member of the Legislative Branch, the *amicus* is uniquely well-suited to address Congress's unambiguous intent to ensure that a non-citizen's ability to seek asylum or withholding is not turned into a sham process by lack of meaningful access to counsel.[1]

## II.   INTRODUCTION

"The right to counsel is a particularly important procedural safeguard because of the grave consequences of [deportation of a non-citizen]."  *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 181 (3d Cir. 2010).  From the inception of this Nation's efforts to institute a formal immigration and asylum process, the law plainly has provided

---

[1] In compliance with LCvR 7(o)(5), and in compliance with Federal Rules of Appellate Procedure 29(a)(4)(E), counsel for *amicus curiae* certifies that no party's counsel authored this brief in whole  or in part, no party or party's counsel contributed money that was intended to fund preparing or  submitting this brief, and no persons other than *amicus curiae* or their counsel contributed money  that was intended to fund preparing or submitting this brief.

that in any exclusion or deportation proceedings before the implementing agencies,

"the person concerned **shall have the privilege of being represented** . . . **by such**

**counsel**, authorized to practice in such proceedings, **as he shall choose**." 

Immigration and Nationality Act of 1952, Pub. L. No. 82-414, § 292, 66 Stat. 163

(1952) ("INA") (emphasis added).  Even as expedited removal procedures have been

enacted in response to needs for greater efficiency—Congress expressly has ensured

that asylum seekers[2] have a right to counsel prior to and during proceedings before

immigration officials.  Congress put these safeguards in place to ensure that "there

should be **no danger** that an alien with a genuine asylum claim will be returned to

persecution."  H.R. REP. NO. 104-469, pt. 1, at 158 (1996) (emphasis added).  As

particularly relevant here, Congress expressly provided that asylum seekers under

the expedited removal process "**may consult with a person or persons of [their]**

**choosing prior to the [credible fear] interview or any review thereof**."  8 U.S.C.

§ 1225(b)(1)(B)(iv) (1996) (emphasis added).  The right to counsel in administrative

proceedings also has been guaranteed more broadly by the Administrative Procedure

---

[2] Consistent with the Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment, ECF No. 35-1, the *amicus* uses the term "asylum seeker" to refer to those who express fear of return to their country of origin or an intent to apply for asylum.  *See* 8 U.S.C. § 1225(b)(1)(A)(ii).  As explained in Plaintiffs' brief, "[s]uch individuals may be eligible for asylum, entitled to withholding of removal, and/or entitled to relief from removal under the United States' implementation of the Convention Against Torture."

Act ("APA") since 1946, which currently mandates that "[a] person compelled to appear in person before an agency or representative thereof ***is entitled to be accompanied, represented, and advised by counsel***."  5 U.S.C. § 555(b) (1966) (amending APA § 6(a) (1946)) (emphasis added).

The Department of Homeland Security's new Prompt Asylum Claim Review program ("PACR") and the Humanitarian Asylum Review Process ("HARP") require the critical initial administrative asylum interview to occur while an individual is detained in Customs and Border Protection ("CBP") facilities where there is little to no meaningful way to contact an attorney—much less obtain meaningful representation by counsel.  Accordingly, PACR and HARP implement policies that effectively read out an asylum seeker's right to counsel under 8 U.S.C. § 1225(b)(1)(B)(iv)  and  5 U.S.C.  § 555(b),  and  therefore  also  violate  such individual's right to a meaningful opportunity to apply for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  8 U.S.C. § 1158(a)(1);  *id.*  § 1231(b)(3)(A)  (statutory  withholding  of  removal);  Foreign Affairs Reform and Restructuring Act ("FARRA"), Pub. L. No. 105-277, Div. G, Title XXII, § 2242, 112 Stat. 2681, codified as note to 8 U.S.C. § 1231 ("Convention Against Torture").  Accordingly, the *amicus curiae* submits this brief in support of Plaintiffs' Motion for Summary Judgment and Proposed Order requesting that these unlawful policies be vacated as contrary to the letter and intent of the law.  *See* Pl.

Memorandum of Law in Support of Motion for Summary Judgment, ECF No. 35-1 ("Pl. Mem. SJ"); Pl. Proposed Order, ECF No. 35-10 ("Proposed Order"); *see also Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (explaining that invalidation of a broadly applicable agency action is the "ordinary result" of a court ruling that a policy violates the APA).

## III.   IMMIGRATION LAW REFLECTS STRONG BIPARTISAN SUPPORT FOR MEANINGFUL ACCESS TO COUNSEL PRIOR TO AND DURING THE ASYLUM AND WITHHOLDING PROCEEDINGS.

### A.   For Nearly 70 Years, U.S. Immigration Law Has Provided Non-Citizens Seeking Refuge With a Clear Right to Counsel During Exclusion or Deportation Proceedings.

Following the Holocaust and other humanitarian crises during and in the immediate aftermath of World War II, the international community resolved that future refugees would not be abandoned to their fate. *See* Dr. Paul Weis, U.N. High Commissioner for Refugees, *The Refugee Convention, 1951: The Travaux Préparatoires Analysed with a Commentary by Dr. Paul Weis* 5 (1990), https://www.refworld.org/docid/53e1dd114.html (explaining that the *UN Convention Relating to the Status of Refugees* originally was adopted to address the WWII refugee issue in Europe). The international community, led in part by the United States, drafted the 1951 Refugee Convention, which, among other provisions, called for a commitment that: "No Contracting State shall expel or return ('refouler') a refugee in any manner whatsoever to the frontiers of territories where his life or

freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion." *U.N. Convention Relating to the Status of Refugees* (July 28, 1951) 189 U.N.T.S. 150, art. 33(1) ("1951 Refugee Convention").  Domestically, President Truman called for "suitable legislation at once so that this nation may do its share in caring for homeless and suffering refugees of all faiths."  Harry S. Truman, President of the United States, *State of the Union Address* (Jan. 7, 1948).

By 1952, the United States passed the Immigration and Nationality Act ("INA").  Pub. L. No. 82-414, 66 Stat. 163 (1952).  The INA did not did not fully address immigration and asylum issues, but included a provision authorizing the Attorney General "to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to physical persecution . . ."  INA § 243(h) (1952).  The INA also included unambiguous language stating that "[i]n ***any exclusion or deportation proceedings before a special inquiry officer and in any appeal proceedings*** before the Attorney General from any such exclusion or deportation proceedings, ***the person concerned shall have the privilege of being represented*** (at no expense to the Government) ***by such counsel***, authorized to practice in such proceedings, ***as he shall choose***."  INA § 292 (1952) (emphasis added).

### B.    In the Refugee Act of 1980, Congress Expanded Protections for Non-Citizens Consistent with the 1951 Refugee Convention.

Over the next 30 years, Congress continued to work in a bi-partisan manner to develop more comprehensive legislation in "an atmosphere of calm, compassionate, and careful deliberations." *Joint Hearings Before the Subcomm. on Immigration and Policy of the S. Comm. on the Judiciary and Subcomm. on Immigration, Refugees and Int'l Law of the S. Comm. on the Judiciary*, 97th Cong. 4 (1981) (statement of Hon. Alan K. Simpson, Chairman, Subcomm. on Immigration and Refugee Policy).   Specifically, in 1968, the United States ratified the *United Nations Protocol Relating to the Status of Refugees* ("1967 Protocol"), which adopted all of the substantive provisions of the 1951 Refugee Convention.   19 U.S.T. 6223, 606 U.N.T.S. 267.   The Senate unanimously ratified the 1967 Protocol, and the United States officially acceded to the 1967 Protocol on November 1, 1968.   *See* U.N. Refugee Agency, *States Parties to the 1951 Convention relating to the Status of Refugees and the 1967 Protocol*,   https://www.unhcr.org/en-us/protection/basic/3b73b0d63/states-parties-1951-convention-its-1967-protocol.html (last visited Jan. 30, 2020).

A strongly bipartisan Congress substantially amended the INA in the Refugee Act of 1980 to more fully implement the United States' treaty obligations under the

1967 Protocol.  Pub. L. No. 96-212, 94 Stat. 102 (1980);[3] *see also I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 436-37 (1987) (The Act is intended "to bring United States refugee law into conformance with the 1967 United Nations Protocol Relating to the Status of Refugees.").  In particular, the Refugee Act of 1980 provided "a permanent and systematic procedure for the admission to this country of refugees."  Pub. L. No. 96-212 § 101(a)-(b), 94 Stat. 102 (1980).   Congress did so by creating new INA Section 208, which provided:

> The Attorney General shall establish a procedure for an alien physically present in the United States or at a land border or port of entry, irrespective of such alien's status, to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of [8 U.S.C. § 1101(a)(42)(A)].

Pub. L. No. 96-212, § 201(b), 94 Stat. 105 (codified at 8 U.S.C. § 1158(a) (1980)).  Congress also expanded the non-refoulement provision under Section 243 of the INA from merely *authorizing withholding* for fear of persecution to directing that "[t]he Attorney General ***shall not*** deport or return any alien . . . if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social

---

[3] 51 Democrats, 33 Republicans, and 1 Independent voted in favor of the Refugee Act of 1980, and 15 Senators abstained.  *See* Senate Vote #262 in 1979 (96th Congress), GOVTRACK, https://www.govtrack.us/congress/votes/96-1979/s262.

group, or political opinion."  Pub. L. No. 96-212, § 203(e), 94 Stat. 107 (amending INA § 243(h) (1952)) (emphasis added)); *see also Asylum and Withholding of Deportation Procedures*, 55 Fed. Reg. 30674, 30675 (July 27, 1990) ("The Refugee Act of 1980 [] made withholding of deportation for those who qualify mandatory rather than discretionary.").

These expanded asylum and withholding protections continued to benefit from the procedural protection under Section 292 of the INA, providing that "[i]n any exclusion or deportation proceedings before a special inquiry officer and in any appeal proceedings before the Attorney General from any such exclusion or deportation proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose."

**C.    Current Law is Clear That Asylum Seekers Have a Meaningful Right to Counsel Prior to and During the Credible Fear Interview and any Review Thereof by an Immigration Judge.**

Congress undertook another comprehensive reform of immigration law in 1996 as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").  Pub. L. No. 104-208, 110 Stat. 3009 (1996).  Relevant here, Congress created an expedited removal process "to make it easier to deny admission to inadmissible aliens and easier to remove deportable aliens from the United States." H.R. Rep. No. 104-469 at 157 (1996).  In doing so, however, Congress sought to

ensure that "there should be ***no danger*** that an alien with a genuine asylum claim will be returned to persecution." *Id.* at 158 (emphasis added); *see also id.* at 107-08; H.R. Conf. Rep. No. 104-828, at 209 (1996); 142 Cong. Rec. S4459 (May 1, 1996) (statement of Sen. Leahy) ("We want to make sure that we do not create barriers to true refugees and those deserving asylum, and prevent them from making an application for asylum.").

To implement this objective, Congress created the credible fear interview[4] process under new Section 235(b) of the INA (codified at 8 U.S.C. § 1225(b)), which transfers non-citizens to regular removal proceedings under Section 240 of the INA (codified at 8 U.S.C. § 1229(a)), provided that the non-citizen satisfies an initial threshold showing of a fraction of a chance of ultimately establishing eligibility for asylum. *See Grace v. Whitaker*, 344 F. Supp. 3d 96, 127 (D.D.C. 2018), *appeal pending*, No. 19-5013 (filed Jan. 30, 2019) (stating that the IIRIRA's legislative history confirms that the standard was intended to be "a low one."); *see also* 142

---

[4] Consistent with the Plaintiffs' Motion for Summary Judgment, the *amicus* uses the term "credible fear interview" to refer to the interview of a non-citizen in expedited removal proceedings who expresses fear of return to their country of origin or an intent to apply for asylum. Such interview is conducted by an asylum officer pursuant to 8 U.S.C. § 1225(b)(1)(B) and results in a determination of whether the non-citizen has the requisite "credible fear" to establish eligibility for asylum or "reasonable fear" to establish eligibility for statutory withholding and/or relief from removal under the Convention Against Torture. 8 U.S.C. § 1225(b)(1)(B)(v); 8 C.F.R. § 208.30(d), (e)(2), (e)(3); *id.* § 208.31(c).

Cong. Rec. S11491 (Sept. 27, 1996) (statement of Sen. Hatch) ("The standard . . . is intended to be a low screening standard for admission into the usual full asylum process."); 142 Cong. Rec. H11066-67 (Sept. 25, 1996) (statement of Rep. Smith) ("It is also important, however, that the process be fair—and particularly that it not result in sending genuine refugees back to persecution. . . . [O]ur asylum officers will need to be very careful in applying the 'credible fear' standard.").

Although many of the implementation details for the credible fear interview process were left to the discretion of the Attorney General, Congress expressly provided that those seeking asylum within the expedited removal process must have access to counsel of their choice.  Congress expressly stated that:

> The Attorney General shall provide information concerning the [credible fear] interview described in this subparagraph to aliens who may be eligible.  An alien who is eligible for such interview *may consult with a person or persons of the alien's choosing prior to the interview or any review thereof*, according to regulations prescribed by the Attorney General.  Such consultation shall be at no expense to the Government and shall not unreasonably delay the process.

8 U.S.C. § 1225(b)(1)(B)(iv) (emphasis added).

These words are clear.  The right to consult counsel must be meaningful to help ensure a fair process—a process under which there is no danger that a non-citizen with a genuine asylum claim will be returned to persecution.  H.R. Rep. No. 104-469, pt. 1, at 158 (1996); 142 Cong. Rec. H11066-67 (Sept. 25, 1996); *see also Marincas v. Lewis*, 92 F.3d 195, 203 (3d Cir. 1996) (interpreting Refugee Act of

1980 and concluding that "[w]hen Congress directs an agency to establish a procedure . . . it can be assumed that Congress intends that procedure to be a fair one").

Beyond the clear text of the statute, the legislative history of the IIRIRA also makes clear that Congress expected that those in the 1225(b) process would have a meaningful opportunity to have the merits of their fear evaluated and have access to counsel.  *See* 142 Cong. Rec. S10572 (Sept. 16, 1996) (statement of Sen. Simpson) (describing the credible fear process as "ensur[ing] that those who genuinely fear persecution at home can remain here"); *cf.* H.R. Conf. Rep. No. 104-828, at 217-18 (1996) (contemplating that those in the credible fear process would have access to legal counsel, but clarifying that shipping companies found to have stowaways had no "obligation . . . to pay for the cost of translators, ***legal counsel***, or other assistance in preparing and presenting the stowaway's claim for asylum") (emphasis added).

In addition to ensuring that the new expedited removal procedure's asylum screening process—conducted by asylum officers—was subject to the right to access counsel, Congress also updated the longstanding access to counsel provision under Section 292 of the INA to ensure its continued application "[i]n any removal proceedings before an immigration judge."  Pub. L. 104-208, div. C, title III, §§ 308(d)(4)(O), 371(b)(9), Sept. 30, 1996, 110 Stat. 3009-619, 3009-645 (codified at 8 U.S.C. § 1362 (1996) amending INA § 292 (1952)).  The review hearings for a

negative credible fear interview determination is a removal proceeding subject to the procedural safeguards in 8 U.S.C. § 1362.  *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. § 208.30(g)(2); *see also, e.g., Leslie v. Att'y Ge*n., 611 F.3d 171, 180 (3d Cir. 2010) (recognizing noncitizen's "right to counsel at removal hearings, which is manifestly a statutory right").  The plain text of the corresponding right to counsel provision states: "In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned *shall have the privilege of being represented* (at no expense to the Government) *by such counsel*, authorized to practice in such proceedings, *as he shall choose*."  8 U.S.C. § 1362 (1996) (substituting the word "removal" for "exclusion or deportation" and "immigration judge" for "special inquiry officer") (emphasis added).

In sum, the statutory language of Sections 1225(b)(1)(B)(iv) and 1362 could not be any clearer: A non-citizen seeking asylum or withholding "may consult with a person or persons of [their] choosing prior to the [credible fear] interview or any review thereof" and, in the case of review by an immigration judge, an alien "shall have the privilege of being represented by such counsel . . . as he shall choose."  It is hornbook law that implementation of a law should give effect to every word of the statutory text.  *See In re Pangang Grp. Co. LTD*., 901 F.3d 1046, 1055-56 (9th Cir. 2018) (quoting *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253 (1992)) ("The

first and most important canon of statutory construction is the presumption 'that a legislature says in a statute what it means and means in a statute what it says there.'"). Further, an asylum seeker's right to access counsel is a right of meaningful opportunity to meaningfully access counsel. *Biwot v. Gonzales*, 403 F.3d 1094, 1098-99 (9th Cir. 2005) ("To infuse the critical right to counsel with meaning, we have held that the [immigration judges] must provide aliens with reasonable time to locate counsel and permit counsel to prepare for the hearing"); *Baires v. I.N.S.*, 856 F.2d 89, 91 n.2 (9th Cir. 1998) ("We have characterized [a person's] right to counsel as 'fundamental' and have warned the INS  not to treat it casually. . . . [T]hat right must be respected in substance as well as in name.") (quoting *Rios-Berrios v. I.N.S.*, 776 F.2d 859, 863-4 (9th Cir. 1985)).

The Executive branch is required faithfully to execute the law—not rewrite it. U.S. Const. art. II, § 3.  The PACR and HARP policies have been documented to lack meaningful access to counsel and are thus unlawful and should be vacated.  *See* Pl. Memorandum in Support of Preliminary Injunction, ECF No. 21-1, at 32-34 ("Pl. Mem. PI"); Pl. Mem. SJ at 10-11, 26, 33-36 (citing SUF 47, 49 and AR 620-21, 640-43, 645-47 in documenting that CBP "categorically denies in-person access for attorneys or other visitors," does not provide for reliable telephone access, and does not provide for any telephone or in-person communication after the credible fear interview and before the immigration judge review).

## IV.   THE APA FURTHER CONFIRMS THE RIGHT TO COUNSEL IN THE ADMINISTRATIVE PROCESSES THAT IMPLEMENT THE CREDIBLE FEAR INTERVIEW AND REVIEW HEARINGS.

The right to counsel is a fundamental part of procedural due process, *see Argersinger v. Hamlin*, 407 U.S. 25, 46 (1972) (Powell, J., concurring), that "is ingrained in our national traditions," *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 161 (1951) (Frankfurter, J., concurring).   As the Supreme Court recognized in *Wisconsin v. Constantineau*, "[i]t is significant that most of the provisions of the Bill of Rights are procedural, for it is procedure that marks much of the difference between rule by law and rule by fiat."   400 U.S. 433, 436 (1971). This cornerstone principle of our founding and Constitution was embedded into the APA.   Senator Pat McCarran, then-chairman of the Senate Judiciary Committee, described the APA as a "widely heralded advance in democratic government."   60 Stat. 237 (1946), 5 U.S.C. §§ 1001-1011 (Supp. 1950).   Fundamentally, the APA is "intended as a guide to [those] who seek[] fair play and equal rights under law."   S. Doc. No. 248, 79th Cong., 2d Sess. at iii (1946) (foreword to the APA by Sen. McCarran).   DHS's PACR and HARP policies eviscerate the right of counsel afforded under the plain text and Congressional intent of section 555(b) of the APA and are therefore unlawful.

When Congress enacted the APA in 1946, it provided that "[a]ny person compelled to appear in person before any agency or representative thereof ***shall be***

*accorded the right to be* accompanied, represented, and *advised by counsel* or, if permitted by the agency, by other qualified representative." Pub. L. No. 79-404, ch. 324, § 6(a), 60 Stat. 240 (June 11, 1946) (emphasis added).   In 1966, Congress amended this provision to read: "A person compelled to appear in person before an agency or representative thereof *is entitled* to be accompanied, represented, and advised by counsel. . . ."  Pub. L. No. 89-554, §1, 80 Stat. 385 (Sept. 6, 1966) (codified at 5 U.S.C. § 555(b)) (emphasis added).   Congress purposefully replaced the words "shall be accorded" with "is entitled" to emphasize that "[w]hen a right is conferred"—here, the right to counsel—"the words 'is entitled' or their equivalent are used."   S. REP. NO. 1380, 89th Cong., 2d Sess. 20 (1966).   And, notably, Congress intended to confer to any party—here, asylum seekers—the "statutory and mandatory right . . . to appear . . . with counsel before any agency in connection with *any function, matter, or process whether formal, informal, public, or private*."  *See* H.R. REP. NO. 1980, 79th Cong., 2d Sess. at 31-32 (1946), *reprinted in* S. Doc. No. 248, 79th Cong., 2d Sess. at 263-64 (1946) (emphasis added); *see also Salem v. Pompeo*, No. 19-CV-0363 (SJ), 2020 WL 108561, at *5-6 (E.D.N.Y. Jan. 8, 2020) (examining the APA's legislative history and finding that the House and Senate were in "exact agreement" that § 555(b) "applies in connection with the exercise of any agency authority *whether or not formal proceedings are available*" and thus that a party is "entitled to appear" with counsel pursuant § 555(b) "in an agency

-15-

proceeding" even if one is not being "compelled").  Accordingly, the right to counsel in administrative proceedings is nearly absolute.  *See SEC v. Whitman*, 613 F. Supp. 48, 49 (D.D.C. 1985) ("witness' right to counsel is absolute" and must extend to ensure counsel's advice was effective); *see also Great Lakes Screw Corp. v. NLRB*, 409 F.2d 375, 3881 (7th Cir. 1969) (stating that "the statutorily provided right to be represented by counsel of one's own choice is fundamental"); *SEC v. Higashi*, 359 F.2d 550, 553 (9th Cir. 1966) (affirming lower district court's order prohibiting sequestration which would have deprived witness of effective counsel).[5]

Section 555(b) of the APA applies to the credible fear processes under 8 U.S.C. §§1225(b), 1231(b), and 1362.  A non-citizen seeking asylum or withholding is obligated to undergo a credible fear proceeding before an asylum officer in order to determine eligibility for further review under non-expedited removal proceedings.  8 U.S.C. § 1225(b)(1)(A)(ii); *id.* § 1225(b)(1)(B) ("An asylum officer shall conduct interviews of aliens referred under subparagraph (A)(ii)."); 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. §§ 208.30(d)-(e) & 208.31(c).  Moreover, the review hearing for a non-citizen's negative credible fear determination is held before an immigration judge and thus also is subject to the safeguards of Section 555(b) of the APA. 8 U.S.C. § 1225(b)(1)(B)(iii)(III);

---

[5] No exception applies here.

8 C.F.R. §§ 208.30(g)(2) & 208.31(g).  Accordingly, in all such circumstances, an asylum seeker "is entitled to be accompanied, represented, and advised by counsel." 5 U.S.C. § 555(b); *see Doe v. Wolf*, No. 19-CV-2119-DMS (AGS), 2020 WL 209100, at *5-8 (S.D. Cal. Jan. 14, 2020) ("asylum seekers have a right to access retained counsel prior to and during non-refoulement interviews is required by the text of § 555(b)").

## V.   SEPARATION OF POWERS: DHS'S NEW PACR AND HARP POLICIES DO NOT FAITHFULLY EXECUTE THE LAW AND SHOULD BE VACATED.

The separation of powers between three independent, coequal Branches of Government is fundamental to our constitutional democracy.  As explained in Federalist No. 48 (James Madison):

> An elective despotism was not the government we fought for; but one . . . in which the powers of government should be so divided and balanced . . . that no one could transcend their legal limits, without being effectually checked and restrained by the others. For this reason . . . the legislative, executive, and judiciary departments should be separate and distinct, so that no person should exercise the powers of more than one of them at the same time.

Consistent with this balanced structure, Article I, Section 1 of the Constitution provides: "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." U.S. Const. art. I, § 1.  Congress alone is vested with power "[t]o make all Laws which shall be necessary and proper for carrying into Execution the [Powers

enumerated in Article I, Section 8] and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." U.S. Const. art. I, § 8.  Congress engages in significant inquiry, analysis, and debate in order to build consensus among the numerous Senators and Representatives who must agree to pass a Law.  This is the hard work of Democracy.  And the judicial branch repeatedly has affirmed that when Congress enacts a Law, we mean every word of it.  *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253 (1992) ("The first and most important canon of statutory construction is the presumption 'that a legislature says in a statute what it means and means in a statute what it says there.'").

The Executive Branch may not supersede or overturn a duly enacted Law.  On the contrary, the Constitution expressly provides that the President "shall take Care that the Laws be faithfully executed."   U.S. Const. art. II, § 3.  Put simply, the President is bound by the Laws that Congress enacts.  The Executive Branch may not set aside the governing Law, by rule, proclamation, or otherwise.  *See Mohasco Corp. v. Silver*, 447 U.S. 807, 825 (1980) ("As we have held on prior occasions, [an agency's] 'interpretation' of the statute cannot supersede the language chosen by Congress."); *E. Bay Sanctuary Covenant v. Trump*, 349 F. Supp. 3d 838, 858 (N.D. Cal. 2018) ("Basic separation of powers principles dictate that an agency may not promulgate a rule or regulation that renders Congress's words a nullity") (citation and footnote omitted).

-18-

For decades—through general administrative procedure and specific immigration laws—Congress has provided non-citizens seeking asylum and other forms of withholding from removal a meaningful right to counsel during such proceedings. 5 U.S.C. § 555(b); 8 U.S.C. §1225(b)(1)(B)(iv); 8 U.S.C. § 1362.  The Executive's PACR and HARP policies contradict the letter and spirit of these laws by conducting the credible fear process while individuals are detained in CBP facilities that lack meaningful methods to access counsel by phone, in person, or otherwise. *See* Pl. Mem. PI at 32-34; Pl. Mem. SJ at 10-11, 26, 33-36.  In particular, "CBP does not provide for regular—or, typically, any—telephone access for detainees in its custody." Pl. Mem. SJ at 10-11 (citing SUF 47, 49 and AR 620-21). CBP policy also "categorically denies in-person access for attorneys or other visitors"; and "Defendants provide no access to consultation at any point after the credible fear interview[;] . . . do not provide for the physical presence of an attorney or others at the credible fear interview[;] . . . do not provide for any telephone or in-person communication after the credible fear interview and before the immigration judge review[;] . . . and do not allow for a person to be represented at the immigration judge review hearing itself."  Pl. Mem. SJ at 35-36 (citing AR 640-43, 645-47).  As described by Plaintiffs', these shortcuts show "concern only for increasing the number and speed of removals—not for ensuring that protections in Congress's

system to keep asylum seekers from being wrongfully returned to danger are instantiated." Pl. Mem. SJ at 32.

Expedience is no justification—particularly here—where Congress created an expedited removal proceeding under the IIRIRA and at the same time expressly retained meaningful access to counsel for asylum seekers. *See* 8 U.S.C. §§1225(b)(1)(B)(iv); *see also New York Times Co. v. United States*, 403 U.S. 713, 742-43 (1971) (Marshall, J., concurring) ("[C]onvenience and political considerations of the moment do not justify a basic departure from the principles of our system of government."). Accordingly, because Defendants' PACR and HARP policies fail faithfully to execute the law, the policies should be vacated.

## VI.   CONCLUSION

History teaches not only the immeasurable contributions immigrants have made to our country, but also the horror and intolerable suffering that may follow when refugees are unable to gain asylum. The law is clear that the right to counsel during removal proceedings must be meaningful, not an empty formality. The HARP and PACR programs create barriers that effectively deny applicants access to counsel, and in doing so, run counter to the founding principles of equal access to justice that are the bedrock of American democracy. For all of these reasons, *amicus curiae* respectfully suggest that Plaintiffs' Motion for Summary Judgment and Proposed Order be granted.

Dated:  January 30, 2020               Respectfully Submitted,

                                       MORGAN, LEWIS & BOCKIUS LLP

                                       By: /s/ *Susan Baker Manning*
                                       _____
                                            Susan Baker Manning, Bar No. 499635
                                            Raechel Keay Kummer, Bar No. 991999
                                            Rachel E. Fertig, Bar No. 1552360
                                            Jane W. Wise, Bar No. 1027769
                                            Kiran Jassal, Bar No. 1644955
                                            1111 Pennsylvania Avenue, NW
                                            Washington, DC  20004
                                            Telephone:    +1.202.739.3000
                                            Facsimile:    +1.202.739.3001
                                            susan.manning@morganlewis.com
                                            raechel.kummer@morganlewis.com
                                            rachel.fertig@morganlewis.com
                                            jane.wise@morganlewis.com
                                            kiran.jassal@morganlewis.com

                                            *Attorneys for Amicus Curiae*