JOSEPH H. HUNT
Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
EREZ REUVENI
Assistant Director
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-4293
Email: Erez.R.Reuveni@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Las Americas Immigrant Advocacy Center, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:19-cv-3640-KBJ |
| Chad F. Wolf, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
## AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION .......................................................................................................................... 1

LEGAL BACKGROUND ............................................................................................................. 3

FACTUAL AND PROCEDURAL BACKGROUND ................................................................. 3

STANDARD OF REVIEW ......................................................................................................... 13

ARGUMENT ............................................................................................................................... 14

I.      This Court lacks jurisdiction over Plaintiffs' claims. ...................................................... 14

    A.      This Court lacks jurisdiction to adjudicate Las Americas' claims or any
challenges to expedited removal procedures in place on or before October 5,
2019 ............................................................................................................................ 14

    B.      Plaintiffs lack Article III standing and otherwise fail to establish that their
case is justiciable ...................................................................................................... 17

        1.      Las Americas ................................................................................................ 18

        2.      Individual Plaintiffs .................................................................................... 22

II.     Plaintiffs' claims fail on the merits. ................................................................................. 23

    A.      Claims 1-3: The PACR and HARP guidance does not violate any statutory
or regulatory right to "access counsel." ................................................................. 23

    B.      Claims 5-6: The PACR and HARP guidance does not deprive aliens of a
"due process right" or a "meaningful opportunity" to apply for asylum and
related protection from removal .............................................................................. 29

    C.      Claim 4: The PACR and HARP guidance does not violate the APA. ................. 31

        1.      The decision to initiate PACR and HARP does not constitute "final
agency action" and is not subject to review under the APA. ..................... 31

2.     The decision to initiate PACR and HARP is not arbitrary and capricious. ............................................................................................. 33

III.     If the Court grants summary judgment to Plaintiffs, the sole form of available relief is to set aside the PACR and HARP guidance as unlawful. ............................................. 38

A.     The Court lacks authority to enter the sweeping injunction that Plaintiffs seek. ......................................................................................................... 38

B.     Even if the court had authority to enter an injunction, Plaintiffs have not demonstrated they suffered irreparable harm or that the balance of harms favors them........................................................................................................ 42

CONCLUSION.................................................................................................... 44

# TABLE OF AUTHORITIES

## Cases

*Abulhawa v. United States Dep't of the Treasury*,
   239 F. Supp. 3d 24 (D.D.C. 2017) ......................................................................... 17

*Adams v. U.S. Forest Serv.*,
   671 F.3d 1138 (9th Cir. 2012) .............................................................................. 16

*AFL-CIO v. Chao*,
   496 F. Supp. 2d 76 (D.D.C. 2007) ........................................................................ 13

*Aguilar v. ICE*,
   510 F.3d 1 (1st Cir. 2007) ............................................................................. 3, 4, 5, 6

*Air Transp. Ass'n of Am. v. Nat'l Mediation Bd.*,
   663 F.3d 476 (D.C. Cir. 2011) .............................................................................. 34

*Allen v. Wright*,
   468 U.S. 737 (1984) ............................................................................................. 17

*Am. Bankers Ass'n v. Nat'l Credit Union Administration*,
   934 F.3d 649 (D.C. Cir. 2019) .............................................................................. 36

*Am. Fuel & Petrochemical Manufacturers v. Envtl. Prot. Agency*,
   937 F.3d 559 (D.C. Cir. 2019) .............................................................................. 35

*Am. Immigration Lawyers Ass'n v. Reno* ("AILA"),
   18 F. Supp. 2d (D.D.C. 1998), 199 F.3d 1352 (D.C. Cir. 2000) ..................................... passim

*Am. Tort Reform Ass'n v. OSHA*,
   738 F.3d 387 (D.C. Cir. 2013) .............................................................................. 32

*Am. Trucking Assocs., Inc. v. Fed. Motor Carrier Safety Admin.*,
   724 F.3d 243 (D.C. Cir. 2013) .............................................................................. 33

*Angelex Ltd. v. United States*,
   723 F.3d 500 (4th Cir. 2013) ................................................................................ 33

*Ardestani v. INS*,
   502 U.S. 129 (1991) ............................................................................................. 28

*Arpaio v. Obama*,
   797 F.3d 11 (D.C. Cir. 2015) ............................................................ 22, 23, 24, 35

*Barr v. East Bay Sanctuary Covenant*,
   140 S. Ct. 3 (2019) ................................................................................................ 8

*Bennett v. Spear,*
   520 U.S. 154 (1997) .................................................................................. 32

*Biwot v. Gonzales,*
   403 F.3d 1094 (9th Cir. 2005) ................................................................. 26

*Block v. Cmty. Nutrition Inst.,*
   467 U.S. 340 (1984) .................................................................................. 21

*Bowles v. Russell,*
   551 U.S. 205 (2007) .................................................................................. 42

*Broadgate Inc. v. USCIS,*
   730 F. Supp. 2d 240 (D.D.C. 2010) ......................................................... 32

*\*Chaplaincy of Full Gospel Churches v. England,*
   454 F.3d 290 (D.C. Cir. 2006) ...................................................... 42, 43, 44

*Citizens to Preserve Overton Park v. Volpe,*
   401 U.S. 402 (1971) .................................................................................. 14

*Clarke v. Secs. Indus. Ass'n,*
   479 U.S. 388 (1987) .................................................................................. 20

*Coeur Alaska, Inc. v. S.E. Alaska Conservation Council,*
   557 U.S. 261 (2009) .................................................................................. 25

*Ctr. For Responsible Science v. Gottlieb,*
   346 F. Supp. 3d 29 (D.D.C. 2018) ........................................................... 44

*DaimlerChrysler Corp. v. Cuno,*
   547 U.S. 332 (2006) .................................................................................. 19

*Decker v. NW Env. Defense Ctr.,*
   568 U.S. 597 (2013) .................................................................................. 26

*\*Dep't of Commerce v. New York,*
   139 S. Ct. 2551 (2019) .............................................................................. 33

*Dia v. Ashcroft,*
   353 F.3d 228 (3d Cir. 2003) ..................................................................... 30

*Dickson v. Sec. of Def.,*
   68 F.3d 1396 (D.C. Cir. 1995) ................................................................. 28

*District of Columbia v. Dep't of Labor,*
   819 F.3d 444 (D.C. Cir. 2016) ................................................................. 25

*East Bay Sanctuary Covenant v. Trump*,
   909 F.3d 1219 (9th Cir. 2018) ................................................................ 21

*Fair Empl. Council of Greater Washington, Inc. v. BMC Marketing*,
   28 F.3d 1268 (D.C. Cir. 1994) ............................................................... 18

*\*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) ................................................................................ 35

*\*Fed'n for Am. Immigration Reform, Inc. (FAIR) v. Reno*,
   93 F.3d 897 (D.C. Cir. 1996) ........................................................... 20, 21

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ................................................................................ 17

*George v. Bay Area Rapid Transit*,
   577 F.3d 1005 (9th Cir. 2009) ................................................................ 33

*Gill v. Whitford*,
   138 S. Ct. 1916 (2018) ...................................................................... 17, 38

*Grace v. Whitaker*,
   344 F. Supp. 3d 96 (D.D.C. 2018) .......................................................... 41

*Grace v. Whitaker*,
   2019 WL 329572 (D.D.C. Jan. 25, 2019) ............................................... 41

*Haitian Refugee Ctr. v. Gracey*,
   809 F.2d 794 (D.C. Cir. 1987) ............................................................... 19

*Hamama v. Adducci*,
   912 F.3d 869 (6th Cir. 2018) ................................................................. 41

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) ................................................................................ 18

*Immigrant Rights Project v. USCIS*,
   325 F.R.D. 671 (W.D. Wash. 2016) ........................................................ 21

*IMS, P.C. v. Alvarez*,
   129 F.3d 618 (D.C. Cir. 1997) ............................................................... 34

*INS v. Legalization Assistance Project of L.A. Cty.*,
   510 U.S. 1301 (1993) ........................................................................ 20, 21

*Kowalski v. Tesmer*,
   543 U.S. 125 (2004) ................................................................................ 19

*Landon v. Plasencia*,
  459 U.S. 21 (1982) ................................................................................................ 30

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) .............................................................................................. 32

*Linda R.S. v. Richard D.*,
  410 U.S. 614 (1973) .............................................................................................. 19

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................ 17, 18

*Madsen v. Women's Health Ctr., Inc.*,
  512 U.S. 753 (1994) ........................................................................................ 38, 39

*Make the Road New York v. McAleenan*,
  405 F. Supp. 3d 1 (D.D.C. 2019) ......................................................................... 16

*Marcello v. Bonds*,
  349 U.S. 302 (1955) .............................................................................................. 28

*Mashack v. Jewell*,
  149 F. Supp. 3d 11 (D.D.C. 2016) ........................................................................ 14

*Matter of E-R-M- & L-R-M*,
  25 I. & N. Dec. 520 (BIA 2011) ............................................................................. 3

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010) ........................................................................................ 39, 44

*Mountain States Legal Found. v. Glickman*,
  92 F.3d 1228 (D.C. Cir. 1996) .............................................................................. 20

*Nat. Res. Def. Council v. E.P.A.*,
  571 F.3d 1245 (D.C. Cir. 2009) ............................................................................ 25

*Nat'l Ass'n of Home Builders v. EPA*,
  682 F.3d 1032 (D.C. Cir. 2012) ............................................................................ 33

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*,
  145 F.3d 1399 (D.C. Cir. 1998) ...................................................................... 39, 40

*Nebraska Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.*,
  435 F.3d 326 (D.C. Cir. 2006) .............................................................................. 40

*League of Women Voters of United States v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) .................................................................................. 44

*O.A. v. Trump,*
  404 F. Supp. 3d 109 (D.D.C. 2019) ................................................................. 8, 38

*O'Bannon v. Town Court Nursing Ctr.,*
  447 U.S. 773 (1980) ................................................................................. 19

*\*Oceana, Inc. v. Ross,*
  920 F.3d 855 (D.C. Cir. 2019) ........................................................................ 34

*Olim v. Wakinekona,*
  461 U.S. 238 (1983) ................................................................................. 30

*Patchak v. Zinke,*
  138 S. Ct. 897 (2018) ............................................................................ 14, 15

*Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.,*
  280 F. Supp. 3d 118 (D.D.C. 2017) .................................................................. 43

*Perez v. Mort. Bankers Ass'n,*
  135 S. Ct. 1199 (2015) .............................................................................. 32

*Prof'l Drivers Council v. Bureau of Motor Carrier Safety,*
  706 F.2d 1216 (D.C. Cir. 1983) ...................................................................... 28

*R.J. Reynolds Tobacco Co. v. U.S. Dep't of Agric.,*
  130 F. Supp. 3d 356 (D.D.C. 2015) .................................................................. 14

*Rafeedie v. INS,*
  880 F.2d 506 (D.C. Cir. 1989) ....................................................................... 30

*Richards v. INS,*
  554 F.2d 1173 (D.C. Cir. 1977) ...................................................................... 14

*Rosa v. McAleenan,*
  No. 1:19-cv-95, 2019 WL 5191095 (S.D. Tex. Oct. 15, 2019) ............................................. 28

*SEC v. Higashi,*
  359 F.2d 550 (9th Cir. 1966) ........................................................................ 29

*Sessions v. Morales-Santana,*
  137 S. Ct. 1678 (2017) .............................................................................. 19

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016) ........................................................................... 17, 18

*Sure-Tan, Inc. v. NLRB,*
  467 U.S. 883 (1984) ................................................................................. 19

*Trump v. Hawaii*,
   138 S. Ct. 2392 (2018) ........................................................................................ 39

*U.S. ex rel. Knauff v. Shaughnessy*,
   338 U.S. 537 (1950) ........................................................................................ 3, 30

*Union Neighbors United, Inc. v. Jewell*,
   831 F.3d 564 (D.C. Cir. 2016) .............................................................................. 16

*\*United States v. Barajas-Alvarado*,
   655 F.3d 1077 (9th Cir. 2011) .......................................................................... 26, 29

*United States v. Cortez*,
   449 U.S. 411 (1981) ........................................................................................... 44

*\*United States v. Quinteros Guzman*,
   No. 3:18-cr-00031-001, 2019 WL 3220576 (W.D. Va. July 17, 2019) ............ 27, 29

*Va. Society for Human Life v. Fed. Election Comm'n*,
   263 F.3d 379 (4th Cir. 2001) ................................................................................ 39

*Warth v. Seldin*,
   422 U.S. 490 (1975) ........................................................................................... 18

*West v. Lynch*,
   845 F.3d 1228 (D.C. Cir. 2017) ............................................................................ 17

*Wisc. Gas. Co. v. FERC*,
   758 F.2d 669 (D.C. Cir. 1985) ............................................................................. 43

## Statutes

5 U.S.C. § 555 ............................................................................................... 12, 28, 29

5 U.S.C. § 701 ........................................................................................................ 32

5 U.S.C. § 702 .................................................................................................... 14, 20

5 U.S.C. § 703 ........................................................................................................ 39

5 U.S.C. § 704 ........................................................................................................ 32

5 U.S.C. § 706 ....................................................................................... 13, 31, 33, 39

8 U.S.C. § 1158 ....................................................................................................... 4

8 U.S.C. § 1225 ............................................................................................ 7, 14, 16, 36

8 U.S.C. § 1229a ................................................................................................. 6, 27

8 U.S.C. § 1231 ............................................................................................................ 5, 13, 17

8 U.S.C. § 1252 ................................................................................................................... passim

8 U.S.C. § 1362 .................................................................................................................... 12, 27

28 U.S.C. § 1331 ...................................................................................................................... 14

## Rules

Federal Rule of Civil Procedure 56(a) ..................................................................................... 13

## Regulations

8 C.F.R. § 208.13 ...................................................................................................................... 7

8 C.F.R. § 208.16 .................................................................................................................... 4, 5

8 C.F.R. § 208.30 ................................................................................................................. passim

8 C.F.R. § 208.31 ...................................................................................................................... 8

8 C.F.R. § 235.3 ................................................................................................................... passim

8 C.F.R. § 1003.42 ................................................................................................................ 6, 7

8 C.F.R. § 1208.30 .............................................................................................................. 6, 27

## INTRODUCTION

This Court should reject Plaintiffs' request for an extraordinary injunction invalidating the Department of Homeland Security's guidance explaining the statutory discretionary authority to hold certain asylum seekers in the custody of U.S. Customs and Border Protection through the credible fear process, rather than transferring them to the custody of U.S. Immigration and Customs Enforcement. This Court lacks jurisdiction to consider Plaintiffs' claims, those claims fail on the merits, and there is no basis for nationwide injunctive relief.

In response to unprecedented mass migration at the southwest border, the Department of Homeland Security (DHS), exercising its discretion to allocate its limited resources in the manner it deems best-suited to address the migration crisis, developed guidance—Prompt Asylum Claim Review (PACR) and Humanitarian Asylum Review Process (HARP)—explaining the statutory discretionary authority to hold certain putative asylum seekers in the custody of U.S. Customs and Border Protection (CBP), rather than transferring them to U.S. Immigration and Customs Enforcement (ICE), during the pendency of their credible-fear interviews for eligibility to apply for asylum in this country. Plaintiffs—ten individuals and one organization—contend that DHS's guidance interferes with aliens' ability to consult with counsel prior to their credible-fear interviews under 8 U.S.C. § 1225(b)(1)(B)(iv). Thus, Plaintiffs claim that the guidance exceeds DHS's statutory authority under the Immigration and Nationality Act (INA), violates the Administrative Procedure Act (APA), and prevents aliens from accessing the asylum process under the INA. Plaintiffs' Summary-Judgment Memorandum (MSJ Mem.) 16-41 (ECF No. 35-1). Plaintiffs ask this Court to declare the policy guidance unlawful and permanently enjoin its implementation by DHS. The Court should deny that extraordinary request.

To begin, this Court lacks jurisdiction over this case. The Court lacks jurisdiction to adjudicate claims brought by Plaintiff Las Americas Immigrant Advocacy Center (Las Americas).

Plaintiffs invoke this Court's jurisdiction solely under 8 U.S.C. § 1252(e)(3), a provision of the INA that authorizes certain systemic challenges to expedited removal procedures. But section 1252(e)(3) allows only individual aliens—not organizations—to bring such challenges. And because this Court lacks jurisdiction to adjudicate Las Americas' claims, the scope of relief, if any were warranted, must be limited to the individual Plaintiffs. Yet the individual Plaintiffs also lack Article III standing. Despite the myriad reasons why each Plaintiff may have received a negative credible-fear finding, Plaintiffs contend that their placement in CBP custody, rather than ICE custody, is the sole reason for their failure to establish credible fear. But an injunction addressing the location of their custody would not redress the harm they claim, which concerns only the merits of the determinations made after those interviews. So the Court cannot entertain this lawsuit at all.

Plaintiffs' claims also fail on the merits. First, the challenged DHS guidance is fully consistent with the text of all relevant statutes and regulations. Nothing in the expedited removal system—no statute or regulation—bars the guidance adopted by DHS or requires the procedures that Plaintiffs demand. Second, because Plaintiffs are applicants for admission, they are entitled only to the procedures that Congress has provided—procedures they have received—and thus they have no cognizable constitutional due-process claim. Third, the APA claims fail because arbitrary-and-capricious review does not apply to the guidance; but even if it did, the guidance is reasonable. DHS articulated a sound explanation for holding some aliens in CBP custody during the pendency of their credible-fear interviews, and the record supports that explanation: the migration crisis along the southwest border combined with the resource constraints of ICE detention facilities.

Finally, even if any relief were warranted, it must be limited to "determin[ing]" that the DHS guidance is unlawful and remanding the decision to DHS. *See* 8 U.S.C. § 1252(e)(3). The individual Plaintiffs have not demonstrated a connection between the injunctive relief sought, limited to their location of custody during the credible-fear process, and their complained-of harm,

which depends entirely on a different result in their credible-fear interviews. There is no evidence that even if the individual Plaintiffs had been in ICE custody during their credible-fear interviews that the results of such interviews would be different. And Las Americas' assertions about harm—that it must divert resources and will suffer economic loss due to the guidance—do not warrant injunctive relief.

The Court should deny Plaintiffs' motion for summary judgment and grant summary judgment to Defendants on all counts.

## LEGAL BACKGROUND

Expedited Removal.  The Executive Branch has broad constitutional power to exclude aliens and secure the border, *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950), and has for decades exercised that authority through its prosecutorial discretion to prioritize which aliens to remove, what proceedings to initiate against them, including through expedited removal, *see Matter of E-R-M- & L-R-M*, 25 I. & N. Dec. 520, 523 (BIA 2011), and where to detain such aliens during the pendency of their proceedings, *see Aguilar v. ICE*, 510 F.3d 1, 21-24 (1st Cir. 2007).

Under the expedited removal procedures, an alien "who is arriving in the United States" who lacks valid entry documentation or makes material misrepresentations shall be "order[ed] . . . removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i); *see id.* § 1182(a)(6)(C), (a)(7). Implementing regulations afford certain procedures to such aliens before such removal may be effectuated. Among other procedures: "[T]he examining immigration officer shall create a record of the facts of the case and statements made by the alien," by means of a "sworn statement." 8 C.F.R. § 235.3(b)(2)(i). The examining officer shall also "advise the alien of the charges against him or her" and provide "an opportunity to respond to those charges in the sworn statement." *Id.* "Interpretative assistance shall be used if necessary to communicate

with the alien." *Id.* And "any removal order" entered under section 1225(b)(1) "must be reviewed and approved by the appropriate supervisor before the order is considered final." *Id.* § 235.3(b)(7).

Expedited removal also addresses the claims of aliens seeking asylum or claiming fear of persecution. If an alien subject to expedited removal "indicates either an intention to apply for asylum under [8 U.S.C. § 1158] or a fear of persecution," the immigration officer inspecting the alien must "refer the alien for" an interview conducted by an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii). In such an interview, an asylum officer considers the facts and assesses whether the alien has a "credible fear of persecution." *Id.* § 1225(b)(1)(A)(ii), (B)(1)(B)(v); *see* 8 C.F.R. § 208.30(d). A "credible fear of persecution" means "that there is a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under [8 U.S.C. § 1158]." 8 U.S.C. § 1225(b)(1)(B)(v); *see id.* § 1158. By regulation, the officer also uses the interview to screen such an alien for withholding of removal and protection under the Convention Against Torture (CAT). 8 C.F.R. §§ 208.30(e)(2), 235.3(b)(4). A credible-fear interview thus assesses whether the alien has a plausible basis to pursue asylum, statutory withholding of removal, or protection under the CAT. *See* 8 U.S.C. §§ 1225(b)(1)(B)(v), 1158, 1231(b)(3); 8 C.F.R. §§ 208.16, 208.17.

To determine whether the alien passes the screening stage, the asylum officer must evaluate the substantive standards for asylum, statutory withholding of removal, and CAT protection. The substantive standard for asylum requires the alien to demonstrate that he or she is a "refugee," meaning someone who (1) has suffered (or has a well-founded fear of) "persecution" (2) "on account of" (3) one of five protected grounds—"race, religion, nationality, membership in a particular social group, or political opinion," and that the alien is not otherwise barred by statute or regulation from receiving asylum. *Id.* §§ 1101(a)(42), 1158(b)(1)(B)(i) (refugee definition and

burden); *id.* § 1158(b)(2) (eligibility bars). Eligibility for protection under the CAT is governed by the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA). Pub. L. 105-277, div. G, tit. XXII, § 2242, Oct. 21, 1998, 112 Stat. 2681-822, *codified at* 8 U.S.C. § 1231 note. By that Act and its implementing regulations, an alien may be granted CAT protection if she demonstrates "there are substantial grounds for believing the person would be in danger of being subjected to torture." *Id.*; 8 C.F.R. §§ 208.16-208.18.

The asylum officer "will conduct the interview in a nonadversarial manner, separate and apart from the general public." 8 C.F.R. § 208.30(d). The officer must "create a written record of his or her determination" regarding credible fear, including a "summary of the material facts as stated by the applicant, any additional facts relied on by the officer, and the officer's determination of whether, in light of such facts, the alien has established a credible fear of persecution or torture." *Id.* § 208.30(e)(1); *see* 8 U.S.C. § 1225(b)(1)(B)(iii)(II). Relevant to this case, "[a]n alien who is eligible for such interview may consult with a person or persons of the alien's choosing prior to the interview or any review thereof, and may present other evidence, if available. Such consultation shall be at no expense to the Government and shall not unreasonably delay the process." 8 U.S.C. § 1225(b)(1)(B)(iv); *see* 8 C.F.R. § 208.30(d)(4). "Any person or persons with whom the alien chooses to consult may be present at the interview and may be permitted, in the discretion of the asylum officer, to present a statement at the end of the interview. The asylum officer, in his or her discretion, may place reasonable limits on the number of persons who may be present at the interview and on the length of the statement." 8 C.F.R. § 208.30(d)(4).

Before the credible-fear interview, an immigration officer "shall provide the alien with a written disclosure" "describing: (A) the purpose of the referral and description of the credible fear interview process; (B) the right to consult with other persons prior to the interview and any review thereof at no expense to the United States Government; (C) the right to request review by an

immigration judge of the asylum officer's credible fear determination; and (D) the consequences of failure to establish a credible fear of persecution or torture." 8 C.F.R. § 235.3(b)(4)(i). These written disclosures are provided on a Form M-444, titled "Information About Credible Fear Interview." 8 C.F.R. § 208.30(d)(2); *see* AR 198, 405-06, 410-11, 641. "If the alien is unable to proceed effectively in English, and if the asylum officer is unable to proceed competently in a language chosen by the alien, the asylum officer shall arrange for the assistance of an interpreter in conducting the interview." 8 C.F.R. § 208.30(d)(5). And if an asylum officer "determines" that the alien is unable to "participate effectively in the interview because of illness, fatigue, or other impediments, the officer may reschedule the interview." *Id.* § 208.30(d)(1).

If the interviewing officer determines that the alien has a credible fear of persecution (sometimes called a positive credible-fear determination), the alien is placed in removal proceedings under 8 U.S.C. § 1229a, 8 C.F.R. § 208.30(f), and "the alien shall be detained for further consideration of the application for asylum," 8 U.S.C. § 1225(b)(1)(B)(ii). In removal proceedings pursuant to § 1229a, the alien may apply for asylum or other relief or protection from removal. *Id.* § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(f). And in § 1229a removal proceedings an alien may appeal an adverse decision from an immigration judge to the Board of Immigration Appeals (BIA), and then may obtain judicial review of an adverse Board decision by filing a petition for review in the appropriate federal court of appeals. 8 U.S.C. § 1252(a)(1).

If, however, the interviewing asylum officer determines that the alien does not have a credible fear (sometimes known as a negative credible-fear determination), the alien is not placed in removal proceedings under § 1229a. But he may seek review of the credible-fear determination before an immigration judge. *Id.* § 1225(b)(1)(B)(iii)(I), (III); 8 C.F.R. § 1208.30(g)(2). Review by the immigration judge is *de novo*. 8 C.F.R. § 1003.42(d). "Such review shall include an opportunity for the alien to be heard and questioned by the immigration judge, either in person or

by telephonic or video connection." 8 U.S.C. § 1225(b)(1)(B)(iii)(III). The immigration judge "may receive into evidence any oral or written statement which is material and relevant to any issue in the review." 8 C.F.R. § 1003.42(c). If, after review, the immigration judge concludes that the alien has established a credible fear, the immigration judge will vacate the asylum officer's decision, and the alien will be placed in removal proceedings under § 1229a and may apply for asylum or other relief or protection from removal. *Id.* § 1003.42(f). But if the immigration judge agrees with the asylum officer that the alien lacks a credible fear of persecution, the alien must be "removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I); 8 C.F.R. § 1208.30(g)(2)(iv)(A). The INA bars further review by the Board or any court of the credible-fear determination. 8 U.S.C. §§ 1225(b)(1)(C), 1252(a)(2)(A)(iii), (e)(2); 8 C.F.R. § 1003.42(f).

Transit Rule. On July 16, 2019, the Department of Justice (DOJ) and DHS jointly published an interim final rule, "Asylum Eligibility and Procedural Modifications" (also known as the "Third Country Transit Rule" or "Transit Rule"). 84 Fed. Reg. 33,829, codified at 8 C.F.R. §§ 208.13(c)(4), 208.30(e)(2)-(3), (5), 1208.13(c)(4), 1208.30(g)(1). Subject to certain exceptions, the Transit Rule establishes a mandatory bar on asylum eligibility for an alien who enters or attempts to enter the United States at the southern border, but who did not apply for protection from persecution or torture where it was available in at least one third country through which the alien transited en route to the United States. 84 Fed. Reg. at 33,835. The Transit Rule requires asylum officers and immigration judges to apply this bar on asylum eligibility when conducting and reviewing credible-fear screening during expedited removal. *Id.* at 33,830. This means that when an alien in expedited removal is ineligible for asylum under the Transit Rule, the asylum officer will make a negative credible-fear determination. The asylum officer will then apply "the long-established reasonable-fear standard to assess whether further proceedings on a possible

statutory withholding or CAT protection claim are warranted." *Id*. at 33,837. A "reasonable fear of persecution or torture" means that there is a "reasonable possibility that [the alien] would be persecuted on account of his or her race, religion, nationality, membership in a particular social group or political opinion, or a reasonable possibility that [the alien] would be tortured in the country of removal." 8 C.F.R. § 208.31(c); *see O.A. v. Trump*, 404 F. Supp. 3d 109, 120 (D.D.C. 2019) ("Withholding of removal . . . requires a more substantial showing than the 'well-founded fear of persecution' standard applicable in asylum cases.").

Although the Transit Rule initially was enjoined nationwide by a single district court, the Supreme Court stayed that injunction. *Barr v. East Bay Sanctuary Covenant*, 140 S. Ct. 3 (2019) (mem). Thus, all non-Mexican nationals, including the individual Plaintiffs from El Salvador, who fail to demonstrate that they sought asylum protection in a third country before reaching the U.S. southern border after the Rule's July 16, 2019 effective date, are categorically ineligible for asylum under the Transit Rule.

Detention Pending Expedited Removal. Aliens subject to expedited removal are subject to mandatory detention during the pendency of the expedited removal processes. *See* 8 U.S.C. § 1225(b)(1)(B)(ii), (b)(1)(B)(iii)(IV). The statute does not specify that an alien must be detained by a specific sub-component of DHS or in a particular location. *See id.* As a general matter, DHS retains discretion to house aliens pending a decision on their admissibility in "United States Government facilities" "or facilities adapted or suitably located for detention." *Id*. § 1231(g)(1). And credible-fear interviews may occur "either at a port of entry or at such other place designated by the [Secretary]." *Id.* § 1225(b)(1)(B)(i).

## FACTUAL AND PROCEDURAL BACKGROUND

PACR and HARP. Before October 2019, aliens in expedited removal generally would be transferred to ICE custody for credible-fear interviews. During the first few months of fiscal year

2019, more than half of the credible-fear screenings were completed in ten days or less. AR 11.

In September 2019, DHS, along with its immigration components CBP, ICE, and U.S. Citizenship and Immigration Services (USCIS), promulgated various guidance documents to "address the migration crisis along the Southwest Border" and to "effectuate removals of amenable aliens and reduce the number of aliens released into the interior of the United States where such releases are not required by law or merited as a matter of enforcement discretion." AR 636; *see also* AR 636-39. Recognizing the "resource constraints" of ICE detention facilities to effectively "deliver[] consequences to those who violate our immigration laws," AR 639, DHS developed a pilot that would allow immigration officers the discretion to hold certain aliens in CBP custody, rather than ICE custody, during the during the credible-fear interview process, AR 640-43. That pilot, PACR, launched in El Paso, Texas, on October 7, 2019. AR 641.

Immigration officers retain the discretion to choose among different statutorily authorized means of assessing admissibility and removability from this country, including PACR. AR 644. Aliens amenable to PACR must be non-Mexican single adults or family units who arrive from the southern border, who have been placed in expedited removal proceedings, who express a fear of return, and who may be subject to the Transit Rule—meaning they did not apply for asylum in Mexico or another country through which they traveled. AR 640-41. If an immigration officer decides to place an alien in PACR, the alien's credible fear claim is processed expeditiously while also receiving the procedural protections required by the INA and implementing regulations. AR 640-43.

Specifically, the PACR guidance reminds officers that, as required by the INA and regulations, "Aliens who are referred for a credible fear interview will be given one calendar day after arrival at the facility to access phones, as often as operationally feasible, and contact/consult

with any person of their choosing, including an attorney." AR 641.[1] An alien may waive the
consultation period if they wish to move forward immediately. AR 641. USCIS "continues to use
all standard processes to adjudicate credible fear claims" for aliens detained in CBP custody,
"except as explicitly stated or changed by the IFR," *i.e.* the Transit Rule. AR 641. Accordingly,
"[a]fter USCIS receives a complete referral package from CBP, including forms I-860, I-867A&B
and M-444, the asylum office will schedule the case for a telephonic interview." AR 642. During
the interview, the alien must be in a "separate" location that "allows the alien privacy and the
ability to be free from being overheard." AR 642. Additionally, an "alien's consultant or attorney
may participate in the interview telephonically." AR 642. A supervisory asylum officer must
review the asylum officer's determination before a final decision is issued. AR 642. Aliens who
receive positive credible-fear determinations are placed into removal proceedings pursuant to
§ 1229a, and the alien is transferred to ICE custody to for ICE to make a custody or parole
determination. AR 642. Aliens who receive negative credible-fear determinations may request
immigration judge review. AR 642. The policy sets a goal or processing aliens expeditiously, and
provides that CBP should transfer any aliens detained for longer periods to ICE custody, either for
long-term detention or release. AR 643.

On October 28, 2019, DHS developed similar guidance, the HARP, for Mexican nationals
who arrive at the El Paso port of entry, are processed for expedited removal, and express a fear of
return to Mexico. AR 645. HARP operates in the same manner as PACR, wherein aliens remain
in CBP custody during the credible-fear interview process. AR 645-47. Otherwise, the procedures

---

[1] On July 2, 2019, USCIS issued a guidance memorandum entitled "Reduction of Credible Fear
Consultation Period," which reduced the minimum consultation period from 48 hours to "one full
calendar day from the date of arrival at a detention facility." AR 405-06. That guidance is being
challenged in *L.M.-M. v. Cuccinelli*, 1:19-cv-02676 (D.D.C.), and Plaintiffs do not—and cannot—
challenge that guidance here.

are the same as they are for aliens in ICE custody. AR 645-47. Specifically, aliens still receive a Form M-444 explaining the credible-fear process and a list of pro bono legal service providers, and aliens still have the opportunity to consult with attorneys or others during the process. AR 645. Additionally, the "location for consultation calls must allow sufficient privacy to allow for discussion of confidential matters." AR 645.

PACR has since expanded to the Rio Grande Valley and Yuma sectors, but HARP remains limited to El Paso.

This Lawsuit. On December 5, 2019—59 days after PACR began—Plaintiffs filed this suit and filed an amended complaint later the same day. Plaintiffs moved for summary judgment on January 27, 2020.

Five of the individual Plaintiffs are from El Salvador, crossed the U.S. southern border illegally, and were apprehended by U.S. Border Patrol shortly thereafter. Defendants' Statement of Undisputed Material Facts (DSUF) ¶¶ 1, 8. The other five individual Plaintiffs are from Mexico, and they presented at the El Paso port of entry without valid entry documents. DSUF ¶ 16. All of the individual Plaintiffs were placed in expedited removal proceedings. DSUF ¶¶ 2, 9, 16. Plaintiffs do not challenge that placement. And the Salvadoran Plaintiffs do not challenge the applicability of the Transit Rule, which bars their eligibility for asylum.

Each individual Plaintiff was placed in PACR or HARP, and therefore remained in CBP custody during their credible-fear interviews and immigration-judge review. DSUF ¶¶ 2, 9, 16. Besides the timing and the location, the credible-fear and review process proceeded as they otherwise would in the absence of PACR or HARP: Each Plaintiff received a list of pro bono counsel and was given an opportunity to consult with any persons of their choosing, including attorneys. DSUF ¶¶ 2-3, 9-10, 16. Each Plaintiff then received a credible-fear interview, and they either affirmatively stated that they wished to proceed without further consultation or did not

request additional consultation time. DSUF ¶¶ 3, 12, 17. At the conclusion of their interviews, each received a negative credible-fear determination. DSUF ¶¶ 5-6, 13-14, 18. The Mexican Plaintiffs waived immigration-judge review and thus their expedited removal orders were final. DSUF ¶ 19. The Salvadoran Plaintiffs sought immigration-judge review of the negative credible-fear determinations, and the immigration judges affirmed those determinations for each Plaintiff, making their removal orders final. DSUF ¶¶ 6-7, 14-15. Plaintiffs were each removed based on those orders prior to initiation of this lawsuit. DSUF ¶¶ 7, 15, 19.

Separately, Las Americas alleges that it is a "non-profit legal services organization based in El Paso that is dedicated to serving the legal needs of low-income immigrants, including refugees and asylum seekers." ECF No. 21-9, Corchado Decl., ¶ 4. It further alleges that "PACR and HARP have disrupted Las Americas' operations in the El Paso area and forced us to divert resources to provide legal and other assistance to asylum seekers in CBP detention." *Id.* ¶ 7.

Plaintiffs generally claim that PACR and HARP are unlawful because, they allege, aliens in CBP custody have inadequate access to counsel during the credible-fear interview process. Am. Compl. ¶¶ 200-13. Plaintiffs bring six claims. *First*, Plaintiffs claim that PACR and HARP violate 8 U.S.C. § 1225(b)(1)(B)(iv), which governs an alien's right to "consult" with counsel prior to a credible fear interview, "by preventing individuals from accessing counsel or otherwise consulting with individuals of their choosing during the credible fear process." Am. Compl. ¶ 201. *Second*, Plaintiffs claim that PACR and HARP violate 8 C.F.R. § 208.30(d)(4), the regulation governing the right to "consult" in credible-fear interviews, "by preventing individuals from accessing counsel or otherwise consulting with individuals of their choosing during the credible fear process" and "by preventing counsel and other individuals that asylum seekers choose to consult from being present at the credible fear interview." Am. Compl. ¶ 203. *Third*, Plaintiffs claim that PACR and HARP violate 8 U.S.C. § 1362 and 5 U.S.C. § 555(b) "by preventing individuals from accessing

counsel during the credible fear process, including in the credible fear interview itself." Am. Compl. ¶ 206. *Fourth*, Plaintiffs claim that PACR and HARP violate the Administrative Procedure Act, 5 U.S.C. § 706(2), because the guidance is "arbitrary, capricious, an abuse of discretion, and contrary to law" for, among other things, "fail[ing] to consider" "that the programs deny asylum seekers the ability to consult with counsel" and "the effect of the conditions of confinement in CBP facilities on asylum seekers' credible fear interviews." Am. Compl. ¶ 208. *Fifth*, Plaintiffs claim that PACR and HARP violate the INA, implementing regulations, the Convention Against Torture, and FARRA by "effectively denying a meaningful opportunity to consult with and be assisted by attorneys or other individuals prior to and during the credible fear process and the immigration judge review process, and to have attorneys or others present at the credible fear interview," and by "maintaining conditions that hinder the ability to meaningfully participate in credible fear proceedings." Am. Compl. ¶ 209. *Sixth*, Plaintiffs claim that PACR and HARP violate the Due Process Clause by "effectively denying a meaningful opportunity to consult with and be assisted by attorneys or others prior to and during the credible fear process and the immigration review process, and to have attorneys or others present at the credible fear interview," and by "effectively denying a meaningful opportunity to apply for asylum, withholding of removal under 8 U.S.C. § 1231(b)(3), and relief from removal under CAT." Am. Compl. ¶ 213.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But in a case involving judicial review of a final agency action under the APA, 5 U.S.C. § 706, "the standard set forth in Rule 56(a) does not apply because of the limited role of a court in reviewing the administrative record." *AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 81 (D.D.C. 2007). "Under the APA, it is the agency's

responsibility to resolve the factual issues and arrive at a decision that is supported by the administrative record, and the court is left to 'determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Mashack v. Jewell*, 149 F. Supp. 3d 11, 19 (D.D.C. 2016); *see also Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977). In assessing agency action, the court must give the agency a "presumption of regularity," *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415 (1971), and defer to how the agency decides to allocate its resources at least to the extent it has the power to persuade, *see R.J. Reynolds Tobacco Co. v. U.S. Dep't of Agric.*, 130 F. Supp. 3d 356, 371 (D.D.C. 2015) (K.B. Jackson, J.).

## ARGUMENT

### I.     This Court lacks jurisdiction over Plaintiffs' claims.

#### A.     This Court lacks jurisdiction to adjudicate Las Americas' claims or any challenges to expedited removal procedures in place on or before October 5, 2019.

Title 8 U.S.C. § 1252(e)(3)—the sole provision authorizing suits challenging changes to expedited removal procedures—bars review of Las Americas' claims.[2] Section 1252(e)(3)

---

[2] In Plaintiffs' amended complaint, they assert that jurisdiction is also proper under 28 U.S.C. §§ 1331, 1343, 1361, and 5 U.S.C. §§ 702, 706. Am. Compl. ¶ 15. But Plaintiffs' motion for summary judgment abandons any argument that those provisions could provide the Court with jurisdiction, and Plaintiffs instead rely only on 8 U.S.C. § 1252(e)(3) as a means to "challeng[e] written policies implementing 8 U.S.C. § 1225." MSJ Mem. 16. This is appropriate because section 1252(e)(3) provides the only plausible basis of jurisdiction here. Section 1252(a)(2), titled "Matters not subject to judicial review," provides that, for "[r]eview relating to section 1225(b)(1)," "[n]otwithstanding any other provision of law . . . no court shall have jurisdiction to review . . . except as provided in [section 1252(e)(3)]" "a decision by the Attorney General to invoke the provisions of such section," or "procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title." 8 U.S.C. § 1252(a)(2)(A)(ii), (iv). Section 1252(a)(2)(A) squarely removes from federal courts any jurisdiction to review issues "relating to section 1225(b)(1)" other than as explicitly permitted by section 1252(e)(3), and thus eliminates any other basis for district-court jurisdiction. *See Patchak*

authorizes "[j]udicial review of determinations under section 1225(b) of this title and its implementation" in D.C. district court, "limited to determinations of—(i) whether [section 1225(b)], or any regulation issued to implement such section, is constitutional; or (ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General [or Secretary] to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." 8 U.S.C. § 1252(e)(3)(A). Such suits "must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure . . . is first implemented." *Id.* § 1252(e)(3)(B).

Only an individual who is subject to expedited removal procedures may invoke section 1252(e)(3). Section 1252(e)(3), titled "challenges on [the] validity of the system," allows suit, but only if Plaintiffs are subject to "orders under section 1225(b)(1)." *Id.* (title), § 1252(e)(3)(A). Section 1252(e)(3) thus grants jurisdiction only if there is a reviewable "implementation" under section 1225(b)(1) *and* a reviewable "determination[]" under section 1225(b)(1). *Id.* § 1252(e)(3)(A). The triggering provision's reference to "[d]eterminations under section 1225(b)" requires just that—a "determination." That is confirmed by the fact that section 1252(e)(3) appears in a section titled "[j]udicial review of orders under section 1225(b)(1)." Thus, as the D.C. Circuit has already held, these provisions, combined with others in section 1252, mean that challenges to expedited removal procedures may be brought "by, and only by, *aliens against whom the new procedures had been applied.*" *Am. Immigration Lawyers Ass'n v. Reno* ("*AILA*"), 199 F.3d 1352, 1360 (D.C. Cir. 2000) (emphasis added) Under *AILA*, organizations like Las Americas may not

---

*v. Zinke*, 138 S. Ct. 897, 905 (2018) (phrase "notwithstanding any other provision of law" in jurisdictional provision encompasses 28 U.S.C. § 1331).

invoke section 1252(e)(3): Las Americas has not been the subject of an admissibility determination, 8 U.S.C. § 1225(b)(1)(A), or a credible-fear determination, 8 U.S.C. § 1225(b)(1)(B), as section 1252(e)(3) demands.[3]

Furthermore, to the extent that Plaintiffs challenge expedited removal procedures that were in place on or before October 5, 2019 (more than 60 days before this suit was initiated), such claims are time-barred under section 1252(e)(3)(B). Plaintiffs appear to challenge not just DHS's decision for immigration officers to hold certain aliens in CBP, rather than ICE, custody, but also prior policies governing the timing of the credible-fear interview and review thereof. MSJ Mem. 21-24. But Plaintiffs cannot challenge the first set of policies because they were implemented on July 2, 2019, AR 405-06, more than 60 days before the initiation of this lawsuit.

Finally, Plaintiffs seem to challenge the *conditions of confinement* in CBP custody as some sort of expedited removal procedure. MSJ Mem. 29-30, 39-40. But that claim would be both time-barred and not subject to review under section 1252(e)(3). CBP's policies governing conditions of confinement generally have been in place for years, and so are outside the 60-day window. AR 419-33, 605-35. And even were that not so, guidance instructing immigration officers that they *may* exercise their statutory authority to place certain aliens in CBP rather than ICE custody is not

---

[3] The Government respectfully disagrees with the contrary conclusion reached in *Make the Road New York v. McAleenan*, 405 F. Supp. 3d 1, 30-31 (D.D.C. 2019), *appeal docketed*, No. 19-5298 (D.C. Cir.), as the court there concluded that *AILA* was limited to the "third-party standing" context. *AILA*'s reasoning is clear that the D.C. Circuit's holding on section 1252(e)(3) is not limited to issues of third-party standing. This Court also suggested that section 1252(e)(3) does not require a determination *and* an implementation to permit review. 405 F. Supp. 3d at 29. That too is wrong: the statute authorizes challenges to "determinations under section 1225(b) of this title and its implementation." "'And' does not mean 'or,'" and Congress "would have used the word 'or' had it intended the disjunctive" reading Plaintiffs' propose. *Adams v. U.S. Forest Serv.*, 671 F.3d 1138, 1145 (9th Cir. 2012); *see Union Neighbors United, Inc. v. Jewell*, 831 F.3d 564, 582 (D.C. Cir. 2016) ("the statute uses the conjunctive 'and' . . . suggesting that the terms should be read together, not as a sequence"). This Court's *Make the Road* decision is now on appeal, with oral argument scheduled for March 6, 2020.

an "implementation" of the expedited removal statute, section 1225(b)(1). Instead, such guidance implements 8 U.S.C. § 1231(g), which provides that the Secretary "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." Section 1231 is not section 1225(b)(1), and accordingly section 1252(e)(3) does not authorize review of DHS's detention policies or decisions for aliens pending their removal from this country.

**B.     Plaintiffs lack Article III standing and otherwise fail to establish that their case is justiciable.**

Plaintiffs—both individuals and Las Americas—lack Article III standing. Article III standing has three components: (1) "injury in fact," (2) that is fairly traceable to the challenged conduct of the defendant, (3) that is "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "Foremost among these requirements is injury in fact—a plaintiff's pleading and proof that he has suffered the 'invasion of a legally protected interest' that is 'concrete and particularized.'" *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018). Regarding redressability, the "key word is 'likely,' and thus, 'the prospect of obtaining relief from the injury as a result of a favorable ruling' cannot be 'too speculative.'" *Abulhawa v. United States Dep't of the Treasury*, 239 F. Supp. 3d 24, 36 (D.D.C. 2017) (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984)). Thus, if "the challenged conduct is at best an indirect or contributing cause of the plaintiff's injury," "the plaintiff faces an uphill climb in pleading and proving redressability." *West v. Lynch*, 845 F.3d 1228, 1236 (D.C. Cir. 2017). Finally, Plaintiffs must demonstrate standing as to each Plaintiff, for each claim, and for each form of relief sought. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). Plaintiffs must establish each element of standing "in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Thus, at the summary-judgment stage, Plaintiffs may not rest on "mere allegations" but instead "must

'set forth' by affidavit or other evidence 'specific facts.'" *Id.*

### 1.    Las Americas

Las Americas has not suffered a cognizable injury necessary to establish Article III standing. Where, as here, an organization sues on its own behalf, it must establish standing in the same manner as an individual. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975).

Las Americas seeks to establish standing based on an alleged interference with its mission. *See* Am. Compl. ¶¶ 114-25. Organizations may have standing in some situations where their core activities are impaired, as recognized by the Supreme Court in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). But *Havens* arose in the context of a private right of action under the Fair Housing Act, not the generalized challenges that Plaintiffs pursue here, where Congress made plain its interest in channeling review to those directly affected—aliens. *See Spokeo*, 136 S. Ct. at 1549 ("Congress may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'"). Congress's aim to allow private enforcement of statutory prohibitions against discriminatory housing practices thus drove the Supreme Court's standing analysis. *See Havens*, 455 U.S. at 373-74. And even in the fair-housing context, an organization alleging standing under *Havens* must establish that it would have suffered some other injury if it had not diverted resources to counteracting the problem, because otherwise the diversion of resources is a purely self-inflicted injury. *See Fair Empl. Council of Greater Washington, Inc. v. BMC Marketing*, 28 F.3d 1268, 1276-77 (D.C. Cir. 1994). Here, however, the INA confers no "legally cognizable interests," *Spokeo*, 136 S. Ct. at 1549, on Las Americas' desire to pursue a specific mission in a specific way. Indeed, with expedited removal, it does the opposite, by limiting judicial review of any claims related to expedited removal procedures to those arising from "orders under section 1225(b)(1)," 8 U.S.C. § 1252(e); *see also id.* § 1252(a)(2)(A), and by not providing for an affirmative right to *counsel* during expedited removal processes. *See id.* § 1225(b)(1)(B)(iv).

Moreover, Las Americas concedes that its staff members have been able to communicate telephonically with multiple individuals subject to PACR and HARP. ECF No. 35-7, Corchado Supp. Decl., ¶ 6, 12. That Las Americas may have to expend some effort to communicate with individuals it wishes to represent is insufficient to provide Article III standing.

Further, a person or organization "lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 804-07 (D.C. Cir. 1987) (applying principle to immigration context). An organization similarly has "no judicially cognizable interest in procuring enforcement of the immigration laws" against someone else. *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 897 (1984). And a person generally lacks standing to challenge the government's provision (or denial) of benefits to a third party. *E.g.*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342-46 (2006); *cf. O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 788 (1980) (discussing "[t]he simple distinction between government action that directly affects a citizen's legal rights" and "action that is directed against a third party and affects the citizen only indirectly or incidentally").

To the extent that Las Americas relies on the harms to third parties to justify both its own standing and its request for an injunction, "a party must assert his own legal rights and cannot rest his claim to relief on the legal rights of third parties." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017). Las Americas cannot allege that it is asserting third-party standing based on any purported right that aliens have to apply for asylum within the United States. *See AILA*, 199 F.3d at 1364 (rejecting organizational standing "to raise claims, whether statutory or constitutional, on behalf of aliens," noting "the judicial presumption against suits seeking relief for a large and diffuse group of individuals, none of whom are party to the lawsuit"); *Kowalski v. Tesmer*, 543 U.S. 125, 134 (2004)) ("[W]e hold that the attorneys do not have third-party standing

to assert the rights of Michigan indigent defendants denied appellate counsel.").

Las America's claims are also outside of the zone of interests of the statutes that it invokes. The APA does not "allow suit by every person suffering injury in fact." *Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388, 395 (1987). It provides a cause of action only to one "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. To be "aggrieved," "the interest sought to be protected" must "be arguably within the zone of interests to be protected or regulated by the statute ... in question." *Clarke*, 479 U.S. at 396 (modifications omitted). "[O]n any given claim the injury that supplies constitutional standing must be the same as the injury within the requisite 'zone of interests.'" *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996). Las Americas invokes no such interest here.

Nothing in the INA and its asylum provisions even arguably suggests that the statute protects the interests of "a nonprofit organization based in El Paso, Texas that provides free and low-cost direct legal services to noncitizens, including asylum seekers." First Am. Compl. ¶ 30. The asylum provisions neither regulate the organizational Plaintiff's conduct nor create any benefits for which Las Americas itself might be eligible. When confronted with a similar challenge brought by "organizations that provide legal help to immigrants," Justice O'Connor concluded that the Immigration Reform and Control Act "was clearly meant to protect the interests of undocumented aliens, not the interests of [such] organizations," and the fact that a "regulation may affect the way an organization allocates its resources . . . does not give standing to an entity which is not within the zone of interests the statute meant to protect." *INS v. Legalization Assistance Project of L.A. Cty.*, 510 U.S. 1301, 1305 (1993) (O'Connor, J., in chambers). The D.C. Circuit and other courts have thus held that immigrant advocacy organizations are outside the immigration statutes' zone of interests. *See, e.g.*, *Fed'n for Am. Immigration Reform, Inc. (FAIR) v. Reno*,

93 F.3d 897, 900-04 (D.C. Cir. 1996).[4]

Las Americas cannot make the requisite showing because the expedited removal statute makes clear that "Congress meant to allow litigation challenging the new system by, and only by, *aliens against whom the new procedures had been applied*." *AILA*, 199 F.3d at 1360 (emphasis added). Prior to the credible-fear interview, aliens have a statutory right to consult, but there is no authority providing that Las Americas possesses a similar right to communicate with detained aliens. Cases addressing other immigration provisions fortify the conclusion that Las Americas is not within the statutory zone of interests. *See Legalization Assistance Project*, 510 U.S. at 1305 ("[The statute] was clearly meant to protect the interests of undocumented aliens, not the interests of organizations such as respondents . . . The fact that the INS regulation may affect the way an organization allocates its resources . . . does not give standing to an entity which is not within the zone of interests the statute meant to protect."); *N.W. Immigrant Rights Project v. USCIS*, 325 F.R.D. 671, 688 (W.D. Wash. 2016) ("[T]he text of the relevant provisions [cannot] be fairly read to implicate Organizational Plaintiffs' interest in the efficient use of resources."). Because Las Americas is simply a bystander to the statutory scheme, the (alleged) effects on its resources are outside the statutory zone of interests. *See Legalization Assistance Project*, 510 U.S. at 1305 ("The fact that the INS regulation may affect the way an organization allocates its resources . . . does not give standing to an entity which is not within the zone of interests the statute meant to protect.").[5]

---

[4] Although the Ninth Circuit recently held otherwise in *East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1243-44 (9th Cir. 2018), it did not consider *FAIR*, 93 F.3d at 903, which held that persons were outside the zone of interests of the INA provisions that they challenged even though they were within the zone of interests of another statutory provision, and the case is still being litigated. Regardless, *East Bay* conflicts with controlling D.C. Circuit authority.

[5] The INA otherwise further confirms that such organizations are not within the zone of interests. An alien's challenge to an asylum determination must occur in individual removal proceedings, and others may not bring suit on their behalf. 8 U.S.C. § 1252(a); *see Block v. Cmty. Nutrition*

2.    **Individual Plaintiffs**

The individual Plaintiffs fare no better in their attempt to establish standing. Plaintiffs fail to establish either that their alleged injury is "fairly traceable" to the PACR and HARP guidance or that that their alleged injury would be remedied by this Court setting aside the PACR and HARP guidance. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

As an initial matter, Plaintiffs' present allegations regarding their experiences during the credible-fear process—that they did not understand the process, could not concentrate during the interview, or were not being treated well in custody, MSJ Mem. 12-13—are contradicted by their statements made during the interviews themselves. All of the Plaintiffs acknowledged, under oath and through an interpreter, that they received and understood the advisals regarding the credible-fear process. DSUF ¶¶ 4, 12, 16. They also admitted that they received lists of pro bono attorneys, and that they had the opportunity to make phone calls before their interviews. DSUF ¶¶ 3-4, 10, 12, 16-17. All of the Salvadoran Plaintiffs concede that they were able to speak with family members in the United States, DSUF ¶¶ 3, 10, and the Mexican Plaintiffs say they "gave up" on contacting anyone after trying to make phone calls for only "15 minutes," DSUF ¶ 16. During the interviews, all of the Plaintiffs either affirmatively agreed to proceed without counsel or acknowledged that they did not have a consultant or attorney and did not request more time to try to find one. DSUF ¶¶ 4, 12, 17. And all of the Plaintiffs stated during their interviews, under oath, that they were feeling well, were being treated well in CBP facilities, and had no medical issues or concerns. DSUF ¶¶ 4, 12, 17.

Furthermore, as Plaintiffs emphasize, this lawsuit challenges their detention in CBP

---

*Inst.*, 467 U.S. 340, 351 (1984). And as to any change to expedited removal, if Plaintiffs' claims were construed as challenging such changes, 8 U.S.C. § 1252(e)(3) creates the exclusive review scheme for such challenges and precludes organizational challenges.

custody, rather than ICE custody, during their credible-fear interview. *E.g.*, MSJ Mem. 16 (challenging "Defendants' new policy of holding asylum seekers in CBP custody throughout the credible fear process"). But their alleged injury relates to the ultimate *outcome* of their interviews. *See* MSJ Mem. 41 ("Individual Plaintiffs were removed after adverse determinations in credible fear proceedings conducted under [PACR and HARP]."); MSJ Mem. 42-43 ("The Individual Plaintiffs here have suffered and are suffering irreparable harm" because they are "living in fear" in their "home countries."). Plaintiffs do not provide any evidence that detention in ICE custody would have had any impact on the outcome of their credible-fear determinations. Rather, Plaintiffs generally assert that more access to counsel leads to more positive credible-fear determinations. MSJ Mem. 21-27. That may be true, but applying that basic premise to the litigants in this case requires a long chain of hypotheticals: if Plaintiffs only had been detained in ICE custody, they might have made additional phone calls to additional attorneys, and one of those attorneys might have answered or called back, and that attorney might have agreed to prepare Plaintiffs for their credible-fear interviews, and that preparation might have reframed the facts of their claims such that an asylum officer might have found their claim to be legally sufficient to establish credible fear or, for the Salvadoran Plaintiffs subject to the Transit Rule, to establish reasonable fear. Such an "attenuated chain" of events "lack[s] any legitimate causal connection to the challenged policies," *Arpaio*, 797 F.3d at 20, and thus is insufficient to establish Article III standing.

## II.   Plaintiffs' claims fail on the merits.

Even if the Court finds that it has jurisdiction and that Plaintiffs have standing, their claims fail on the merits.

### A.   Claims 1-3: The PACR and HARP guidance does not violate any statutory or regulatory right to "access counsel."

Plaintiffs contend that aliens in CBP custody have "no meaningful way to contact counsel

or others" and thus the PACR and HARP guidance "violates statutory and regulatory safeguards." MSJ Mem. 33; *see also id.* 33-39. These claims fail because no statute or regulation requires that aliens processed for expedited removal, even during credible-fear interviews, be held in ICE custody rather than held in CBP custody, or that such aliens have a general right to access counsel beyond the opportunity to consult provided for in the INA.

Under 8 U.S.C. § 1225(b)(1)(B)(iv), "[a]n alien who is eligible for" a credible-fear interview "may consult with a person or persons of the alien's choosing *prior to* the interview *or any review thereof*, according to regulations prescribed by the Attorney General. Such consultation shall be at no expense to the Government and *shall not unreasonably delay* the process." (Emphases added.) The implementing regulations, in turn, provide that "[s]uch consultation shall be made available *in accordance with the policies and procedures of the detention facility where the alien is detained*, shall be at no expense to the government, and shall not unreasonably delay the process." 8 C.F.R. § 235.3(b)(4)(ii) (emphasis added).

Here, as part of PACR or HARP, Plaintiffs were afforded all relevant statutory and regulatory protections: The individual Plaintiffs acknowledge that all they received the Form M-444 explaining the credible-fear process and a list of pro bono legal service providers. DSUF ¶¶ 4, 12, 17. They also acknowledge that they had the opportunity to make phone calls, including to attorneys on the list, and that they made such phone calls. DSUF ¶¶ 3, 10, 16. And Las Americas acknowledges that its employees answered such phone calls from aliens when calls were made to them, as opposed to other organizations on the pro bono legal service providers list. ECF No. 35-7, Corchado Supp. Decl., ¶ 6, 12. Neither the statute nor the regulation prescribes that an alien must be held in a certain facility by a certain component of DHS during the credible-fear process. Nor do the statute and regulations require "access to counsel," let alone "regular" or "in-person" access to counsel, and the regulation specifically notes that the consultation right depends on the

"policies and procedures of the detention facility where the alien is detained." 8 C.F.R.

§ 235.3(b)(4)(ii). Indeed, this Court, affirmed by the D.C. Circuit, has already held that such access

to counsel is all that is required by section 1225(b)(1)(B)(iv)'s consultation provision. *See AILA*,

18 F. Supp. 2d at 54-55 (D.D.C. 1998) ("consult" requirement does not afford general "access to

counsel," but instead need only afford access "prior to the credible fear interview"), *aff'd*, 199 F.3d

at 1357 (affirming this holding).

Even were there any ambiguity in the statute or regulations, DHS's reading of those

provisions—allowing immigration officers to decide to hold certain aliens in CBP custody during

credible-fear interviews—reasonably implements all statutory and regulatory obligations. *See id.*;

*cf. Nat. Res. Def. Council v. E.P.A.*, 571 F.3d 1245, 1253 (D.C. Cir. 2009) (the term "reasonably

available" is ambiguous). When a court reviews an agency's interpretation of a statute that it

administers, the ultimate question "is always, simply, whether the agency has stayed within the

bounds of its statutory authority." *District of Columbia v. Dep't of Labor*, 819 F.3d 444, 459

(D.C. Cir. 2016). When the "statute alone does not resolve the case," courts "look first to the

agency regulations, which are entitled to deference if they resolve the ambiguity in a reasonable

manner." *Coeur Alaska, Inc. v. S.E. Alaska Conservation Council*, 557 U.S. 261, 278 (2009). If

the "regulations too, are ambiguous," courts then turn "to the agencies' subsequent interpretation

of those regulations," and uphold the interpretation so long as it "is not plainly erroneous or

inconsistent with the regulations." *Id.* Applying that framework here, the statute requires only that

DHS "provide information" about the credible-fear interview and that an alien "may consult with

a person or persons of the alien's choosing prior to the interview or any review thereof, according

to regulations." 8 U.S.C. § 1225(b)(1)(B)(iv). The implementing regulations, in turn, provide that

"[s]uch consultation shall be made available in accordance with the policies and procedures of the

detention facility where the alien is detained, shall be at no expense to the government, and shall

not unreasonably delay the process." 8 C.F.R. § 235.3(b)(4)(ii). While in CBP custody for PACR and HARP, aliens are given information about the credible-fear interview and have the opportunity to consult with a person of their choosing during the credible-fear process, which is fully consistent with both statute and regulation. *See* 8 U.S.C. § 1225(b)(1)(B)(iv); 8 C.F.R. § 235.3(b)(4)(ii); *Decker v. NW Env. Defense Ctr.*, 568 U.S. 597, 613 (2013) ("It is well established that an agency's interpretation need not be the only possible reading of a regulation—or even the best one—to prevail. When an agency interprets is own regulation, the Court as a general rule, defers to it unless that interpretation is plainly erroneous or inconsistent with the regulation."); *AILA*, 18 F. Supp. 2d at 56 ("Here, the Attorney General's determination was eminently reasonable . . . Plaintiffs cannot impose upon the Attorney General any obligation to afford more procedures than the governing statute explicitly requires or that she has chosen to afford in her discretion.").

Plaintiffs contend that the statute and regulation mandate that aliens "subject to the credible fear process . . . are entitled to full representation by counsel," MSJ Mem. 34, and that this right to counsel includes "regular" telephonic access or "in-person" access to counsel, MSJ Mem. 35-37. But the statute and regulation provide no such thing. Rather, the statute provides only that an alien "may consult with a person or persons of the alien's choosing prior to the interview or any review thereof" and that the consultation "shall not unreasonably delay the process." 8 U.S.C. § 1225(b)(1)(B)(iv); *see* 8 C.F.R. § 208.30(d)(4). In making this argument, Plaintiffs rely on cases holding that a right to access counsel attaches to aliens in *removal proceedings under § 1229a*, not expedited removal. MSJ Mem. 34-35 (citing, for example, *Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir. 2005) ("The right to counsel in immigration proceedings is rooted in the Due Process Clause and codified at 8 U.S.C. § 1362 and 8 U.S.C. § 1229a(b)(4)(A)."). No such right to counsel exists in expedited removal. *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1088 (9th Cir. 2011) ("Barajas-Alvarado's claim that he was denied his right to counsel, is meritless on its face.

Barajas-Alvarado himself identifies no legal basis for his claim that non-admitted aliens who have not entered the United States have a right to representation, and we are aware of no applicable statute or regulation indicating that such aliens have any such right."); *United States v. Quinteros Guzman*, No. 3:18-cr-00031-001, 2019 WL 3220576, at *9 (W.D. Va. July 17, 2019) ("[T]he implementing regulations demonstrate that the opportunity to respond did not imply a right to counsel. First, no such right is specified in the expedited removal proceedings statute or implementing regulations."). Just because a right to counsel exists in removal proceedings under § 1229a—which include more procedural safeguards than expedited removal—Plaintiffs cannot simply superimpose that right into expedited removal.

Plaintiffs also invoke 8 U.S.C. § 1362, which provides that, "[i]n any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose," to argue that a "statutory right to counsel continues through an immigration judge's review of a negative credible fear finding." MSJ Mem. 34. But an immigration judge's review of a negative credible-fear finding is just that—a review of the asylum officer's determination on that one issue, and nothing more. 8 U.S.C. § 1225(b)(1)(B)(iii)(I), (III); 8 C.F.R. § 1208.30(g)(2). The alien cannot, for example, contest his inadmissibility, apply for any other relief from removal, or appeal an adverse decision from the immigration judge. 8 U.S.C. § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(f). Accordingly, credible-fear review by an immigration judge is not a "removal proceeding" that would be accompanied by the section 1362 right to counsel. *Compare* 8 U.S.C. § 1229a (full removal proceedings), *with id*. § 1225(b)(1) (expedited removal).

Furthermore, section 1225(b)(1)(B)(iv) does not require a consultation period both before *and* after the credible-fear interview; rather an alien "*may* consult with a person . . . of the alien's

choosing prior to the interview *or* any review thereof, according to regulations." 8 U.S.C. § 1225(b)(1)(B)(iv) (emphasis added). The word "may" dooms Plaintiffs' argument. Unlike the term "shall," which generally connotes a mandatory obligation, the term "may," is "permissive" and accords "broad agency discretion in selecting the appropriate manner" of implementation. *Prof'l Drivers Council v. Bureau of Motor Carrier Safety*, 706 F.2d 1216, 1221 (D.C. Cir. 1983); *see also Dickson v. Sec. of Def.*, 68 F.3d 1396, 1401 (D.C. Cir. 1995) ("[A] permissive term such as 'may' . . . suggests that . . . the agency [has discretion]."). The statute thus does not create some unlimited right to phone access at any time of the alien's choosing. *See Rosa v. McAleenan*, No. 1:19-cv-95, 2019 WL 5191095, at *22 (S.D. Tex. Oct. 15, 2019) ("As long as the notification [of the right to consult] occurs before the interview, the Government has complied with the statutory provision.").

Finally, Plaintiffs also assert a right to counsel under the APA, which provides that any "person compelled to appear in person before an agency or representative thereof is entitled to be . . . represented" and that a "party is entitled to appear in person or by or with counsel . . . in an agency proceeding," 5 U.S.C. § 555(b). MSJ Mem. 34. But as the Supreme Court has held, "Congress intended the provisions of the [INA] to supplant the APA in immigration proceedings." *Ardestani v. INS*, 502 U.S. 129, 133 (1991); *see Marcello v. Bonds*, 349 U.S. 302, 310 (1955) (holding that the INA "expressly supersedes the hearing provisions" of the APA, in light of "the background of the 1952 immigration legislation, its laborious adaptation of the [APA] to the deportation process, the specific points at which deviations from the [APA] were made, the recognition in the legislative history of this adaptive technique and of the particular deviations, and the direction in the statute that the methods therein prescribed shall be the sole and exclusive procedure for deportation proceedings"). The APA right-to-counsel provision does not govern expedited removal processes because the principle underlying both *Ardestani* and *Marcello* is that

the INA enacted a comprehensive scheme governing all immigration proceedings, one that does not accommodate the APA. *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1088 (9th Cir. 2011) ("[W]e are aware of no applicable statute or regulation indicating that such aliens have any such right."); *United States v. Quinteros Guzman*, No. 3:18-cr-00031-001, 2019 WL 3220576, at *10 (W.D. Va. July 17, 2019) ("[W]hen Congress passed the legislation including the expedited removal procedures, it did so against the background of the holdings in *Marcello* and *Ardestani*, which had established the general proposition that the APA did not apply to immigration proceedings.").[6]

In short, no statute or regulation prohibited Plaintiffs being held in CBP custody during their credible-fear interviews, and no statute or regulation mandated that Plaintiffs had a broad right to access counsel, rather than a limited right to consult, during those interviews. The PACR and HARP guidance is fully consistent with all statutes and regulations.

**B.      Claims 5-6: The PACR and HARP guidance does not deprive aliens of a "due process right" or a "meaningful opportunity" to apply for asylum and related protection from removal.**

Plaintiffs next contend that PACR and HARP violate aliens' due-process right to apply for asylum and related protection, MSJ Mot. 40-41, and that PACR and HARP deprive aliens of a "meaningful opportunity" to apply for asylum or related protection, MSJ Mot. 39-40. These claims fail as a matter of law.

The PACR and HARP guidance does not deprive Plaintiffs—applicants for admission

---

[6] In any event, the APA's right-to-counsel provision applies only when a person is "compelled to appear in person before an agency or representative thereof." 5 U.S.C. § 555(b). Here, Plaintiffs *requested* a credible-fear interview and some of them *requested* immigration judge review; they were not "compelled to appear" in the sense required by the APA. *See SEC v. Higashi*, 359 F.2d 550, 551 (9th Cir. 1966) (the right to counsel in 5 U.S.C. § 555(b) applies to a "witness subpoenaed to appear before any federal agency").

subject to expedited removal processes—of any right to which they are constitutionally entitled. An "expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). And it is "well settled that aliens seeking admission to the United States cannot demand that their application for entry be determined in a particular manner or by use of a particular type of proceedings. *For those aliens, the procedure fixed by Congress is deemed to be due process of law*." *Rafeedie v. INS*, 880 F.2d 506, 512-13 (D.C. Cir. 1989) (emphasis in original); *see also id.* ("[A]liens seeking admission to the United States . . . have no constitutional rights to any prescribed process."). Aliens subject to expedited removal lack any liberty interest in avoiding removal or to certain procedures when contesting removal. 8 U.S.C. § 1225(b)(1)(B)(iii); *see e.g.*, *Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *Knauff*, 338 U.S. at 544. Such aliens are entitled only to "those statutory rights granted by Congress." *Dia v. Ashcroft*, 353 F.3d 228, 243 (3d Cir. 2003).

Thus, Plaintiffs here are limited to the rights conferred by statute—the right to a credible-fear interview after expressing an intention to apply for asylum or a fear of persecution, 8 U.S.C. §§ 1225(b)(1)(A)(ii), 1225(b)(1)(B)(i), the right to receive information about that interview, *id*. § 1225(b)(1)(B)(iv), the right to "consult with a person or persons of the alien's choosing prior to the interview or any review thereof, according to regulations prescribed by the [Secretary]," *id*., and the right to "prompt review by an immigration judge" of a negative credible-fear determination, *id*. § 1225(b)(1)(B)(iii)(III). Plaintiffs have not demonstrated that any part of these statutory rights were impinged upon. Quite the opposite: Plaintiffs concede that they received credible-fear interviews, that they received information about those interviews beforehand, that they had the opportunity to consult with attorneys or others before the interview, and that they had the opportunity for immigration-judge review of their negative credible-fear determinations. DSUF ¶¶ 3-4, 10, 12, 16-17.

For similar reasons, there is no merit to Plaintiffs' assertion that the statutory credible-fear procedures are "undermine[d]" by "depriving asylum seekers of meaningful access to counsel" and detaining them in "conditions fundamentally incompatible with a meaningful and fair credible fear determination." MSJ Mot. 39-40. As explained above, the statute provides a clear procedure for aliens subject to expedited removal who express an intention to apply for asylum or a fear of persecution or torture, 8 U.S.C. §§ 1225(b)(1)(A)(ii), 1225(b)(1)(B), and Plaintiffs received that procedure. The statute does not provide a broad right to "meaningful access to counsel," nor does it provide a right to detention in a certain facility or by a certain subagency. Plaintiffs received all of the procedures, including the opportunity to apply for protection, to which they were statutorily entitled. *See Landon*, 459 U.S. at 32 ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").

C.     **Claim 4: The PACR and HARP guidance does not violate the APA.**

Plaintiffs also contend that PACR and HARP are unlawful because they were not the result of "reasoned decisionmaking." MSJ Mem. 16. This claim fails because there has been no "final action," and so the PACR and HARP guidance is not subject to review under the APA under the arbitrary-and-capricious standard. And even if it were, it is not "arbitrary and capricious" for DHS to exercise its discretion to allocate its limited resources while complying with its statutory and regulatory obligations.

1.     **The decision to initiate PACR and HARP does not constitute "final agency action" and is not subject to review under the APA.**

The APA requires the Court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Only a final agency action may be reviewed to see if

the agency has acted in an arbitrary-and-capricious manner. 5 U.S.C. § 704. "[P]reliminary, procedural, or intermediate agency action" is not "directly reviewable." *Id.* For an agency's decision to be considered final, (i) the action "must mark the 'consummation' of the agency's decisionmaking process;" and (ii) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177 (1997). *Am. Tort Reform Ass'n v. OSHA*, 738 F.3d 387, 395 (D.C. Cir. 2013) ("The APA only provides for judicial review of 'final agency action' and . . . statements of policy generally do not qualify because they are not finally determinative of the issues or rights to which [they are] addressed.").

Under that standard, the PACR and HARP guidance does not constitute final agency action. The PACR guidance on the pilot program explains that CBP, ICE, and USCIS all "commit to providing the appropriate resources and guidance necessary to implement the processes below." AR 640. It recognizes that these subcomponents will continue to work together to assess PACR's effectiveness and adjust resources and procedures as necessary. AR 640. The HARP guidance similarly recognizes that resource and space constraints will affect whether an alien may be placed in HARP. AR 645. The guidance does not create any substantive rules or rights, *see Perez v. Mort. Bankers Ass'n*, 135 S. Ct. 1199, 1204 (2015), or "bind" immigration officers to any specific result, *Broadgate Inc. v. USCIS*, 730 F. Supp. 2d 240, 246 (D.D.C. 2010), and thus it is unreviewable.

Furthermore, the PACR and HARP guidance simply explains that immigration officers have discretion regarding where to hold  certain aliens during the credible-fear interview process, is thus "committed to agency discretion" under the APA, *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993), and is therefore not subject to judicial review. *See* 5 U.S.C. § 701(a)(2) (waiving sovereign immunity only if agency action is not "committed to agency discretion by law"). The guidance explicitly provides that only certain aliens are amenable to being "considered" for the programs,

and immigration officers have discretion on whether to place an alien in PACR and HARP. AR 640, 644, 645. Because that decision always involves DHS discretion, Plaintiffs cannot obtain review of the PACR and HARP guidance under the APA. *See Angelex Ltd. v. United States*, 723 F.3d 500, 505-06 (4th Cir. 2013) ("Because the action that occurred in this case is explicitly committed to the discretion of the Coast Guard pursuant to APPS, we conclude that this matter was unreviewable, and thus, the district court lacked subject matter jurisdiction.").

### 2. The decision to initiate PACR and HARP is not arbitrary and capricious.

Even if the APA applied to PACR and HARP, the Court would still need to reject Plaintiffs' claims. Agency action shall be "set aside" only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency is accorded extensive latitude in making policy choices. "[T]he arbitrary and capricious standard is highly deferential and presumes agency action to be valid." *Am. Trucking Assocs., Inc. v. Fed. Motor Carrier Safety Admin.*, 724 F.3d 243, 314 (D.C. Cir. 2013). The scope of arbitrary-and-capricious review "is narrow," and courts are prohibited from "substitut[ing] [their] judgment for that of the agency." *Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1036 (D.C. Cir. 2012). To withstand arbitrary-and-capricious review, the agency need only elucidate "a rational connection between the facts found and the choice made." *Id.* The party "challenging an agency's action as arbitrary and capricious bears the burden of proof . . . to demonstrate that the agency's ultimate conclusions are unreasonable." *George v. Bay Area Rapid Transit*, 577 F.3d 1005, 1011 (9th Cir. 2009); *see also Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019) ("[A] court may not reject an agency's stated reasons for acting simply because the agency might also have had other unstated reasons. Relatedly, a court may not set aside an agency's policymaking decision solely because it might have been influenced by political considerations or prompted by an Administration's

priorities.").

DHS's decision to implement the PACR and HARP guidance is reasonable. DHS considered the migration crisis along the southwest border, the increase in asylum claims, and the limited resources of ICE detention. AR 2, 4-5, 8, 13-17, 86-87, 90-91, 117-31, 370-72, 636, 640. DHS then came to a reasoned decision that holding aliens in CBP custody during credible-fear interview could expedite processing and alleviate the burden on ICE detention facilities. AR 640. DHS also outlined the procedural protections that would continue to apply to aliens' credible fear interviews, no matter where they are held in custody. AR 640-43, 645-47.

Plaintiffs contend, however, for a variety of reasons, that "Defendants did not engage in reasoned decision-making" and thus that the PACR and HARP guidance is "arbitrary and capricious in violation of the APA." MSJ Mem. 16-33. None of Plaintiffs' arguments is persuasive.

As an initial matter, to the extent that Plaintiffs rely on extra-record evidence to support their claim, such reliance is impermissible. It is a "widely accepted principle of administrative law that courts base their review of an agency's actions on the materials that were before the agency at the time its decision was made." *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997). Defendants produced the Certified Administrative Record in this case, and "the designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity." *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019). Plaintiffs have not even attempted to demonstrate "bad faith" by the government, *Air Transp. Ass'n of Am. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487-88 (D.C. Cir. 2011), or made a "substantial showing" that "the record is incomplete," *Oceana*, 920 F.3d at 865. Plaintiffs thus may not submit extra-

record materials as part of arbitrary-and-capricious review.[7]

In any event, even were it appropriate to consider the additional documents that Plaintiffs present, DHS's decision to instruct immigration officers that they may exercise their statutory authority to decide to hold certain aliens in CBP custody during their credible-fear interviews and immigration-judge review is fully supported. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("reasoned explanation" requirement satisfied if agency shows action "is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better, which the conscious change of course adequately indicates"). None of Plaintiffs' contrary assertions has merit.

First, Plaintiffs argue that Defendants "failed to provide any genuine justification or explanation" for the PACR and HARP guidance. MSJ Mem. 17 (punctuation omitted). Plaintiffs are wrong. The record is replete with evidence of increased migration along the southwest border, and increased claims of persecution or torture, over the past several years. *E.g.*, AR 2, 4-5, 8, 13-17, 86-87, 90-91, 117-31, 370-72. Simultaneously, then, ICE detention facilities cannot feasibly continue to accommodate every person in expedited removal who claims a fear of return. Defendants' explanation is rational, owed deference, and "[n]o further explanation was required." *Am. Fuel & Petrochemical Manufacturers v. Envtl. Prot. Agency*, 937 F.3d 559, 577 (D.C. Cir. 2019).

Second, Plaintiffs argue that Defendants "failed to acknowledge the significance of their shift away from detaining individuals in ICE custody." MSJ Mem. 17; *see also id.* 17-21. But Defendants are not required to explicitly consider every possible consequence that could result

---

[7] Defendants are contemporaneously filing a motion to strike the improper extra-record materials that Plaintiffs believe should be considered as part of the administrative record.

from the PACR and HARP guidance. Defendants considered what the INA and regulations require in expedited removal and credible-fear processes. AR 636-47. Just because ICE facilities provide certain accommodations does not mean that those are required in all DHS facilities or all situations. Plaintiffs are seeking to encroach on the province of the agency, but once, as here, the agency has set forth its justification for a policy change, courts are barred from "substitut[ing] [their] judgment for that of the agency." *Am. Bankers Ass'n v. Nat'l Credit Union Administration*, 934 F.3d 649, 663 (D.C. Cir. 2019).

Third, Plaintiffs argue that PACR and HARP are "illogical" because Defendants "failed to consider the ramifications of conducting the credible fear process in CBP custody." MSJ Mem. 21; *see also id.* 21-27. But again, Defendants considered all that the statute and regulations require. Specifically, Congress decided that certain aliens—like the individual Plaintiffs here—would be placed in expedited removal and intended those processes to move, as the title of the statute suggests, *expeditiously*. Congress allowed for aliens to express a fear of persecution or torture and, along with the opportunity to consult with an attorney or other individual prior to credible-fear interviews, and the opportunity for an immigration judge to review an asylum officer's negative determination. *See* 8 U.S.C. § 1225(b)(1)(A), (B). There is no requirement that DHS implement the access to counsel provisions Plaintiffs wish the agency would. *See AILA*, 18 F. Supp. 2d at 56 ("Here, the Attorney General's determination was eminently reasonable . . . Plaintiffs cannot impose upon the Attorney General any obligation to afford more procedures than the governing statute explicitly requires or that she has chosen to afford in her discretion."). Furthermore, Plaintiffs' preference that Defendants explicitly consider the "particular vulnerabilities" of asylum seekers, MSJ Mem. 24, is not supported by the plain statutory and regulatory text. And Plaintiffs' insistence that "meaningful access to counsel is *legally* required for asylum seekers," MSJ Mem. 27, is wrong. As explained above, the only statutory or regulatory requirement is that aliens

are given the opportunity to consult a person of their choosing prior to the credible-fear interview or review of a negative determination. Plaintiffs also point to the *Orantes-Hernandez* injunction in the record, but that injunction requires certain procedures "*once a written notice of appearance has been made* by an attorney on behalf of any member of the plaintiff class." AR 601-02 (emphasis added). Here, there is no indication that an attorney noticed an appearance on behalf of any Plaintiffs. Accordingly, whatever procedures that may apply to the *Orantes-Hernandez* class once a notice of appearance has been entered are irrelevant in this action.

Fourth, Plaintiffs argue that PACR and HARP are "inconsistent" with record evidence that conditions in CBP facilities are "unsuitable for preparation for a credible fear interview" and that "CBP facilities are only for short-term detention." MSJ Mem. 29-30. Again, Defendants considered the surge of migration along the southwest border and the limited capacity of ICE detention facilities. AR 636-39. Defendants also considered that CBP facilities are generally not designed for long-term detention, and thus instituted the streamlined process under PACR and HARP. AR 419-33, 608. That process also directs CBP to coordinate transfer to ICE custody as soon as possible in the event CBP custody is no longer brief.  AR 641, 643. Moreover, aliens in CBP custody receive the same statutorily required opportunity to consult, AR 641, 645, USCIS conducts the same credible-fear interview procedures, AR 642-43, 645-47, and immigration judges provides the same de novo review for aliens who request a review of their negative credible fear determination, AR 642-43, 647. Plaintiffs' argument ignores all of these reasonable and substantiated considerations.

Finally, Plaintiffs argue that PACR and HARP are "fundamentally at odds with the role of the credible fear process in the asylum system," MSJ Mem. 30, and contend that Defendants "do not understand" the purpose of the credible-fear interview, *id*. 31; *see also id*. 30-33. To the contrary, PACR and HARP promote and complement the credible-fear process, which is intended

to screen for aliens with claims that have a significant possibility of establishing eligibility for asylum, withholding, or CAT protection, and to remove those aliens who do not have such claims. It is not designed to allow any applicant for admission to remain in the United States even without demonstrating a credible fear or reasonable fear of persecution (on account of a protected ground) or torture.

**III.    If the Court grants summary judgment to Plaintiffs, the sole form of available relief is to set aside the PACR and HARP guidance as unlawful.**

    **A.    The Court lacks authority to enter the sweeping injunction that Plaintiffs seek.**

If Plaintiffs prevail on any of their claims on the merits, the Court may not issue the sweeping injunctive relief they seek either under Article III principles or the INA.

Plaintiffs ask this Court to issue: (1) an order vacating PACR and HARP and declaring the guidance unlawful; (2) an injunction requiring Defendants to vacate the individual Plaintiffs' negative credible-fear determinations and expedited removal orders, to return them to and parole them into the United States, and provide them with a new credible-fear interview process or removal proceedings pursuant to section 1229a; (3) and an order vacating all negative credible-fear determinations and expedited removal orders for all non-parties subject to PACR or HARP before December 6, 2019. MSJ Mem. 42-43. But the only available remedy would be to issue a determination that PACR and HARP are unlawful and to set aside PACR and HARP, not to issue any kind of injunction, let alone an injunction providing relief to aliens who are not plaintiffs in this suit and who were removed prior to the entry of any order on the merits from this Court. *See O.A.*, 404 F. Supp. 3d at 153-54.

*First*, under Article III, "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *Gill v. Whitford*, 138 S. Ct. 1934 (2018), and the rule in equity is that injunctions "be no more burdensome to the defendant than necessary to provide complete relief to the

plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994). Plaintiffs have not

met their burden to demonstrate that something more than setting aside the guidance is necessary

to remedy their particular injuries. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57

(2010). Moreover, Plaintiffs provide no justification for extending an injunction to non-parties and

simply declare that "Las Americas seeks this relief through third-party standing for these asylum

seekers." MSJ Mem. 43. But Plaintiffs fail to explain why the harm alleged to non-parties is

relevant to assessing whether a universal injunction is necessary to afford "complete relief" to the

individual Plaintiffs and any identified clients of Las Americas. *Madsen*, 512 U.S. at 765.

*Second*, apart from Article III and equity, the presence of an APA claim does not, as

Plaintiffs contend, demand nationwide injunctive relief. *See* MSJ Mem. 42. The APA provides

only that a court may "hold unlawful and set aside agency action." 5 U.S.C. § 706(2). But no part

of that text specifies whether any rule, if found invalid, should be set aside on its face or as applied

to the challenger. In the absence of a clear statement to the contrary, this Court should adopt the

reasonable—rather than unduly sweeping—reading of the "set aside" language. *See Va. Society

for Human Life v. Fed. Election Comm'n*, 263 F.3d 379, 393 (4th Cir. 2001) ("Nothing in the

language of the APA, however, requires us to exercise such far-reaching power."); *cf. Trump v.

Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring) ("No statute expressly grants

district courts the power to issue universal injunctions."). Indeed, the APA itself provides that

absent a statutory review provision, the proper "form of proceeding" is a traditional suit for

declaratory or injunctive relief that is subject to the rules constraining equitable relief as being

limited to determining the rights of the parties before the court. 5 U.S.C. § 703. Instead, this Court

should, consistent with the APA, limit relief to the parties before it. *See id*. § 705. Plaintiffs suggest

that the D.C. Circuit's decision in *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399

(D.C. Cir. 1998), mandated nationwide vacatur, *see* MSJ Mem. 42. To be sure, that decision held

that in the context of that case, the ordinary remedy on final judgment is that the challenged action be "set aside." *Nat'l Mining Ass'n*, 145 F.3d at 1409-10. But the D.C. Circuit did not purport to require that result in every case. Indeed, in a more recent decision involving a request for a nationwide injunction, the Court held that the "district court should not [enjoin an] agency from applying challenged [a] regulation to any party when an injunction covering plaintiff alone adequately protects it from the feared prosecution." *Nebraska Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006). That more recent decision is controlling here.

*Third*, the INA prohibits the injunctive relief Plaintiffs seek. Section 1252(e)(1)(A) provides that "no court may—(A) enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title *except as specifically authorized in a subsequent paragraph of this subsection*." (Emphasis added.) As to section 1252(e)(3), the sole remedy authorized is a "determination[]" on the *merits* of "whether [section 1225(b)], or any regulation issued to implement such section, is constitutional" or "whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General [or Secretary] to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." Such a "determination" is the only form of relief specifically authorized by section 1252(e)(3).

The only authority for *injunctive* relief is found in section 1252(f), which provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions part IV of this subchapter [*i.e.* 8 U.S.C. §§ 1221-1232] other than with respect to the *application of such provisions to an individual alien against whom proceedings under such part have been initiated*." 8 U.S.C. § 1252(f) (emphasis added). An injunction of

PACR and HARP that reaches beyond plaintiffs who are actually in "proceedings" would violate this provision by reading into section 1225(b)(1)(B) a requirement that aliens subject to expedited removal and credible fear processes be detained under certain conditions or in certain locations or have access to counsel beyond that required by statute. Using an injunction to re-write the statute to include limitations on the government's authority "that [do] not exist in the statute" is what section 1252(f) forecloses. *Hamama v. Adducci*, 912 F.3d 869, 879-80 (6th Cir. 2018).

Moreover, Plaintiffs seek relief on behalf of *all* aliens who were subject to PACR or HARP before December 6, 2019. MSJ Mem. 43. But section 1252(e)(1)(B), prohibits "certify[ing] a class under Rule 23." As the D.C. Circuit has explained, that provision means that Congress did not "intend[] to permit actions on behalf of a still wider group of aliens, actions in which no class representative appears as a party and the plaintiffs are unconstrained by the requirements of [Rule] 23." *AILA*, 199 F.3d at 1364. The broad injunction that Plaintiffs seek would produce the same result that Congress foreclosed, benefitting hundreds of thousands of aliens "none of whom are parties to the lawsuit," and "unconstrained by" Rule 23. *Id.* at 1364. As another Court in this district recently held: relief barred under this section 1252(e)(1)(B) entails "an Order requiring new credible fear interviews for all similarly situated individuals, and for the government to return to the United States all deported individuals who were affected by the policies at issue in this case." *Grace v. Whitaker*, 344 F. Supp. 3d 96, 144 (D.D.C. 2018); *see also id.* ("Plaintiffs do not request, and the Court will not order, such relief."); *Grace v. Whitaker*, 2019 WL 329572, at *3 (D.D.C. Jan. 25. 2019) (similar).[8] But that is precisely what Plaintiffs seek here.[9]

To the extent that Plaintiffs may suggest that sections 1252(e) and (f) do not override

---

[8] Defendants disagree with other parts of the Court's reasoning in *Grace*, which is on appeal, No. 19-5013 (D.C. Cir.), and oral argument occurred on December 9, 2019.
[9] Plaintiffs reliance on third-party standing as a basis for this relief is therefore not only wrong on its merits, *see supra*, but also foreclosed by statute.

traditional understandings of what is supposed to happen when a court invalidates agency action under the APA, that would be wrong. Section 1252(a)(2)(A) provides that "[n]otwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction" over matters "relating to section 1225(b)(1)" other than "as provided in subsection (e)." And section 1252(f) separately provides that "regardless of the nature of the action or claim," no court "other than the Supreme Court," may issue an injunction with respect to section 1225(b) other than with respect to individual aliens in actual removal proceedings. The "notwithstanding any other provision of law" and "[r]egardless of the nature of action or claim" clauses encompass *any* statute or claim, including an APA claim. It is well settled that Congress can curtail the jurisdiction and equitable authority of the lower federal courts, and did so here unambiguously through sections 1252(e) and 1252(f). *See Bowles v. Russell*, 551 U.S. 205, 211 (2007) ("Only Congress may determine a lower federal court's subject-matter jurisdiction"). Indeed, the APA itself would foreclose the relief Plaintiffs seek. Section 702 provides that "[n]othing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." Section 1252 is precisely such a statute "forbid[ding]" the universal relief Plaintiffs seek.

### B. Even if the court had authority to enter an injunction, Plaintiffs have not demonstrated they suffered irreparable harm or that the balance of harms favors them.

Even if this Court possessed authority to issue something more than a determination that the policies are unlawful, Plaintiffs nevertheless fail to demonstrate, as is their burden, entitlement to a permanent injunction because they cannot demonstrate that any irreparable harm or balance of equities mandates such an injunction.

First, the "basis of injunctive relief in the federal courts has always been irreparable harm." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). In this case, however, neither the individual Plaintiffs nor Las Americas have shown irreparable harm for the

same reason they lack standing: there is no causal nexus between the relief sought and the alleged harm. The D.C. Circuit has "has set a high standard for irreparable injury. First, the injury must be both certain and great; it must be actual and not theoretical." *Id.* "The moving party must show" that the "injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* "Second, the injury must be beyond remediation"; "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough." *Id.* In addition, the moving party "must show that the alleged harm will directly result from the action which the movant seeks to enjoin." *Wisc. Gas. Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). This last prerequisite is fatal to the individual Plaintiffs' efforts to show that they have suffered irreparable harm, which rises and falls entirely with their "fear" from "return to their home countries." MSJ Mem. 42-43. As noted, those ultimate return decisions are a consequence of the *results* of the individual Plaintiffs' credible-fear determinations, not the location of their custody during the determinations. And the individual Plaintiffs do not ever explain why, if they were to prevail, that detention in ICE custody or even "in-person" access to counsel would lead to different credible-fear determinations. They have thus failed to show "causation" with respect to their claim of irreparable harm because there is no direct link between the guidance Plaintiffs seek to enjoin and the results of their credible-fear interviews. *12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 280 F. Supp. 3d 118, 122 (D.D.C. 2017).

Plaintiffs also contend that they were denied "meaningful process from the United States as to their claims that they fear return to their home countries." MSJ Mem. 43. The record belies that assertion, as each of the individual Plaintiffs received credible-fear interviews and had the opportunity to seek immigration judge review of the negative credible-fear determinations. DSUF ¶¶ 4, 6-7, 11, 14-15, 17, 19.

Las Americas' asserted injury is not irreparable either. Las Americas complains that it has

"reallocated staff time" to "connect with individuals in CBP custody and has sent staff to Mexico to identify prospective clients who may be placed in PACR and HARP." MSJ Mem. 42. But "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough." *Chaplaincy*, 454 F.3d at 297; *Ctr. For Responsible Science v. Gottileb*, 346 F. Supp. 3d 29, 42 (D.D.C. 2018) ("District courts in this Circuit have similarly and repeatedly concluded that a mere diversion of resources to advance the advocacy mission of an organization is insufficient."). Irreparable harm is a far "higher threshold" than injury in fact for Article III standing. *League of Women Voters of United States v. Newby*, 838 F.3d 1, 8 (D.C. Cir. 2016). Yet the harms that Las Americas alleges do not even rise to the level of injury in fact. As the district court put the point in *AILA*: "With respect to the organizational plaintiffs' argument that they will be deprived of clients . . . there is no way to know whether aliens who are denied the opportunity to consult with counsel would have chosen to consult with the plaintiffs had they had the opportunity to do so. Moreover . . . nothing . . . prevents the organizational plaintiffs from practicing their professions or fulfilling their missions." 18 F. Supp. 2d at 49-50.

Finally, the balance of harms and the equities strongly favor Defendants. An injunction would prevent Defendants from deciding how to allocate its limited resources to address increased migration along the southern border, and thus it would frustrate the "public interest in effective measures to prevent the entry of illegal aliens" at the Nation's borders. *United States v. Cortez*, 449 U.S. 411, 421 n.4 (1981). The "drastic and extraordinary remedy" of an injunction, "which should not be granted as a matter of course," *Monsanto Co.*, 561 U.S. at 165, is not warranted here, where Plaintiffs have not shown that they cannot get full relief absent an injunction.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for summary judgment and grant summary judgment in favor of Defendants on all counts.

Dated: February 6, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

SCOTT G. STEWART
Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

*/s/ Erez Reuveni*
EREZ REUVENI
Assistant Director
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-4293
Email: Erez.R.Reuveni@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 6, 2020, I electronically filed the foregoing with the

Clerk of Court by using the CM/ECF system, which will deliver a copy to all counsel of record.

*/s/ Erez Reuveni*_____
EREZ REUVENI
United States Department of Justice