**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| Las Americas Immigrant Advocacy Center, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:19-cv-3640-KBJ |
| Chad F. Wolf, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES .......................................................................................... ii

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 1

I.     This Court lacks jurisdiction over Plaintiffs' claims. ........................................ 1

       A.     This Court lacks jurisdiction to adjudicate Las Americas' claims or any
               challenges to prior expedited removal procedures .................................. 1

       B.     Plaintiffs lack Article III standing and fail to establish justiciability. .................... 3

II.    Plaintiffs' claims fail on the merits. .................................................................. 10

       A.     Claims 1-3: The PACR and HARP guidance does not violate any statutory
               or regulatory right to "access counsel." ............................................. 10

       B.     Claims 5-6: The PACR and HARP guidance does not deprive aliens of a
               "due process right" or a "meaningful opportunity" to apply for asylum and
               related protection from removal .......................................................... 17

       C.     Claim 4: The PACR and HARP guidance does not violate the APA. .................. 19

             1.     The decision to initiate PACR and HARP is not "final agency
                     action" and is not subject to review under the APA. ................................. 19

             2.     The decision to initiate PACR and HARP is not arbitrary and
                     capricious. .............................................................................. 20

III.   If the Court grants summary judgment to Plaintiffs, the sole form of available
      relief is to set aside the PACR and HARP guidance as unlawful. .................................... 23

CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*Am. Immigration Lawyers Ass'n v. Reno ("AILA"),*
  18 F. Supp. 2d 38 (D.D.C. 1998), 199 F.3d 1352 (D.C. Cir. 2000) ................................. passim

*Am. Tort Reform Ass'n v. OSHA,*
  738 F.3d 387 (D.C. Cir. 2013) ........................................................................................ 19, 20

*Ardestani v. INS,*
  502 U.S. 129 (1991) .............................................................................................................. 17

*Arpaio v. Obama,*
  797 F.3d 11 (D.C. Cir. 2015) ............................................................................................ 7, 10

*Bennett v. Spear,*
  520 U.S. 154 (1997) .............................................................................................................. 19

*Biwot v. Gonzales,*
  403 F.3d 1094 (9th Cir. 2005) ............................................................................................. 12

*Broadgate Inc. v. USCIS,*
  730 F. Supp. 2d 240 (D.D.C. 2010) ................................................................................. 19, 20

*Cal. Ass'n of Private Postsecondary Sch. v. DeVos,*
  344 F. Supp. 3d 158 (D.D.C. 2018) ..................................................................................... 25

*Castillo v. Nielsen,*
  No. 18-cv-1317, 2018 WL 6131172 (C.D. Cal. June 21, 2018) ............................................. 12

*Cheung v. INS,*
  418 F.2d 460 (D.C. Cir. 1969) .............................................................................................. 9

*Coeur Alaska, Inc. v. S.E. Alaska Conservation Council,*
  557 U.S. 261 (2009) .............................................................................................................. 15

*Decker v. NW Env. Defense Ctr.,*
  568 U.S. 597 (2013) .............................................................................................................. 15

*Dia v. Ashcroft,*
  353 F.3d 228 (3d Cir. 2003) ................................................................................................. 18

*District of Columbia v. Dep't of Labor,*
  819 F.3d 444 (D.C. Cir. 2016) .............................................................................................. 14

*Exodus Refugee Immig., Inc. v. Pence,*
  165 F. Supp. 3d 718 (S.D. Ind. 2016), *aff'd,* 838 F.3d 902 (7th Cir. 2016) ............................ 7

*Fair Empl. Council of Greater Washington, Inc. v. BMC Marketing*,
  28 F.3d 1268 (D.C. Cir. 1994) ................................................................. 4

*\*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) .............................................................................. 21, 22

*\*Fed'n for Am. Immigration Reform, Inc. (FAIR) v. Reno*,
  93 F.3d 897 (D.C. Cir. 1996) .................................................................... 5

*Fla. Audubon Soc'y v. Bentsen*,
  94 F.3d 658 (D.C. Cir. 1996) .................................................................... 8

*Garcia de Rincon v. Dep't of Homeland Sec.*,
  539 F.3d 1133 (9th Cir. 2008) .................................................................. 9

*Grace v. Whitaker*,
  344 F. Supp. 3d 96 (D.D.C. 2018) ........................................................... 25

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ................................................................................. 4

*Innovation Law Lab v. Nielsen*,
  310 F. Supp. 3d 1150 (D. Or. 2018) ......................................................... 7

*Innovation Law Lab v. Nielsen*,
  342 F. Supp. 3d 1067 (D. Or. 2018) ....................................................... 12

*Jennings v. Rodriguez*,
  138 S. Ct. 830 (2018) ............................................................................... 9

*\*Landon v. Plasencia*,
  459 U.S. 21 (1982) .............................................................................. 18, 22

*Marcello v. Bonds*,
  349 U.S. 302 (1955) ............................................................................... 17

*Matter of M-E-V-G-*,
  26 I. & N. Dec. 227 (BIA 2014) ............................................................... 9

*Mendoza v. Perez*,
  754 F.3d 1002 (D.C. Cir. 2014) ................................................................ 8

*\*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010) ............................................................................... 24

*O.A. v. Trump*,
  404 F. Supp. 3d 109 (D.D.C. 2019) ......................................................... 24

*Patchak v. Zinke*,
   138 S. Ct. 897 (2018) ........................................................................................ 1

*Perez v. Mort. Bankers Ass'n*,
   135 S. Ct. 1199 (2015) .................................................................................... 19

*Powers v. Ohio*,
   499 U.S. 400 (1991) ......................................................................................... 7

*Rafeedie v. INS*,
   880 F.2d 506 (D.C. Cir. 1989) ................................................................ 11, 18

*Rosa v. McAleenan*,
   No. 1:19-cv-95, 2019 WL 5191095 (S.D. Tex. Oct. 15, 2019) ................ 10, 14

*Russello v. United States*,
   464 U.S. 16 (1983) ......................................................................................... 13

*Sessions v. Morales-Santana*,
   137 S. Ct. 1678 (2017) ..................................................................................... 6

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ..................................................................................... 4

*\*U.S. ex rel. Knauff v. Shaughnessy*,
   338 U.S. 537 (1950) ....................................................................................... 18

*\*United States v. Barajas-Alvarado*,
   655 F.3d 1077 (9th Cir. 2011) ....................................................................... 12

*\*United States v. Quinteros Guzman*,
   No. 3:18-cr-31, 2019 WL 3220576 (W.D. Va. July 17, 2019) ...................... 13

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
   435 U.S. 519 (1978) ....................................................................................... 14

*Warth v. Seldin*,
   422 U.S. 490 (1975) ......................................................................................... 3

## Statutes

8 U.S.C. § 1225 ................................................................................................ 17

8 U.S.C. § 1228 ................................................................................................ 17

8 U.S.C. § 1229a .......................................................................................... 12, 16

8 U.S.C. § 1252 ............................................................................................... 1, 3

8 U.S.C. § 1362................................................................................................... 12, 16

28 U.S.C. § 1331...................................................................................................... 1

## Regulations

8 C.F.R. § 208.30............................................................................................ 8, 13, 15

8 C.F.R. § 235.3............................................................................................ 12, 13, 15

8 C.F.R. § 287.3...................................................................................................... 17

8 C.F.R. § 1003.1.................................................................................................... 16

8 C.F.R. § 1003.42.................................................................................................. 11

## INTRODUCTION

This Court should deny Plaintiffs' motion for summary judgment, and grant the government's motion for summary judgment. Through the Prompt Asylum Claim Review (PACR) and Humanitarian Asylum Review Process (HARP), DHS has issued guidance explaining its statutory authority to exercise discretion to detain certain putative asylum seekers in the custody of U.S. Customs and Border Protection (CBP), rather than transferring them to U.S. Immigration and Customs Enforcement (ICE), during the pendency of their credible-fear interviews for eligibility to apply for asylum or related protection in this country. The Court lacks jurisdiction to review Plaintiffs' challenges to that guidance, Defs. Br. 14-23; Plaintiffs' claims fail on the merits, *id.* 23-38; and Plaintiffs are not entitled to the injunctive relief they seek, *id.* 38-44. Accordingly, the Court should grant judgment in the government's favor.

## ARGUMENT

### I.     This Court lacks jurisdiction over Plaintiffs' claims.

#### A.     This Court lacks jurisdiction to adjudicate Las Americas' claims or any challenges to prior expedited removal procedures.

Title 8 U.S.C. § 1252(e)(3) bars review of Las Americas' claims.[1] As Defendants explained, Defs. Br. 14-16, only an individual who is subject to expedited removal procedures may

---

[1] Plaintiffs insist that they "have not abandoned jurisdiction under 28 U.S.C. § 1331," Pls. Opp. 3 n.1, apparently conceding that they have abandoned all other bases of jurisdiction referenced in their amended complaint. Regardless, Plaintiffs have not developed any argument regarding jurisdiction under § 1331, and for good reason: section 1252(a)(2)(A) strips this Court's jurisdiction to review issues "relating to section 1225(b)(1)," "[n]otwithstanding any other provision of law (statutory or nonstatutory)," including "any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1), and "procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1)," other than as explicitly permitted by section 1252(e)(3). Congress's use of the phrase "notwithstanding any other provision of law" in a jurisdiction limiting provisions precludes reliance on 28 U.S.C. § 1331. *See Patchak v. Zinke*, 138 S. Ct. 897, 905 (2018).

invoke section 1252(e)(3). Challenges to expedited removal procedures may be brought "by, and only by, *aliens against whom the new procedures had been applied*." *Am. Immigration Lawyers Ass'n v. Reno* ("*AILA*"), 199 F.3d 1352, 1360 (D.C. Cir. 2000) (emphasis added). Las Americas has not been the subject of an admissibility determination under section 1225(b)(1)(A) or a credible-fear determination under § 1225(b)(1)(B), as section 1252(e)(3) demands.

Plaintiffs' assertion that "*AILA* does not foreclose or even address judicial review of direct claims by organizations" because that case addressed only third-party standing, Pls. Opp. 6-7, is not a plausible reading of the decision. In *AILA*, the D.C. Circuit addressed whether "organizational plaintiffs seek[ing] to vindicate the rights of unnamed third parties—namely, aliens who have been or will be processed pursuant to" new expedited removal procedures—could demonstrate "third-party standing," which this circuit views as a form of "prudential standing." 199 F.3d at 1357. The court viewed that as an exercise in statutory construction to determine what "Congress meant to allow." *Id.* at 1359. Reviewing section 1252, the court concluded that "Congress meant to allow actions only by aliens who have been subjected to the summary procedures contained in § 1225(b) and its implementing regulations." *Id.* In particular, the court relied on section 1252(e)(3)(B)'s 60-day limitations period, *id.*, section 1252(e)(1)(B)'s bar on class action challenges, *id.*, and section 1252(f)'s provision that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [the expedited secondary inspection provisions] other than with respect to the application of such provisions to an individual alien against whom the proceedings under such chapter have been initiated," *id.* (alteration in original). The court held that those provisions indicate that "Congress must have contemplated that lawsuits challenging [implementation of section 1225(b)(1)] would be brought, if at all, by individual aliens who—during the sixty-day period—were aggrieved by the statute's implementation," and that "[o]ne cannot come away from reading this section without having the

distinct impression that Congress meant to allow litigation challenging the new system [i.e., the expedited removal system] by, and only by, aliens against whom the new procedures had been applied." *Id*. at 1359-60. Though framed in terms of third-party standing, the court's holding turned on its statutory interpretation of section 1252 and the "congressional intent" of that provision. *Id*. at 1360, 1363. That reading of the statute's purpose and reach is inseparable from the court's ultimate holding. *See id*. at 1360 ("What we have just written about congressional intent influences our analysis of the judicially-created third party standing doctrine as it applies to the cases before us."); *id*. at 1364 ("To allow third party standing in the face of [section 1252] would be to contradict the principles on which the standing doctrine rests").

Furthermore, Plaintiffs' arguments regarding the timeliness of their challenge to PACR and HARP are misplaced. Pls. Opp. 3-4. Defendants do not contest that the individual Plaintiffs filed this suit one day shy of the 60-day deadline to challenge the implementation of a new "section, regulation, directive, guideline, or procedure." 8 U.S.C. § 1252(e)(3)(B). But Plaintiffs' APA claims appear to challenge not just the fact of PACR or HARP, but also prior policies governing the timing of the credible-fear interview and review thereof, MSJ Mem. 21-24, and the conditions of confinement in CBP custody, MSJ Mem. 29-30, 39-40. But Plaintiffs cannot challenge the first set of policies because they were implemented on July 2, 2019, AR 405-06, more than 60 days before the initiation of this lawsuit. And Plaintiffs cannot challenge policies governing detention in CBP custody because those policies are also outside the 60-day window, AR 419-33, 605-35, and do not implement section 1225(b)(1). *See* Defs. Br. 16-17.

### B.     Plaintiffs lack Article III standing and fail to establish justiciability.

Las Americas has established Article III standing under any of their theories of injury. *First*, Las Americas does not have organizational standing. Where, as here, an organization sues on its own behalf, it must establish standing in the same manner as an individual. *See Warth v.*

*Seldin*, 422 U.S. 490, 511 (1975). Defendants recognize that organizations may have standing in some situations where their core activities are impaired. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982); Defs. Br. 18-19. But Las Americas has not established that it would have suffered some other injury if it had not diverted resources to counteract the alleged problem. *See Fair Empl. Council of Greater Washington, Inc. v. BMC Marketing*, 28 F.3d 1268, 1276-77 (D.C. Cir. 1994). Here, the INA confers no "legally cognizable interests," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), on Las Americas' desire to pursue a specific mission in a specific way and thus its diversion of resources is a purely self-inflicted injury.

Plaintiffs blame PACR and HARP for "interfering with Las Americas' attempts to consult with and represent these asylum seekers." Pls. Opp. 8. Plaintiffs allege that Las Americas previously received "one to two calls *per day* from asylum seekers in credible fear proceedings" but lately has received fewer calls. Pls. Opp. 9 (emphasis in original). But Article III standing is not conferred on an organization simply because that organization does not receive a certain number of calls per day. Nor do Plaintiffs explain why Las Americas is somehow entitled to receive a certain number of calls per day, or how PACR and HARP are solely responsible for the decreased call volume. Indeed, Plaintiffs admit that all of the individual Plaintiffs received a list of attorneys and had the opportunity to make phone calls. Plaintiffs do not allege that anyone has been prohibited from calling Las Americas. Furthermore, Plaintiffs allege that Las Americas' "representation efforts" have required a "greater expenditure" of their resources, Pls. Opp. 9, but again do not clarify how expending some effort to communicate with individuals it wishes to represent provides Article III standing. At bottom, Las Americas' assertions of harm are no different than those rejected long ago in *AILA*: "With respect to the organizational plaintiffs' argument that they will be deprived of clients . . . there is no way to know whether aliens who are denied the opportunity to consult with counsel would have chosen to consult with the plaintiffs

had they had the opportunity to do so. Moreover . . . nothing . . . prevents the organizational plaintiffs from practicing their professions or fulfilling their missions." 18 F. Supp. 2d 38, 49-50. That conclusion was upheld in full by the D.C. Circuit. *See AILA*, 199 F.3d at 1357 ("we affirm the dismissal of these claims substantially for the reasons stated in the court's thorough opinion").

Las Americas also asserts that their legal director has dedicated a certain portion of her time to "attempting to reach and consult with asylum seekers" in CBP custody. Pls. Opp. 9-10. But Las Americas does not allege that PACR and HARP have prevented the organization from performing its general mission of "providing direct legal services to low-income immigrants, including asylum seekers." Pls. Opp. 8. Las Americas continues to provide legal services to other individuals, including other "asylum seekers in the El Paso area." Pls. Opp. 10. Las Americas does not have some unfettered legal interest to access specific individuals in specific detention facilities at any time and in any manner that it wishes. Such an unbounded theory of organizational standing would eviscerate Article III limits on the federal courts. Because Las Americas continues to perform its proclaimed mission, it does not have standing to challenge PACR and HARP.

*Second*, Las Americas' claims fall outside of the zone of interests of the INA, which neither regulates Las Americas' conduct nor creates any benefits for which Las Americas might be eligible. Defs. Br. 20-21. The D.C. Circuit has held that immigrant advocacy organizations are outside of the INA's zone of interests. *Fed'n for Am. Immigration Reform, Inc. (FAIR) v. Reno*, 93 F.3d 897, 900-04 (D.C. Cir. 1996). Plaintiffs do not meaningfully address *FAIR* but instead assert that Las Americas "seeks to protect its interest in providing legal services to asylum seekers," and seeks to "provide for asylum seekers' access to counsel" under section 1225(b)(1)(B)(iv). Pls. Opp. 11. But these interests do not exist within the INA: The INA does not provide a right to organizations to provide legal services to anyone. And section 1225(b)(1)(B)(iv) provides certain *aliens* with an opportunity to consult, it does not provide a right to organizations

who may wish to speak with or represent a certain alien.

*Third*, Las Americas "cannot rest [its] claim to relief on the legal rights of third parties." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017); *see* Defs. Br. 19-20. Plaintiffs argue that Las Americas is not circumventing section 1252(e)(1)(B)'s bar to class action relief because it seeks to assert the rights only of "individuals to whom Las Americas would have attempted to provide legal services if not for the obstacles directly resulting from" PACR and HARP. Pls. Opp. 13. This argument is directly contrary to circuit law. *See AILA*, 199 F.3d at 1364 (rejecting organizational standing "to raise claims, whether statutory or constitutional, on behalf of aliens," noting "the judicial presumption against suits seeking relief for a large and diffuse group of individuals, none of whom are party to the lawsuit"). Plaintiffs' attempts to distinguish *AILA*, Pls. Opp. 14-15, are not persuasive. As the D.C. Circuit explained, the fact that aliens who have been issued an expedited removal order and then removed and do not bring suit may be caused in part by the fact that such aliens "are uninformed about the workings of the courts, or of their legal rights, or of the availability of counsel," "do not speak English," or "reside far from the courthouse," and in a technical sense may be "hindered when it comes to taking legal action." *AILA*, 199 F.3d at 1364. But "Congress knew all this as well as we do, and as well as the organizational plaintiffs do. Yet rather than alleviating these burdens Congress placed strict limits on the time for filing challenges to the summary removal system, and it barred class actions." *Id.* Regardless, ten individuals are plaintiffs in this current lawsuit, so it is clearly possible for an individual alien to "protect his or her own interests." *Id*. at 1358, 1362 (concluding argument that aliens were hindered in bringing suit a "large stretch" given that some aliens were able to file within 60-days). Plaintiffs' citation to *Grace*, Pls. Opp. 13, is also misplaced, as *Grace* did not rely on third-party standing, and in fact read section 1252(e)(1)(B) to *foreclose* the relief Plaintiffs seek premised on their third-party standing theory. *See* Defs. Br. 41-42.

Plaintiffs argue that their third-party standing argument is supported by cases from other district courts, *Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150 (D. Or. 2018), and *Exodus Refugee Immig., Inc. v. Pence*, 165 F. Supp. 3d 718 (S.D. Ind. 2016), *aff'd*, 838 F.3d 902 (7th Cir. 2016). Pls. Opp. 14-15. Even if those decisions were not contrary to this Circuit's controlling *AILA* precedent, they at least required that an organization *identify* the people whose rights they were asserting. *See Innovation Law Lab*, 310 F. Supp. 3d at 1161 (plaintiff organization had submitted affidavits showing that at least 50 detainees had requested its representation); *Exodus Refugee Immig., Inc.*, 165 F. Supp. 3d at 729 (plaintiff organization sought third-party standing on behalf of its actual clients). Las Americas has not done so here. It alleges only that it "would have attempted to provide services to those in PACR and HARP if not for the new policy." Pls. Opp. 15. But this assertion incorrectly assumes that (1) every individual in ICE custody seeks Las Americas' representation, and (2) Las Americas represents every individual in ICE custody during his or her credible-fear interview and review. As *AILA* explained, Congress *intended* to restrict lawsuits under section 1252(e)(3). And, even without section 1252(e)(3)'s limitations, Plaintiffs cannot demonstrate third-party standing because they have not and cannot demonstrate the requisite "close relation to the" hundreds of unidentified aliens abroad whose interests they seek to represent. *Powers v. Ohio*, 499 U.S. 400, 411 (1991). Plaintiffs have not identified a single such individual by name, let alone submitted evidence that such unknown individuals have any, let alone a "close," relationship to Las Americas. *See id.*

The individual Plaintiffs similarly fail to establish Article III standing because they have not shown that their alleged injury is "fairly traceable" to the PACR and HARP guidance or that their alleged injury would be remedied by this Court setting aside the PACR and HARP guidance. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

Plaintiffs argue that they need not show "but for" standing because they allege "procedural"

injuries. Pls. Opp. 4-5. This is incorrect. Plaintiffs challenge PACR and HARP as arbitrary and capricious; they do not (and could not) claim that Defendants were required to go through notice-and-comment before implementing PACR and HARP, which if they were, could be a procedural injury. *See Mendoza v. Perez*, 754 F.3d 1002, 1020-21 (D.C. Cir. 2014).

Plaintiffs also contend that "Defendants do not dispute that absent placement in PACR and HARP, the Individual Plaintiffs could receive a positive determination." Pls. Opp. 5. This is both a gross mischaracterization of Defendants' argument and relies on the faulty assumption that Plaintiffs have standing unless *Defendants* show that Plaintiffs *could not* receive a positive credible-fear determination. To the contrary, it is *Plaintiffs'* burden to establish standing by demonstrating that the result of their credible-fear interviews would have been different if they had been detained in ICE custody rather than CBP custody. *See Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 666 (D.C. Cir. 1996) (en banc) (at summary judgment stage, plaintiffs must produce "specific facts, not 'mere allegations,' to substantiate each leap necessary for standing"). Furthermore, Plaintiffs are incorrect that a positive credible-fear determination "requires only a low threshold showing that they have a fraction of a chance of establishing . . . that they are eligible for protection." Pls. Opp. 5. As Defendants have explained, Defs. Br. 4, 37-38, receiving a positive credible-fear determination requires an alien to establish a "*significant possibility*" of eligibility for asylum, statutory withholding of removal, or CAT protection. 8 C.F.R. § 208.30(e)(2) (emphasis added); *see* 8 U.S.C. § 1225(b)(1)(B)(v). Plaintiffs do not contest that the Salvadoran Plaintiffs were categorically ineligible for asylum because of the Third Country Transit Rule, Defs. Br. 11, 23, or that the Mexican Plaintiffs waived immigration-judge review of their negative credible-fear determination, Defs. Br. 12. And Plaintiffs still have offered no evidence that an attorney could have helped *the specific individual Plaintiffs here* with, for example, crafting a cognizable particular social group that would satisfy the requisite elements of an asylum or

withholding claim. *See Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 251-52 (BIA 2014) (particular social group must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question").

Plaintiffs also argue that they need not show prejudice because, they allege, "immigrants need not show prejudice when their right of access to counsel is violated." Pls. Opp. 6. All of the cases Plaintiffs cite are inapposite because they deal with full removal proceedings, not expedited removal, and Defendants have explained in detail the various differences between the two.[2] Defs. Br. 6-7. Indeed, unlike in full removal proceedings, aliens challenging expedited removal proceeding must "show actual prejudice" flowing from the denial of a statutory entitlement. *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1142 (9th Cir. 2008). Regardless, there is no constitutional or statutory right to *access* counsel in expedited removal; there is only a right to *consult*. Defs. Br. 26-27. Defendants do not dispute that Plaintiffs were not represented during their credible-fear interviews or immigration-judge review, but Plaintiffs' assertion that "none of them *were able to* speak with an attorney at any point during their credible fear processes," Pl. Opp. 4 (emphasis added), is incorrect. Defendants have explained, and Plaintiffs do not contest, that the Plaintiffs received a list of attorneys and had an opportunity to call the attorneys on that list, as well as any other individuals they wanted, including family members.[3]

---

[2] In *Cheung v. INS*, 418 F.2d 460, 464 (D.C. Cir. 1969), for example, the court reviewed an alien's deportability proceedings after he had been admitted and then overstayed his visa and thus did not need to demonstrate prejudice. *Cheung* was decided long before the expedited-removal provisions were enacted, and in any case it is well-established that aliens seeking admission to the United States are not entitled to the same procedures as those who are charged with removability after having been admitted. *See, e.g.*, *Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018) (explaining due process as a "flexible" concept).

[3] Plaintiffs concede that they received a "list of attorneys" but say they "cannot confirm this list was the same as the pro bono legal services providers list." Pls. Reply to DSUF at 5. It is unclear what other list would have been provided, and it is further unclear why Defendants should be held responsible for detainees referring to the pro bono list as a "ghost list," *id.*, because, apparently, the attorneys and organizations on the list do not answer phone calls from detained aliens.

Defs. Br. 22. As another court recently explained in a case involving similar claims: "As long as the notification [of the right to consult] occurs before the interview, the Government has complied with the statutory provision." *Rosa v. McAleenan*, No. 1:19-cv-95, 2019 WL 5191095, at *22 (S.D. Tex. Oct. 15, 2019). Plaintiffs thus must show that but for PACR and HARP, their credible-fear interview results would be different.

Finally, Plaintiffs contend that Defendants ask the Court to decide the merits of this case in evaluating standing, Pls. Opp. 6, because Defendants pointed out that all of the individual Plaintiffs had the opportunity to contact anyone they wanted, including counsel, Defs. Br. 22. Plaintiffs are wrong. Defendants simply emphasized Plaintiffs' opportunity to consult because any injury Plaintiffs now assert is due to their own decisions—made under oath and through interpreters—to proceed with their credible-fear interviews without counsel. Defs. Br. 22. That breaks any causal chain between PACR and HARP and any alleged injury that Plaintiffs advance on behalf of the individual Plaintiffs. *See Arpaio*, 797 F.3d at 20 (no standing where "attenuated chain" of events that "lack[s] any legitimate causal connection to the challenged policies").

## II.  Plaintiffs' claims fail on the merits.

Even if the Court finds that it has jurisdiction and Plaintiffs have standing, their claims fail on the merits. Defs. Br. 23-37. Plaintiffs' contrary arguments, Pls. Opp. 29-38, are not persuasive.

### A.  Claims 1-3: The PACR and HARP guidance does not violate any statutory or regulatory right to "access counsel."

No statute or regulation prohibits PACR and HARP because no statute or regulation requires that aliens subject to expedited removal, even during credible-fear interviews, be detained only in ICE custody rather than CBP custody, or that such aliens have a general right to access counsel beyond the opportunity to consult provided for in the INA. Defs. Br. 23-29.

All of Plaintiffs' arguments to the contrary depend on a faulty assumption that they have

some broad right to counsel. They do not. Applicants for admission processed for expedited removal have the rights that the statute confers upon them. *See Rafeedie v. INS*, 880 F.2d 506, 512-13 (D.C. Cir. 1989). And the statute provides only that, "[a]n alien who is eligible for" a credible-fear interview "may consult with a person or persons of the alien's choosing *prior to* the interview *or any review thereof*, according to regulations prescribed by the Attorney General. Such consultation shall be at no expense to the Government and *shall not unreasonably delay the process*." 8 U.S.C. § 1225(b)(1)(B)(iv) (emphases added). Defendants do not argue that Plaintiffs could be prohibited from any access at all, as Plaintiffs suggest, Pls. Opp. 30, but that the statute requires far less than the "regular" or "in-person" access to counsel that Plaintiffs ask this Court to read into the statute. *See AILA*, 18 F. Supp. 2d at 56 ("Here, the Attorney General's determination was eminently reasonable . . . Plaintiffs cannot impose upon the Attorney General any obligation to afford more procedures [in expedited removal] than the governing statute explicitly requires or that she has chosen to afford in her discretion."), *aff'd* 199 F.3d at 1357.

Plaintiffs argue that PACR and HARP impermissibly prohibit a "right" to in-person access to counsel and to "regular" telephonic access. Pls. Opp. 29-34. Plaintiffs assert that aliens in PACR and HARP simply must "hope" that they connect with an attorney who will accept their case and assist with their preparation. Pls. Opp. 2. But, not only is that the most that anyone seeking representation in any context can hope for, there is no "right" outside of the statute for aliens in expedited removal, even those appearing for credible-fear interviews or immigration judge reviews of negative credible-fear determinations. Defs. Br. 29-31. The credible-fear interview may occur "either at a port of entry *or at such other place designated* by the [Secretary]," 8 U.S.C. § 1225(b)(1)(B)(i) (emphasis added), and any immigration-judge review may take place telephonically, *id*. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. § 1003.42(c). Moreover, any consultation opportunity "shall be made available *in accordance with the policies and procedures of the*

*detention facility where the alien is detained*, shall be at no expense to the government, and shall not unreasonably delay the process." 8 C.F.R. § 235.3(b)(4)(ii) (emphasis added). If the interview and review themselves may occur telephonically at any place DHS designates subject to facility policies, there is certainly no support for Plaintiffs' argument that the statute and regulations somehow require in-person access to attorneys during credible-fear proceedings.[4]

Plaintiffs also argue that the case law regarding a "right of access to counsel" in full removal proceedings should apply in expedited removal as well. Pls. Opp. 32. This is wrong. Congress specifically chose to provide for different procedures in full removal proceedings and expedited removal in a variety of ways, including that individuals in expedited removal may have an opportunity to *consult* with a person of their choosing, but *not* that they have a general and broad "right to counsel." As Defendants explained, Defs. Br. 26, the "right to counsel" in full removal proceedings under section 1229a "is rooted in the Due Process Clause and codified at 8 U.S.C. § 1362 and 8 U.S.C. § 1229a(b)(4)(A)." *Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir. 2005). No such associated right to counsel exists in expedited removal. *See, e.g.*, *United States v.*

---

[4] Plaintiffs' reliance on *Innovation Law Lab v. Nielsen*, 342 F. Supp. 3d 1067 (D. Or. 2018), and *Castillo v. Nielsen*, No. 18-cv-1317, 2018 WL 6131172 (C.D. Cal. June 21, 2018), Pls. Opp. 32, is misplaced. In *Innovation Law Lab*, the court found that the aliens at issue were *not in expedited removal proceedings*, and thus the jurisdictional bars of section 1252(a) and (e) did not apply, and that those aliens had a right to more than the opportunity to consult provided for in section 1225(b)(1)(B)(iv). Indeed, section 1225(b)(1)(B)(iv) didn't apply at all in the court's view, for if it had section 1252(e)(3)(A) would have barred suit. And in *Castillo*, after a limited discussion, the court issued a temporary restraining order requiring the government to allow a detained alien to communicate with his attorney and to allow other detainees to communicate "with other immigration attorneys who wish to communicate with them." 2018 WL 6131172, at *3. In that case, the court found it "troubling" that the government did not have "protocols regarding phone calls" and "concerning" that "many of the detainees were without access to legal communication for as many as 9 to 13 days," *id.*, unlike PACR and HARP, which specifically provide an opportunity to consult via telephone soon after the aliens are detained, AR 640-47. Furthermore, the court in *Castillo* noted the unclear "status of removal proceedings," 2018 WL 6131172, at *3, whereas here, all aliens in PACR and HARP are necessarily in expedited and thus the more limited consultation rights applicable in expedited removal apply, *see* 8 U.S.C. § 1225(b)(1)(B)(iv).

*Barajas-Alvarado*, 655 F.3d 1077, 1088 (9th Cir. 2011). Congress's conscious choice to provide for a more robust "right to counsel" in other immigration contexts, but a more limited "consultation" right in expedited removal proceedings therefore must be read to mean Congress did not intend for a broad right to counsel to apply in expedited removal proceedings. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). "[W]hen Congress intended an alien to have a right to counsel, it knew how to make that right clear." *United States v. Quinteros Guzman*, No. 3:18-cr-31, 2019 WL 3220576, at \*10 (W.D. Va. July 17, 2019).

Plaintiffs argue that the ICE detention standards recognize that "meaningful access to counsel" must include in-person access and regular telephonic access. Pls. Opp. 32-33. As an initial matter, Plaintiffs' reliance on ICE detention standards is not relevant to whether the *statute* or *implementing regulations* establish a right to counsel as broad as Plaintiffs would have. There is no statute or regulation requiring that an alien be detained in a specific facility by a specific component of DHS during the credible-fear process. *See* 8 U.S.C. §§ 1225(b)(1)(B)(i), 1231(g). Moreover, that ICE facilities may *allow* for in-person access or more frequent telephonic access says nothing about what the statute *requires*. Under the statute, "[a]n alien who is eligible for" a credible-fear interview "may consult with a person or persons of the alien's choosing *prior to* the interview *or any review thereof*, according to regulations prescribed by the Attorney General. Such consultation shall be at no expense to the Government and *shall not unreasonably delay the process*." 8 U.S.C. § 1225(b)(1)(B)(iv) (emphases added); *see* 8 C.F.R. § 208.30(d). The statute and regulations do not provide a "right" to "access counsel," let alone "regular" or "in-person" access to counsel, and the consultation right always depends on the "policies and procedures of the detention facility where the alien is detained." 8 C.F.R. § 235.3(b)(4)(ii).

Plaintiffs argue that, under section 235.3(b)(4)(ii), a facility could "deny asylum seekers access to attorneys in totality." Pls. Opp. 34. This is not correct—a facility policy that prohibited any opportunity for consultation with an attorney or others would be inconsistent with the statutory right to consultation. Defendants' argument is only that—as the regulation recognizes and codifies—policies and procedures may vary among different facilities based on resources and other factors, and thus each facility need not have the same policies—as Plaintiffs argue by insisting that CBP facilities have the same policies as ICE facilities—but still must provide the baseline right to consultation as provided in the statute. *See Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978) ("Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." (punctuation and citation omitted)). Again, this Court, affirmed by the D.C. Circuit, has already held that such right to consult with counsel is all that is required by section 1225(b)(1)(B)(iv)'s consultation provision. *See AILA*, 18 F. Supp. 2d at 54-55 (D.D.C. 1998) ("consult" requirement does not afford general "access to counsel," but instead need only afford access "prior to the credible fear interview"), *aff'd,* 199 F.3d at 1357 (affirming this holding); *accord Rosa*, 2019 WL 5191095, at *22.

Plaintiffs argue that Defendants' interpretation of the statute and regulations is not owed deference. Pls. Opp. 34-36. This is wrong. As Defendants have explained, the statute and regulations are clear, but if the Court finds any ambiguity, DHS's reading of those provisions reasonably implements all statutory and regulatory obligations. *See AILA*, 18 F. Supp. 2d at 54-55, *aff'd* 199 F.3d at 1357. When a court reviews an agency's interpretation of a statute that it administers, the ultimate question "is always, simply, whether the agency has stayed within the bounds of its statutory authority." *District of Columbia v. Dep't of Labor*, 819 F.3d 444, 459 (D.C.

Cir. 2016). When the "statute alone does not resolve the case," courts "look first to the agency regulations, which are entitled to deference if they resolve the ambiguity in a reasonable manner." *Coeur Alaska, Inc. v. S.E. Alaska Conservation Council*, 557 U.S. 261, 278 (2009). If the regulations, in turn, are ambiguous as well, courts then turn "to the agencies' subsequent interpretation of those regulations," and uphold the interpretation so long as it "is not plainly erroneous or inconsistent with the regulations." *Id*. Here, while in CBP custody under PACR and HARP, aliens receive information about the credible-fear process and have the opportunity to consult with a person of their choosing during the process, which is fully consistent with both statute and regulation. Defs. Br. 26; *see* 8 U.S.C. § 1225(b)(1)(B)(iv); 8 C.F.R. § 235.3(b)(4)(ii); *Decker v. NW Env. Defense Ctr.*, 568 U.S. 597, 613 (2013); *AILA*, 18 F. Supp. 2d at 56.

Plaintiffs also argue that PACR and HARP deny asylum seekers a right to consult after the credible-fear interview and before immigration-judge review. Pls. Opp. 29, 36-38. This is incorrect. As Defendants explained, Defs. Br. 27-28, section 1225(b)(1)(B)(iv) does not require a consultation period *both* before *and* after the credible-fear interview before USCIS; rather an alien "*may* consult with a person . . . of the alien's choosing *prior to the interview or any review thereof, according to regulations*." 8 U.S.C. § 1225(b)(1)(B)(iv) (emphasis added). Thus, the statute and regulations allow for an alien to have the same consultation at least once before the credible fear interview with USCIS, and at least once before any review of the credible fear determination by an immigration judge. *See* 8 C.F.R. §§ 208.30(d)(4), 1003.42(c). The HARP guidance explicitly provides that aliens will have an initial one-hour period to consult and additional 30-minute periods as necessary. AR 643. In any event, here, the Mexican Plaintiffs waived immigration-judge review, and each Salvadoran Plaintiff received a Form I-863, Notice of Referral to Immigration Judge, the

contents of which were read and explained to them in Spanish.[5] DSUF ¶¶ 6, 14. The Notice of Referral explains that an alien may be "represented in this proceeding, at no expense to the government," and that the alien "may consult with a person or persons of your own choosing prior to your appearance in Immigration Court," provided that the "consultation is at no expense to the government and may not unreasonably delay the process." DSUF ¶¶ 6, 14. Plaintiffs do not allege that, after receiving this notice, they even requested an additional consultation opportunity, let alone that they requested and were denied the opportunity to consult.

Plaintiffs next argue that 8 U.S.C. § 1362, allowing for a right to access counsel in "any removal proceedings before an immigration judge" applies to the immigration-judge review of a negative credible-fear determination. Pls. Opp. 37-38. But, as Defendants explained, Defs. Br. 27, that review is not a "removal proceeding," it is an expedited removal proceeding, and is therefore not covered by the section 1362 right to counsel. *Compare* 8 U.S.C. § 1229a (full removal proceedings), *with id*. § 1225(b)(1) (expedited removal). Nor does Plaintiffs' argument work as a textual matter. The language that appears in the statute provides, "In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General *from any such removal proceedings*." 8 U.S.C. § 1362. But, again, "expedited removal" proceedings are not "removal proceedings." And there is no appeal from an order of expedited removal or credible fear determination to the Attorney General or his or her designee, *e.g.* the Board of Immigration Appeals. *See* 8 U.S.C. §§ 1225(b)(1)(B)(iii)(III), (C), 1252(a), (e). The reference to "appeal proceedings before the Attorney General" can only refer to an appeal from an order of removal issued by an immigration judge to the Board of Immigration Appeals. *See* 8 C.F.R. § 1003.1. And,

---

[5] Each Plaintiff's Notice of Referral contains a certificate of service signed by an immigration officer attesting that the notice was served and the contents were explained in Spanish. ECF No. 50, Exs. A, B, C (under seal).

again, that Congress chose to include a right to consult in the credible-fear interview and review provision precludes a finding that section 1362 applies in this context. Where Congress meant to include the right to counsel under section 1362 in other provisions of the INA, it said so explicitly. *Compare* 8 U.S.C. § 1228(a)(2) (establishing proceeding to expeditiously remove aggravated felons, and providing that "the Attorney General shall make reasonable efforts to ensure that the alien's access to counsel and right to counsel under [8 U.S.C.] section 1362"), *with* 8 U.S.C. § 1225(b)(1) (no such reference to section 1362); *see also* 8 C.F.R. § 287.3 (alien must be provided with notice of right to be represented at no expense to the government "[e]xcept in the case of an alien subject to the expedited removal provisions of [8 U.S.C. § 1225(b)(1)(A)]").

Finally, Plaintiffs assert a right to counsel under the APA. Pls. Opp. 38. But, as Defendants explained, Defs. Br. 28-29, the Supreme Court has long held that the INA supplants the APA in immigration proceedings, *see Ardestani v. INS*, 502 U.S. 129, 133 (1991); *Marcello v. Bonds*, 349 U.S. 302, 310 (1955), and Plaintiffs do not meaningfully respond to that argument. And because the INA provides the sole and exclusive procedure for determining an alien's admissibility to the United States, *see* 8 U.S.C. §§ 1225(a)(3), 1229a(3), "it was the intention of the Congress to have the deviation apply and not the general model" of the APA. *Marcello*, 349 U.S. at 309.

In short, the PACR and HARP guidance is fully consistent with all statutes and regulations, and summary judgment should be granted to Defendants on these claims.

**B.      Claims 5-6: The PACR and HARP guidance does not deprive aliens of a "due process right" or a "meaningful opportunity" to apply for asylum and related protection from removal.**

The PACR and HARP guidance does not deprive Plaintiffs—applicants for admission subject to expedited removal—of any right to which they are constitutionally entitled. It is "well settled that aliens seeking admission to the United States cannot demand that their application for entry be determined in a particular manner or by use of a particular type of proceedings. *For those*

*aliens, the procedure fixed by Congress is deemed to be due process of law*." *Rafeedie*, 880 F.2d at 512-13 (emphasis in original).

Plaintiffs nevertheless contend that they have a "due process right to apply for asylum." Pls. Opp. 40. But they do not contest that they are applicants for admission and subject to expedited removal. As Defendants explained, Defs. Br. 29-30, aliens subject to expedited removal lack any liberty interest in avoiding removal or to certain procedures when contesting removal, 8 U.S.C. § 1225(b)(1)(B)(iii); *see e.g.*, *Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950), and instead are entitled only to "those statutory rights granted by Congress," *Dia v. Ashcroft*, 353 F.3d 228, 243 (3d Cir. 2003). Plaintiffs were not prevented from exercising any rights conferred on them by statute. DSUF ¶¶ 3-4, 10, 12, 16-17.

For similar reasons, the PACR and HARP guidance does not deprive aliens of a "meaningful opportunity" to apply for asylum and related protection. Defs. Br. 31. The statute and regulations provide a clear procedure for aliens subject to expedited removal who express an intention to apply for asylum or a fear of persecution or torture, and Plaintiffs received that procedure. Defs. Br. 31. Plaintiffs argue that Defendant's position that "strict compliance with the letter of the law regarding specific provisions" is "absurd." Pls. Opp. 39. This somewhat confusing argument seems to admit that Plaintiffs are seeking more than what the statute requires, and, as Defendants explained, applicants for admission who are subject to expedited removal are not entitled to any more than what the statute provides. *See Landon*, 459 U.S. at 32; *Knauff*, 338 U.S. at 544 ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.").

Regardless, because Plaintiffs' due process or statutory claims are entirely derivative of their claim that PACR and HARP are inconsistent with section 1225(b)(1)(B)(iv)'s "consult" provision and its meaning, *see Knauff*, 338 U.S. at 544, the Court need not address these claims.

### C.   Claim 4: The PACR and HARP guidance does not violate the APA.

#### 1.   The decision to initiate PACR and HARP is not "final agency action" and is not subject to review under the APA.

The PACR and HARP guidance does not constitute final agency action reviewable under the APA because it neither marks the "consummation" of the decisionmaking process nor is it an action from which "rights or obligations have been determined" or from which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177 (1997). It is a statement of policy providing guidance on how DHS sub-components are to exercise their statutory authority to detain aliens during the pendency of their credible-fear interview and any immigration-judge review. "The APA only provides for judicial review of 'final agency action' and . . . statements of policy generally do not qualify because they are not finally determinative of the issues or rights to which [they are] addressed." *Am. Tort Reform Ass'n v. OSHA*, 738 F.3d 387, 395 (D.C. Cir. 2013).

Plaintiffs argue that the APA allows for review of the PACR and HARP guidance because it is "agency action made reviewable by statute and final agency action." Pls. Opp. 17. But Plaintiffs cannot have it both ways—if section 1252(e)(3) is what provides Plaintiffs' cause of action, then they cannot separately allege that PACR and HARP are arbitrary and capricious. Plaintiffs clearly assert an arbitrary and capricious claim, and that is an APA claim subject to the general rules applicable to review of agency action, including the rule that the agency action must be final agency action, and not a "statement of policy" like the PACR and HARP guidance. *Am. Tort Reform Ass'n*, 738 F.3d at 395.

Plaintiffs also argue that the PACR and HARP guidance is final agency action because it is a "new policy" that has "direct legal consequences." Pls. Opp. 17. This is incorrect. The guidance does not create any substantive rules or rights, *see Perez v. Mort. Bankers Ass'n*, 135 S. Ct. 1199, 1204 (2015), or "bind" immigration officers to any specific result, *Broadgate Inc. v. USCIS*, 730

F. Supp. 2d 240, 246 (D.D.C. 2010). Rather, PACR and HARP each recognize that immigration officers have statutory authority to decide where to detain a specific alien during the pendency of their expedited removal processing, and must consider space and resource constraints when making that determination. AR 640-47. "[T]he [guidance] does not determine, as a matter of law, the rights or obligations of [asylum applicants], the agency, or any other entity, and no discernible legal consequences flow from it." *Broadgate*, 730 F. Supp. at 247. Instead, the legal "consequences," if any, flow from section 1225(b)(1)'s provisions governing consultation, and its implementing regulations. Accordingly, PACR and HARP are statements of policy regarding location of detention and not a final agency action. *See Am. Tort Reform Ass'n*, 738 F.3d at 395.

### 2. The decision to initiate PACR and HARP is not arbitrary and capricious.

Even if the APA applies to PACR and HARP, Plaintiffs' claims fail. DHS's decision to implement the PACR and HARP guidance is reasonable. DHS considered the migration crisis along the southwest border, the increase in asylum claims and that impact on our immigration system, and the limited resources of ICE detention. AR 2, 4-5, 8, 13-17, 86-87, 90-91, 117-31, 370-72, 636, 640. DHS also considered the impact of transferring aliens to ICE custody in light of Congress's directive that aliens in expedited removal and seeking asylum *must* be detained pending an adjudication of their claims, *see* 8 U.S.C. § 1225(b)(1)(B)(ii), (b)(1)(B)(iii)(IV), and that limited detention capacity at ICE often resulted in release of such aliens contrary to Congress's clear statutory directive that such aliens *shall* be detained. *See id.*; AR 636-39. After considering these institutional and operational constraints, DHS then came to a reasoned decision that detaining aliens in CBP custody for the brief period of time during their credible-fear proceedings could expedite processing and alleviate the operational and resource burdens on ICE detention facilities. AR 640. DHS also outlined the procedural protections that would continue to apply to aliens'

credible fear interviews, no matter where they are held in custody. AR 640-43, 645-47. Thus, DHS's decision to instruct immigration officers that they may exercise their statutory authority to decide to detain certain aliens in CBP custody during their credible-fear interview and immigration-judge review is fully supported and reasoned. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). None of Plaintiffs' contrary assertions has merit. Pls. Opp. 20-29.

First, Plaintiffs argue that Defendants did not offer a "reasoned explanation" for PACR and HARP because there is "no support" in the record for the proposition that ICE facilities are overburdened with aliens in expedited removal. Pls. Opp. 20-22. This is incorrect. As Defendants explained, there is ample evidence in the record of increased migration along the southwest border and the limited resources of ICE detention, and Defendants considered that evidence when deciding to implement PACR and HARP. Defs. Br. 35; *see, e.g.*, AR 2, 4-5, 8, 13-17, 86-87, 90-91, 117-31, 370-72. Defendants' explanation is rational and owed deference. Defs. Br. 35.

Plaintiffs also argue that it was unreasonable for Defendants to consider the "resource constraints" of ICE detention facilities to effectively "deliver[] consequences to those who violate our immigration laws," AR 639, because that should not be a concern as to asylum seekers. Pls. Opp. 21. Even if Defendants should not be concerned about asylum seekers violating immigration laws, aliens are detained in ICE facilities for a variety of reasons, including criminal history. If ICE facilities are full with aliens who have undisputedly violated immigration laws, then there is no room in those facilities for asylum seekers who may present themselves at a port of entry or seek asylum shortly after illegally crossing the border, and whom Congress has commanded be detained during the pendency of their credible-fear interviews and any subsequent proceedings. *See* 8 U.S.C. § 1225(b)(1)(B)(ii), (b)(1)(B)(iii)(IV). Indeed, Congress codified section 1225(b)(1)(B)(ii) in part as a response to findings that "thousands" of aliens arrive in the United States each year, seek "asylum immediately upon arrival," and when "released into the general

population" "do not return for their hearings." H.R. Rep. No. 104-469, 117-18 (1995). Congress also determined that such incentives were mitigated "in districts . . . where detention capacity has increased and most [] aliens can be detained." *Id*. Congress thus clearly viewed recently arrived asylum seekers as necessitating detention to ensure their appearance at removal proceedings. Accordingly, it is entirely reasonable that Defendants decided to detain immigration-law violators in ICE custody and hold certain other aliens in CBP custody during the credible-fear process.

Second, Plaintiffs argue that the PACR and HARP guidance is not a product of "reasoned decisionmaking" because Defendants did not explicitly consider the "shift" from detention in ICE custody. Pls. Opp. 22-24. But Plaintiffs do not explain why ICE detention standards must be considered or are somehow the only permitted baseline. As Defendants explained, not all DHS facilities are required to provide the same accommodations. Defs. Br. 35-36. Aliens seeking admission have never had a right to detention in a certain facility.

Third, Plaintiffs argue that Defendants did not provide "good reasons" for implementing PACR and HARP because they did not consider "numerous important aspects of the problem." Pls. Opp. 24; *id*. 24-26. It is unclear how Plaintiffs define "the problem" in this context, but Defendants' understanding of "the problem" was, as explained, the surge in migration along the southwest border and the limited resources of ICE detention facilities. AR 636-39. Accordingly, Defendants took steps to alleviate that problem by implementing a reasonable new policy that allowed for detention of certain aliens in CBP facilities, rather than ICE facilities, during their credible-fear process. AR 640-47. And the agency was fully within its authorities to conclude the immigration surge was in fact a problem, and taking statutorily authorized, reasoned measures to combat that real and undeniable problem. AR 370-84, 636-39.

Fourth, Plaintiffs argue that the PACR and HARP guidance is "contrary to record evidence" because Plaintiffs believe the guidance is inconsistent with the *Orantes-Hernandez*

injunction. Pls. Opp. 26-27. As an initial matter, Defendants did consider the *Orantes-Hernandez* injunction, which is why it is included in the administrative record. AR 598-604. Moreover, Plaintiffs' argument that the PACR and HARP guidance is "facially" a violation of that injunction makes no sense. That injunction requires certain procedures "once a written notice of appearance has been made by an attorney on behalf of any member of the plaintiff class," AR 601-02; it does not require that every DHS policy specifically mention *Orantes-Hernandez* or otherwise risk being in violation of a court order. Furthermore, as Defendants explained, Plaintiffs have not asserted that anyone who would have been covered under the *Orantes-Hernandez* injunction did not receive the procedures to which they were entitled. Defs. Br. 37.

Plaintiffs also assert that the PACR and HARP guidance is inconsistent with the record evidence regarding conditions of CBP custody, Pls. Opp. 27-28, which Plaintiffs contend is not suitable for the credible-fear process "for even a day," Pls. Opp. 28. As Defendants explained, they did consider that CBP facilities are not designed for long-term detention, Defs. Br. 37, and there is no support for Plaintiffs' argument that aliens cannot spend any time at all in CBP facilities during their credible-fear interviews.

Fifth, Plaintiffs argue that the PACR and HARP guidance is "antithetical to a *meaningful* credible fear process," Pls. Opp. 28 (emphasis in original), and that the "accuracy" of credible-fear determinations is undermined by detention in CBP custody, Pls. Opp. 29. But Plaintiffs proffer no evidence to support such a speculative assertion—not even as to the individual Plaintiffs, as explained above. Plaintiffs also misstate the credible-fear standard, which is not a "low threshold" but rather a "significant possibility" of establishing eligibility for asylum and related protection.

Accordingly, Defendants are entitled to summary judgment on these claims.

**III.    If the Court grants summary judgment to Plaintiffs, the sole form of available relief is to set aside the PACR and HARP guidance as unlawful.**

If Plaintiffs prevail on any of their claims, the Court may not issue the sweeping injunctive relief they seek either under Article III principles or the INA. Defs. Br. 38-44. The only available remedy would be to issue a *determination* that PACR and HARP are unlawful and to set aside PACR and HARP, not to issue any kind of prospective injunction, let alone an injunction providing relief to aliens who are not plaintiffs in this suit and who were removed prior to the entry of any order on the merits from this Court. *See O.A. v. Trump*, 404 F. Supp. 3d 109, 154 (D.D.C. 2019).

Plaintiffs argue that "[v]acatur is *clearly* the appropriate remedy for challenges under section 1252(e)(3)." Pls. Opp. 41-43 (emphasis in original). But Plaintiffs still fail to establish that something more than setting aside the guidance is necessary to remedy their particular injuries. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010). And even if relief were not limited to the parties, the INA prohibits the sweeping injunctive relief Plaintiffs seek. Defs. Br. 40. Section 1252(e)(1)(A) provides that "no court may—(A) enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection." And the sole remedy authorized under section 1252(e)(3) is a "determination[]" on the *merits* of "whether [section 1225(b)], or any regulation issued to implement such section, is constitutional" or "whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General [or Secretary] to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." Such a "determination" is the only form of relief specifically authorized by section 1252(e)(3).

Moreover, Plaintiffs seek relief on behalf of *all* aliens who were subject to PACR or HARP before December 6, 2019. Pls. Opp. 43. But section 1252(e)(1)(B), prohibits "certify[ing] a class under Rule 23." As the D.C. Circuit has explained, that provision means that Congress did not

"intend[] to permit actions on behalf of a still wider group of aliens, actions in which no class representative appears as a party and the plaintiffs are unconstrained by the requirements of [Rule] 23." *AILA*, 199 F.3d at 1364. The broad injunction that Plaintiffs seek would produce the same result that Congress foreclosed, benefitting hundreds of thousands of aliens "none of whom are parties to the lawsuit," and "unconstrained by" Rule 23. *Id.* at 1364. As another Court in this district recently held: relief barred under section 1252(e)(1)(B) entails "an Order requiring new credible fear interviews for all similarly situated individuals, and for the government to return to the United States all deported individuals who were affected by the policies at issue in this case." *Grace v. Whitaker*, 344 F. Supp. 3d 96, 144 (D.D.C. 2018); *see also id.* ("Plaintiffs do not request, and the Court will not order, such relief."). But that is precisely what Plaintiffs seek here. Plaintiffs' assertion that they "seek relief from Defendants' new policy that violates the statutory limitations put in place by Congress," Pls. Opp. 43, is both incorrect—Plaintiffs seek to engraft additional requirements onto the statute—and is not a means to get around the bar on injunctive relief.

Finally, Plaintiffs assert that they have demonstrated irreparable harm because "Defendants have adduced no evidence to contravene Plaintiffs' arguments that access to an attorney will provide the meaningful process they seek." Pls. Opp. 44. But Defendants have submitted that evidence—*see* DSUF—and in any case, again, it is *Plaintiffs'* burden to demonstrate irreparable harm; there is no assumption of irreparable harm unless Defendants show otherwise. The standard for irreparable harm is high: "The injury must be unrecoverable; it must be both certain and great; [and] it must be actual and not theoretical." *Cal. Ass'n of Private Postsecondary Sch. v. DeVos*, 344 F. Supp. 3d 158, 170 (D.D.C. 2018) (punctuation omitted). Plaintiffs have not met that burden.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for summary judgment and grant summary judgment in favor of Defendants on all counts.

Dated: February 15, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

SCOTT G. STEWART
Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

*/s/ Erez Reuveni*
EREZ REUVENI
Assistant Director
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-4293
Email: Erez.R.Reuveni@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 15, 2020, I electronically filed the foregoing with the

Clerk of Court by using the CM/ECF system, which will deliver a copy to all counsel of record.

*/s/ Erez Reuveni*_____
EREZ REUVENI
United States Department of Justice