**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LAS AMERICAS IMMIGRANT ADVOCACY CENTER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CHAD WOLF,<br>in his official capacity, Acting Secretary of the U.S. Department of Homeland Security, *et al.*,<br><br>Defendants. | No. 1:19-cv-3640 (KBJ) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICES OF SUPPLEMENTAL AUTHORITY, DOCKET ENTRIES 71 AND 72**

Plaintiffs respectfully submit this Response to Defendants' Notices of Supplemental Authority regarding *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1 (D.D.C. 2020), and *CASA de Maryland, Inc. v. Trump*, No. 19-2222, 2020 WL 4664820 (4th Cir. Aug. 5, 2020). As Plaintiffs explained in their Response to Defendants' Supplemental Briefing on the effects of *L.M.-M.*, Dkt. 65, that decision does not moot this case. *CASA de Maryland* likewise has no bearing on this litigation: it in fact supports Plaintiff Las Americas' organizational standing and in any event is an out-of-circuit decision.

**I. The Government's Decision Not to Pursue an Appeal in *L.M.-M.* Does Not Moot Plaintiffs' Claims.**

Contrary to Defendants' assertions, Dkt. 71, the government's decision not to pursue an appeal of *L.M.-M.* has no effect on the justiciability of this case. As Plaintiffs have explained, "[t]he fundamental problem with PACR/HARP is that by keeping asylum seekers in CBP facilities, where communication with the outside world is nearly impossible and inside which no attorney can ever step foot, Defendants deprive them of any meaningful opportunity for consultation or meaningful access to the asylum process. Simply put, the increase in time does not matter in light of the other unlawful barriers to consultation and a meaningful credible fear process under PACR/HARP." Dkt. 65 at 1-2. The new policy remains arbitrary and capricious and violates statute and regulation guaranteeing a meaningful opportunity to access counsel and seek asylum irrespective of the lengthened consultation period. Because this Court can still grant effectual relief to Plaintiffs, this case is not moot. *See generally* Dkt. 65 at 2-9. And because any legal determination regarding the consultation period is not *necessary* to a determination that PACR/HARP is unlawful, nor is any claim that might implicate the unlawfulness of the 24-hour consultation period. *Id.*

Instead, the now-final *L.M.-M.* provides support for several of Plaintiffs' positions in this litigation, namely (1) the Individual Plaintiffs' standing; (2) that the new policy here is adopted to implement 8 U.S.C. § 1225(b); (3) that the new policy and associated written policy directives and guidance must be vacated and that injunctive relief is available; and (4) that individual relief is available. *Id.* at 9-10.

## II.  *CASA de Maryland* Does Not Affect the Organizational Standing Analysis.

The out-of-circuit decision *CASA de Maryland* does not support Defendants' argument that Las Americas lacks organizational standing under *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). To the extent that *CASA de Maryland* adopts a test for the first prong of *Havens* in the Fourth Circuit based on impairment of operation or functionality, that is not the test in the D.C. Circuit, which requires instead that an organization "show a direct conflict between the defendant's conduct and the organization's mission." *O.A. v. Trump*, 404 F. Supp. 3d 109, 142 (D.D.C. 2019) (quoting *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011) ("*ASPCA*")). Moreover, in any event *CASA de Maryland affirms* that *Havens* standing is available under these circumstances—in which Las Americas' "ability to provide counseling, referral, or other services to immigrants" is "directly impair[ed]." 2020 WL 4664820 at *9. Whatever persuasive authority *CASA de Maryland*'s holding that the plaintiff organization lacked standing might have in factually analogous cases, that determination is irrelevant here—where PACR and HARP directly impair Las Americas' efforts to provide legal services to detained asylum seekers in the El Paso area. Las Americas is within well-recognized *Havens* standing here.

**A. *CASA de Maryland***

In *CASA de Maryland*, the plaintiff organization, CASA, challenged the Department of Homeland Security's definition of "public charge," for purposes of immigration law, via rulemaking. 2020 WL 4664820 at *1. CASA previously had allocated advocacy resources to "affirmative[ly] . . . seeking to improve conditions for immigrant families"—by, for example, lobbying state legislatures for increased availability of medical benefits. *Casa de Maryland, Inc. v. Trump*, 414 F. Supp. 3d 760, 771 (D. Md. 2019); *see also Casa de Maryland*, 2020 WL 4664820 at *8. As a result of the redefinition of "public charge," however, CASA internally reallocated advocacy resources from this affirmative lobbying to expand healthcare access for immigrants to "defensive[ly] . . . seeking to mitigate the harm of the" new rule—by, for example, providing advice to immigrant families. 414 F. Supp. 3d at 771-72; *see also* 2020 WL 4664820 at *8.

The Fourth Circuit, in an opinion authored by Judge Wilkinson and joined by Judge Niemeyer, held that CASA lacked standing under *Havens* to bring this challenge, reasoning, "Quite simply, nothing in the Rule directly impairs CASA's ability to provide counseling, referral, or other services to immigrants." *Id.* at *9. *CASA de Maryland* held that there was no Article III injury due to what it described as "CASA's unilateral and uncompelled response" to the new rule. *Id.* at *9. The decision characterized CASA's shift in internal resources as "motivated by the dictates of preference"—an organizational choice regarding policy-related expenditures. *Id.* In reaching this conclusion, it distinguished *Havens* as "focused on operational harm—that is, the ability of an organization to function." *Id.* at *10. *CASA de Maryland*, however, recognized that *Havens* found Article III injury where the defendant apartment complex's actions "'perceptibly impaired [the plaintiff organization's] ability to provide

counseling and referral services' and frustrated its 'role of facilitating open housing.'" *Id.* at *9 (quoting *Havens*, 455 U.S. at 379 & n.21). As discussed below, the Fourth Circuit's decision in *CASA de Maryland* supports standing here.

Judge King, dissenting, would have held that CASA satisfied *Havens* standing because, under *Havens*, "If an organization's core policy mission is undermined by allegedly unlawful governmental action and it must spend money in response thereto, the organization has suffered a cognizable Article III injury." *Id.* at *32 (King, J., dissenting). Judge King also viewed CASA's situation as distinguishable from cases in which voluntary expenditure of resources did not suffice for standing because CASA had "claim[ed] that the DHS Rule . . . impair[ed] its organizational mission." *Id.*

**B. Las Americas Has Organizational Standing.**

To the extent that *CASA de Maryland* adopts a standard that diverges from the D.C. Circuit's for *Havens* standing, it is inapposite. In any event, *CASA de Maryland* supports Las Americas' organizational standing here: under *CASA de Maryland*'s analysis, Las Americas has standing because Defendants' actions directly impair its ability to provide legal services to detained asylum seekers.

First, as this Circuit has explained, *Havens* standing solely requires that an organization show "a direct conflict between the defendant's conduct and the organization's mission" and that it "used its resources to counteract that injury." *O.A.*, 404 F. Supp. 3d at 142 (quoting *ASPCA*, 659 F.3d at 25). Where a governmental action "directly conflicts with the missions of the organizational plaintiff[] and . . . will require [it] to use substantial resources to counteract that injury . . . [n]o more is required to establish standing under *Havens*." *Id.* at 143 (holding that plaintiff immigration legal service providers had standing to challenge new rule that would bar

certain clients from seeking asylum and require the organizations to expend further resources in aiding those clients in pursuing withholding of removal).

Las Americas has met this standard. *See* Dkt. 57 at 8-11.[1] Specifically, Defendants' new policy frustrates Las Americas' mission of providing legal services to low-income immigrants in the El Paso area, including detained asylum seekers. *Id.* at 8. Las Americas received one to two calls *per day* from asylum seekers in credible fear proceedings prior to PACR and HARP but "[s]ince implementation in October, Las Americas has received only one call directly from an individual placed in PACR or HARP" and been in contact with only a few others prior to the credible fear interview. *Id.* at 9 (quoting Supp. Decl. of Linda Corchado, Dkt. 35-7 ¶ 6). Representing these individuals "require[s] a significantly greater expenditure of . . . organizational resources." *Id.* (quoting Decl. of Linda Corchado, Dkt. 21-9 ¶ 9). But, despite Las Americas' increased efforts, *no* consultation with an asylum seeker in CBP custody "has been sufficient to meaningfully consult with a person before their credible fear interview." *Id.* (quoting Corchado Supp. Decl. ¶ 13). Las Americas has also detailed the resources it has used to counteract the injury from Defendants' new policy, including the alteration of its intake system to account for and track calls from asylum seekers potentially subject to the new policy; sending staff to Mexico to sign up asylum seekers potentially placed in PACR or HARP; and engaging in

[1] Defendants rehash their argument that Plaintiffs cannot establish organizational standing "because they invoke jurisdiction solely under 8 U.S.C. § 1252(e)(3)." Dkt. 72 at 1. This is, initially, incorrect—as Plaintiffs have plainly stated, they also assert jurisdiction under 28 U.S.C. § 1331. Dkt. 57 at 3 n.1. Moreover, as Plaintiffs have explained, section 1252(e)(3) does not bar judicial review of Las Americas' claims. *Id.* at 6-8. Defendants' claim that in *Make the Road New York v. Wolf*, 962 F.3d 612 (D.C. Cir. 2020), the D.C. Circuit affirmed their view of organizational standing in the § 1252(e)(3) context is also inaccurate. The D.C. Circuit did not address or speak to the scope of direct organizational standing under § 1252(e)(3) but rather determined that the plaintiff organizations had associational standing. *Id.* at 628; Dkt. 69 at 5-6.

extensive communications with Customs and Border Protection that were not required under the old policy. *See id.* at 9-10.

In other words, a showing of impairment of operation or functionality is not required under *Havens* or D.C. Circuit precedent to satisfy the first prong of organizational standing. A plaintiff must show, as Las Americas has done here, a direct conflict between the organization's mission and the challenged action and resulting expenditure of substantial organizational resources to counteract whatever injury has been caused by such conflict. To the extent that *CASA de Maryland* adopts a different test for *Havens* standing that hinges on a heightened standard of impairment of an organization's operation or functionality, such a test is overly restrictive and inconsistent with *Havens* and with this Circuit's precedent.

Second, even assuming that the test for *Havens*' first prong were one of direct impairment to operation or functionality, Las Americas would easily satisfy that criterion. *CASA de Maryland* focused its standing inquiry on operation or functionality in the context of an organization's allegation that shifted policy priorities gave rise to *Havens* standing. It recognized the underlying logic of *Havens* itself—that where the "ability to provide counseling, referral, or other services to immigrants" is "directly impair[ed]," an organization has satisfied the first prong of *Havens* standing. 2020 WL 4664820 at *9. Consequently, whatever persuasive force *CASA de Maryland*'s determination that the plaintiff organization's shift from affirmative to defensive advocacy might have in cases with analogous facts, it is irrelevant here in light of Las Americas' injury—which does not involve the voluntary diversion of policy-advocacy resources in response to a policy change.

In this case, Defendants' new policy "directly impairs [Las Americas'] ability to provide counseling, referral, or other services to immigrants"—precisely the set of circumstances that

*CASA de Maryland* recognized as sufficient for perceptible impairment under *Havens*. *Id.* Defendants' assertion to the contrary—that "a policy that impairs an organization's ability to provide 'counseling, referral, advocacy, and educational services'" is not "enough to establish standing"—is plainly wrong. Dkt. 72 at 2 (erroneously stating "*CASA* holds that these allegations are insufficient to establish standing under *Havens*").

Defendants attempt to characterize Las Americas' injury as not direct impairment to "the organization's ability to operate and to function," as they state that *CASA de Maryland* requires. Dkt. 72 at 2-3. But as was true for the plaintiff organization in *Havens*, Defendants' new policy here "ha[s] perceptibly impaired" Las Americas' ability to directly serve individuals falling within the scope of its mission. 455 U.S. at 379. Defendants' new policy requires Las Americas to invest significantly more time in representation of each detained asylum seeker, and the intake rate for people subject to Defendants' new policy is far lower than for those who were not subject to the policy—nearly nonexistent. Moreover, on the few occasions when Las Americas had made contact with individuals in the program, the single telephone conversation was not "sufficient to provide meaningful representation." Corchado Supp. Decl. ¶¶ 12-13.

In arguing that *CASA de Maryland* supports a lack of organizational standing here, Defendants state, "Plaintiffs do not allege or argue that Las Americas can no longer provide direct legal services to [all] aliens in the El Paso area as a result of PACR or HARP." Dkt. 72 at 3. But "[c]ourts have never required an organization to prove that it is entirely hamstrung by challenged actions" to satisfy *Havens* standing. *O.A.*, 404 F. Supp. 3d at 143 (rejecting government defendants' argument that the plaintiff organizations could "continu[e] to represent asylum-seeking clients" and thus lacked *Havens* standing). In *Havens* itself, the plaintiff organization's mission was "to make equal opportunity in housing a reality in the Richmond

Metropolitan Area." 455 U.S. at 368. The organization challenged racial steering of renters in the operation of two apartment complexes in the Richmond area. *Id.* Plainly, the organization could continue "to provide counseling and referral services for low- and moderate-income homeseekers" in the Richmond area writ large, notwithstanding the operation of these two apartment complexes. *See id.* at 379. Nevertheless, the Supreme Court held that the organization had adequately alleged that it was "perceptibly impaired" in doing so by defendants' practices at the two apartment complexes. *Id.* Here, Las Americas' impairment in representing detained asylum seekers due to Defendants' new policy similarly suffices for organizational standing—notwithstanding its ability to continue to represent other noncitizens in the El Paso area.

Finally, Defendants take out of context Plaintiffs' point that the Court need not reach this question of direct organizational standing, as distinct from the Individual Plaintiffs' standing and third-party standing, so long as it concludes that the Individual Plaintiffs have standing. Dkt. 72 at 3; *see* Dkt. 57 at 11. As Plaintiffs have explained, the Individual Plaintiffs' standing suffices for all relief that Plaintiffs request. *See* Dkt. 35-10 (requesting declaratory relief, vacatur of the new policy and all written policy directives and guidance, relief for the Individual Plaintiffs, and relief for those subject to the policy within the first sixty days); Dkt. 35-1 at 41-43 (explaining that all relief requested, including that for those subject to the policy within the first sixty days, "flow[s] from [a] determination that the policy is unlawful" and that for those subject to the policy within the first sixty days, in the alternative Las Americas asserts third-party standing). But, in any event, Las Americas *does* have direct organizational standing—as described above.

Dated: Sept. 2, 2020

Respectfully submitted,

*/s/ Andre Segura*

______________________________

Andre Segura* TX Bar No. 24107112
Thomas Buser-Clancy* TX Bar No. 24078344
Kathryn Huddleston* AZ Bar No. 033622
ACLU Foundation of Texas, Inc.
5225 Katy Freeway, Suite 350
Houston, TX 77007
Tel. (713) 942-8146
Fax: (713) 942-8966
asegura@aclutx.org
tbuser-clancy@aclutx.org
khuddleston@aclutx.org

Bernardo Rafael Cruz* TX Bar No. 24109774
Brantley Shaw Drake* NY Bar No. 5407440
ACLU Foundation of Texas, Inc.
109 N. Oregon St., Suite 600
El Paso, TX 79901
Tel. (915) 533-8091
Fax: (915) 308-7188
brcruz@aclutx.org
sdrake@aclutx.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union Foundation of the District of Columbia
915 15th Street, NW - 2nd floor
Washington, DC 20005-2302
Tel. (202) 601-4266
aspitzer@acludc.org
smichelman@acludc.org

Anand Balakrishnan* CT Bar No. 430329
American Civil Liberties Union Foundation, Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Tel. (212) 549-2600
abalakrishnan@aclu.org

**Admitted Pro Hac Vice*